1   ROBERT B. HAWK, SBN 118054
    MAREN J. CLOUSE, SBN 228726
2   HOGAN LOVELLS US LLP
    4085 Campbell Avenue, Suite 100
3   Menlo Park, CA 94025
    Tel:  (650) 463-4000
4   Fax:  (650) 463-4199
    robert.hawk@hoganlovells.com
5   maren.clouse@hoganlovells.com

6   COLM A. MORAN, SBN 202685
    HOGAN LOVELLS US LLP
7   1999 Avenue of the Stars, Suite 1400
    Los Angeles, CA 90067
8   Tel: (310) 785-4600
    Fax: (310) 785-4601
9   colm.moran@hoganlovells.com

10  JAMES TANSEY, SBN 293332
    HOGAN LOVELLS US LLP
11  3 Embarcadero Center, Suite 1500
    San Francisco, CA 94111
12  Tel: (415) 374-2300
    Fax: (415) 374-2499
13  james.tansey@hoganlovells.com

14  *Attorneys for Defendant*
    Mercedes-Benz USA, LLC

15

16

17              UNITED STATES DISTRICT COURT

18          FOR THE NORTHERN DISTRICT OF CALIFORNIA

19  STEVE FERRARI and MIKE KEYNEJAD,     )   Case No.  4:15-CV-04379-YGR
    individually and as representative of the Class )
20  of Persons similarly situated *et al.*,          )   **DEFENDANT MERCEDES-BENZ USA'S**
                                                     )   **NOTICE OF MOTION AND MOTION TO**
21                         Plaintiffs,               )   **DISMISS COMPLAINT**
                                                     )
22                                                   )
         v.                                          )   The Honorable Yvonne Gonzalez Rogers
23                                                   )
                                                     )   Date:        February 26, 2016
24  MERCEDES-BENZ USA, LLC;                          )   Time:        2:00 p.m.
    AUTOBAHN, INC.  d/b/a AUTOBAHN                   )   Courtroom:   1, 4th Floor
25  MOTORS; DAVID AHLHEIM; SONIC                     )
    AUTOMOTIVE INC.,                                 )
26                                                   )
                         Defendants.                 )
27  _____)

28

1

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 26, 2016 at 2 p.m., or as soon thereafter as this matter may be heard, before the Honorable Yvonne Gonzalez Rogers in Courtroom 1 of this Court, located on the 4th Floor of the Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, California 94612, Defendant Mercedes-Benz USA, LLC will, and hereby does, move the Court for an order granting its Motion to Dismiss the Complaint.  This Motion is made based on Federal Rules of Civil Procedure 8, 9, and 12(b)(6) on the grounds that Plaintiffs have failed to state a claim. This Motion also will be based upon this Notice; the accompanying Memorandum of Points and Authorities; the supporting Request for Judicial Notice; the complete files and records of this action; and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this Motion.

Dated:  December 11, 2015

HOGAN LOVELLS US LLP

By: /s/ *Robert B. Hawk*

*Attorneys for Defendant*
Mercedes-Benz USA, LLC

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiffs fail to state claim because their allegations are conclusory, inconsistent, and implausible.

2. Whether Plaintiffs' claims fail because the Complaint does not allege with adequate specificity that MBUSA made any misrepresentation or concealed any fact.

3. Whether Plaintiffs' claims fail because the Complaint does not allege with adequate specificity that Plaintiffs saw or relied on any statement by MBUSA.

4. Whether Plaintiffs fail to allege a violation of RICO because the Complaint does not allege a pattern of predicate acts.

5. Whether Plaintiffs fail to allege that MBUSA is in a fiduciary relationship sufficient to support a fraudulent concealment claim.

6. Whether the Complaint fails to allege any unlawful, unfair, or fraudulent conduct to state a violation of the UCL.

7. Whether Plaintiffs lack standing for injunctive relief because they are not at risk of future harm.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..........................................................................................1

II.    THE COMPLAINT'S ALLEGATIONS ........................................................2

III.   ARGUMENT ..................................................................................................5

    A.   The Complaint Fails Rule 8's Pleading Requirements. ........................5

         1.   Specific, key contradictions in Plaintiffs' allegations doom the Complaint..........................................................................5

         2.   Plaintiffs' essential claims are implausible. .................................6

         3.   Plaintiffs' Complaint fails Rule 8's most basic standard:  clarity................7

    B.   Plaintiffs Fail To State Any Misrepresentation Claim Against MBUSA, And All Claims Should Therefore Be Dismissed. ..................8

         1.   The Complaint lacks the specificity Rule 9(b) requires.............................10

         2.   The Complaint does not identify any false or misleading statement by MBUSA . .............................................................11

         3.   The Complaint does not allege that MBUSA actually knew of alleged fraudulent conduct by Autobahn.............................................................11

         4.   MBUSA cannot be liable for aiding and abetting Autobahn's alleged misconduct, because it did not know of it or assist it. ................................12

    C.   Plaintiffs' Claims Fail For Further, Independent Specific Reasons.......................14

         1.   Plaintiffs fail to state a RICO claim. ..........................................14

         2.   Plaintiffs' Fraudulent Concealment claim fails..........................................16

         3.   The Complaint does not adequately allege that MBUSA violated the UCL..........................................................................17

         4.   Plaintiffs are not eligible for injunctive relief. ..........................................18

IV.   CONCLUSION..............................................................................................20

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Alves v. Players Edge, Inc.*,
    2007 WL 6004919 (S.D. Cal. Aug. 8, 2007) ........................................................ 15

5

*Amore ex rel. Estates of Amore v. Accor*,
    529 F. Supp. 2d 85 (D.D.C. 2008) ...................................................................... 5

6

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
    158 Cal. App. 4th 226 (2007)............................................................................ 8

7

8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................... 5, 6

9

10

*Bacon v. Soule*,
    19 Cal. App. 428 (1912)................................................................................ 17

11

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007).......................................................................... 18

12

13

*Bautista v. Los Angeles Cty.*,
    216 F.3d 837 (9th Cir. 2000).......................................................................... 5

14

15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................. 5, 6, 19

16

17

*Bias v. Wells Fargo & Co.*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013) ............................................................. 18

18

*Blake v. Dierdorff*,
    856 F.2d 1365 (9th Cir. 1988)........................................................................ 15

19

20

*Bourke v. City of San Diego*,
    2015 WL 687092 (S.D. Cal. Feb. 18, 2015) ..................................................... 11

21

*Bowes v. Christian Record Servs.*,
    2012 WL 1865712 (C.D. Cal. May 21, 2012) ................................................... 6

22

23

*Burns v. Tristar Prods., Inc.*,
    2014 WL 3728115 (S.D. Cal. July 25, 2014) ................................................... 19

24

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988).................................................................................... 16

25

26

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (2005)....................................................................... 12

27

28

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................................ 17

*Charnay v. Cobert*,
   145 Cal. App. 4th 170 (2006) ..................................................................... 10

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ....................................................................................... 19

*Contest Promotions, LLC v. City & Cnty. of San Francisco*,
   2015 WL 1849525 (N.D. Cal. Apr. 22, 2015) ............................................ 16

*Davis v. Ford Motor Credit Co.*,
   179 Cal. App. 4th 581 (2009) ..................................................................... 17

*Deom v. Walgreen Co.*,
   591 Fed. Appx. 313 (6th Cir. 2014) .............................................................. 6

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) ......................................................................... 5

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058, 1066 (9th Cir. 2004) ............................................................. 9

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) ..................................................... 16

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) ........................................................................ 13

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .............................................. 19

*Gomez v. World Sav. Bank FSB*,
   2010 WL 5280004 (E.D. Cal. Dec. 13, 2010) ............................................ 18

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996) ........................................................................ 14

*Hernandez v. Select Portfolio, Inc.*,
   2015 WL 3914741 (C.D. Cal. June 25, 2015) ............................................... 6

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) ..................................................... 10

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ...................................................................... 14

*Howard v. Super. Ct.*,
   2 Cal. App. 4th 745 (1992) ......................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hogan Lovells US
LLP
Attorneys At Law

- iii -

DEF. MBUSA'S MOTION TO DISMISS
Case No. 15-CV-04379-YGR

*In re Facebook PPC Advert. Litig.,*
2010 WL 3341062 (N.D. Cal. July 23, 2013) ........................................................ 9

*Jones v. ConAgra Foods, Inc.,*
2014 WL 2702726 (N.D. Cal. June 13, 2014) ..................................................... 19

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009).................................................................. 8, 9, 10

*LiMandri v. Judkins,*
52 Cal. App. 4th 326 (1997) ................................................................... 16

*Low v. LinkedIn Corp.,*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................... 9

*Lyshorn v. J.P.Morgan Chase Bank,*
2013 WL 792632 (N.D. Cal. Mar. 4, 2013)................................................. 6

*McHenry v. Renne,*
84 F.3d 1172 (9th Cir. 1996)................................................................... 7, 8

*Moore v. Kayport Package Exp., Inc.,*
885 F.2d 531 (9th Cir. 1989)................................................................... 9

*Nevijel v. North Coast Life Ins. Co.,*
651 F.2d 671 (9th Cir. 1981)................................................................... 5

*Nolte v. Cedars Sinai Med. Ctr.,*
236 Cal. App. 4th 1401 (2015), *review denied* (Sept. 9, 2015) .................... 18

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ............................................................................. 19

*Oakland Raiders v. Oakland-Alameda Co. Coliseum,*
144 Cal. App. 4th 1175 (2006)................................................................ 9

*Opperman v. Path, Inc.,*
84 F. Supp. 3d 962 ............................................................................... 19

*Pernell v. BAC Home Loans Servicing, LP,*
2011 WL 318539 (E.D. Cal. Feb. 1, 2011)................................................. 18

*Pooshs v. Phillip Morris USA, Inc.,*
2013 WL 2252471 (N.D. Cal. May 22, 2013) ............................................. 8

*Rahman v. Mott's LLP,*
2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ............................................... 19

*Rickel v. Schwinn Bicycle Co.,*
144 Cal. App. 3d 648 (1983).................................................................. 16

*Rivera v. BAC Home Loans Servicing, L.P.*,
   756 F. Supp. 2d 1193 (N.D. Cal. 2010) .................................................................. 18

*Rocawear Licensing LLC v. Pacesetter Apparel Grp.*,
   2007 WL 5289737 (C.D. Cal. Sept. 12, 2007) ......................................................... 14

*Salas v. Int'l Union of Operating Engineers*,
   2015 WL 728365 (C.D. Cal. Feb. 18, 2015) ............................................................ 15

*Savastano v. Thompson Med. Co.*,
   640 F. Supp. 1081 (S.D.N.Y. 1986) ....................................................................... 15

*Schulz v. Neovi Data Corp.*,
   152 Cal. App. 4th 86 (2007) .................................................................................. 13

*Shkolnikov v. JPMorgan Chase Bank*,
   2012 WL 6553988 (N.D. Cal. Dec. 14, 2012) ........................................................... 6

*Varga v. U.S. Bank Nat'l Ass'n*,
   952 F. Supp. 2d. 850 (D. Minn. 2013) ................................................................... 6, 7

*Vargas v. JP Morgan Chase Bank, N.A.*,
   2014 WL 3435628 (C.D. Cal. July 11, 2014) .......................................................... 17

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................................. 9

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) .................................................................................. 6

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) .................................................................................... 9

**STATUTES**

18 U.S.C. § 1961 *et seq.* ............................................................................................... 4

18 U.S.C. § 1961(5) ....................................................................................................... 14

28 U.S.C. § 1367(c)(3) ................................................................................................... 16

Bus. & Prof. Code ¶ 17200 ....................................................................................... 4, 17

Bus. & Prof. Code § 17500 ......................................................................................... 4, 8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure
   Rule 8 ............................................................................................................. 5, 6, 7, 8
   Rule 9 ............................................................................................................. 9, 10, 11
   Rule 41(b) .............................................................................................................. 8

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Plaintiffs purport to bring claims—including counts for fraud, false advertising and violation of the RICO Act—against Mercedes-Benz USA, LLC ("MBUSA") based on misconduct allegedly committed by an independent automobile dealership, Autobahn Motors ("Autobahn").  But Plaintiffs' effort to pin blame for complaints about that dealership's practices on MBUSA is woefully inadequate and facially implausible.  Plaintiffs allege that Autobahn charged its customers for repairs with "OEM" Mercedes-Benz parts supplied by MBUSA, but actually used cheaper, non-OEM parts.  The Complaint, however, alleges no facts showing that MBUSA was aware of a single instance in which a repair was performed with non-OEM parts but the customer was invoiced for OEM parts—let alone that MBUSA condoned such activity or covered it up.

The thirteen named Plaintiffs themselves plead no facts whatsoever about their individual transactions with Autobahn, and thus fail to identify a single instance in which any of them received a non-OEM part while being invoiced for an OEM part.  Yet Plaintiffs allege, in wholly conclusory terms, that MBUSA engaged in a cover-up of and aided and abetted Autobahn's alleged fraudulent parts scheme.  And Plaintiffs further conclude that MBUSA engaged in misrepresentations and false advertising, amounting to racketeering, because MBUSA promoted and referenced the benefits of Mercedes-Benz OEM parts on its website, which also included a link to Autobahn's independent website.  Here too, however, Plaintiffs do not allege facts sufficient to support their lofty conclusions and serious charges.

Plaintiffs, in fact, repeatedly contradict themselves with allegations in their Complaint that belie their asserted legal claims, *e.g.*, allegations that Autobahn *concealed* its use of non-OEM parts from MBUSA and that MBUSA was *not aware* of Autobahn's alleged fraud.  The Complaint as a whole defies common sense and basic rules of federal pleading:  It offers no facts to support the implausible proposition that MBUSA would aid an independent dealer in allegedly depriving MBUSA of parts sales, purchasing and using inferior parts sold by someone other than

1    MBUSA, and damaging the good will of the Mercedes-Benz name and mark.  The Complaint

2    must be dismissed.

3    **II.      THE COMPLAINT'S ALLEGATIONS**

4         Plaintiffs' Complaint comprises 500 paragraphs of repetitious, randomly organized,

5    contradictory, and occasionally indecipherable allegations, sprawled over 100 pages of text and

6    incorporating another 300 pages of attached exhibits.  Though its prolixity and conclusory

7    allegations make much of it difficult or impossible to comprehend, the Complaint—as to

8    MBUSA—boils down to an attempt to drag MBUSA into a long-running business feud between

9    defendant Autobahn and plaintiff Mike Keynejad, the owner of Eurotech, an auto body shop in

10   San Mateo, California.  MBUSA, headquartered in Atlanta, Georgia, is the exclusive distributor

11   of Mercedes-Benz automobiles, accessories and parts in the United States.  Compl. ¶¶ 24, 137.

12   Defendant Autobahn is an independent dealership selling and servicing Mercedes-Benz

13   automobiles in Belmont, California, pursuant to dealer agreements between MBUSA and

14   Autobahn.  *See id.* ¶¶ 28, 149.

15        Eurotech and Plaintiffs' counsel in this case have been, since 2013, involved in a lawsuit

16   against Autobahn and MBUSA in San Mateo Superior Court, pressing claims separate from those

17   asserted here, for breach of contract, "illegal tying," UCL violations, and fraud.  *See* Ex. 1 to

18   Request for Judicial Notice (filed herewith).  Plaintiffs in this case allege that their counsel

19   learned during discovery in that Superior Court action that Autobahn was engaged in fraudulent

20   repair practices.  Compl. ¶¶ 63, 68-69.[1]  Supposedly based on that discovery, the Complaint in

21   this action asserts that in repairing its customers' cars, Autobahn had a practice of advertising the

22   use of, and charging customers for, OEM parts (supplied to Autobahn by MBUSA), but then

23   actually using instead non-OEM parts.  *Id.* ¶ 31.  The Complaint further asserts in conclusory

24   terms that MBUSA knew or should have known about the fraud allegedly perpetrated by dealer

25

26

27   _____

     [1]  Autobahn has also sued Mr. Keynejad and his auto body shop for defamation—originally in
28   San Mateo Superior Court.  Defendants removed that case to this district.  This Court denied
     Plaintiffs' motions to relate and consolidate that case with this one.  Dkt. No. 31.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

DEF. MBUSA'S MOTION TO DISMISS
Case No. 15-CV-04379-YGR

1    Autobahn, *id.* ¶¶ 37, 207, and made, or participated in Autobahn's making of, fraudulent

2    advertising claims to Autobahn customers, *id.* ¶¶ 24, 126.

3         Mr. Keynejad is not the only plaintiff in this action.  The Complaint names thirteen

4    plaintiffs in all.  Further, it purports to be brought on behalf of a class of persons who had their

5    Mercedes-Benz automobiles serviced at Autobahn, and who received non-OEM parts but were

6    invoiced for OEM parts.  *Id.* ¶ 75.  Only two of the named Plaintiffs, Mr. Keynejad and Mr.

7    Ferrari, assert themselves as putative class representatives.  *Id.* ¶¶ 4-5.

8         Each named Plaintiff alleges in rote fashion—in identical, conclusory language—that he

9    or she "brought one or more Mercedes-Benz automobiles into Autobahn Motors" for repairs,

10   which were invoiced based on the use of OEM parts but were actually performed with non-OEM

11   parts.  *Id.* ¶¶ 7-24.  The Complaint offers no facts, however, concerning any individual Plaintiff's

12   vehicle(s), the type of repairs done, the date of the repair, the type or make of parts used, the parts

13   invoiced, or the money charged or paid to Autobahn for parts or service.  Nor does the Complaint

14   offer facts suggesting *any connection whatsoever between any named Plaintiff and MBUSA*,

15   including most critically whether any Plaintiff ever saw any statement allegedly made by

16   MBUSA.

17        In fact, with respect to MBUSA, the Complaint consists, in overwhelming part, of

18   argument and conclusions.  Those conclusions are not only unsupported by factual allegations,

19   they are actually contradicted by the few MBUSA-related facts alleged in the Complaint.  For

20   instance, the Complaint *concludes* that MBUSA "co-published the fraud," "participated in a

21   coverup of the OEM scandal," had "actual knowledge of the use of Non OEM parts," and had a

22   "desire to keep the entire matter covered up."  *Id.* ¶¶ 24, 26, 35, 37.  But those conclusions are all

23   flatly contradicted by the other allegations in the Complaint, examples of which include:

24   - Exhibit A to the Complaint, which Plaintiffs cite and attach as support for their claim
       that MBUSA "publish[ed] an ad on its website proclaiming that its dealerships use
25       only OEM parts," *id.* ¶ 24, says no such thing.  Rather, it states that "Using only
         Genuine Mercedes-Benz Parts affords you measurable differences every mile you
26       travel.  Longevity, safety and warranty are just a few of many reasons to buy Genuine
         Parts," and provides other information about the qualities of Mercedes-Benz parts.

27

28

- Paragraph 207 states that Autobahn and its employees took steps to keep the alleged fraud "secret" from MBUSA, and "[i]t may be that Mercedes-Benz USA is a victim of the fraudulent conduct as well, and truly 'did not know.'"

- Paragraph 41 alleges that Autobahn engaged in a "parts laundering scam" in which Autobahn sold the OEM parts that MBUSA provided to a parts vendor from which Autobahn bought non-OEM parts, and that Autobahn did so for the purpose of keeping its use of non-OEM parts "secret from detection by MBUSA."

- Paragraph 136 of the Complaint alleges that when an MBUSA representative was informed of the use of non-OEM parts, the representative "took immediate efforts to require Autobahn Motors to stop the use [of] non-OEM parts."

- Paragraph 203 states: "Autobahn Motors engaged in conduct best described as oil filter laundering, by commencing to buy its oil filters from Mercedes Benz USA [OEM-certified] and in an effort to not arouse suspicion from Mercedes Benz USA, used those oil filters up not by installing them in cars [as Mercedes Benz USA would like to believe], but instead sold them and other OEM parts to other auto companies …." (brackets in original).

- Exhibit H, which Plaintiffs cite and attach, *id.* ¶ 35, states that Pennzoil was *indicated on the customer's repair order and invoice*, then submitted to MBUSA as a warranty claim using Mobil One oil.  But there is no indication that any customer was misled, only that MBUSA was incorrectly told that warranty oil was used when it was not.  The next paragraph follows up:  "Had MBUSA done the right thing, it would have learned" (but, by implication, did not learn) "that this wasn't a single incident."  *Id.* ¶ 36.

Further, even where the limited facts alleged do not contradict Plaintiffs' conclusions concerning MBUSA, they offer no support for the legal claims asserted against MBUSA. Notably, Plaintiffs assert that MBUSA knew of Autobahn's use of non-OEM parts because during a MBUSA warranty review of a diesel engine which had "basically exploded," a non-OEM oil filter was discovered in the vehicle.  *Id.* ¶¶ 37, 132.  Plaintiffs do not allege, however, that the non-OEM filter was put into the vehicle by Autobahn (or any other Mercedes-Benz dealership).  There is simply nothing tying this supposed incident to the wrongdoing alleged in the Complaint.

Notwithstanding such contradictory and missing factual allegations, Plaintiffs assert claims against MBUSA (and the other defendants) for:  violation of the Racketeering Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq*. (Count I), False Advertising, Bus. & Prof. Code § 17500 (Count II); Intentional Misrepresentation (Count III); Fraudulent Concealment (Count IV); Negligent Misrepresentation (Count V); Negligence (Count VII); and Unfair Competition, Bus. & Prof. Code ¶ 17200 (Count VI).  As set forth below, the claims are all defective and should be dismissed.

1    **III.    ARGUMENT**

2        **A.  The Complaint Fails Rule 8's Pleading Requirements**

3        Federal Rule of Civil Procedure 8 requires that a complaint set forth a "short plain

4    statement of the claim showing that the pleader is entitled to relief," and that each allegation be

5    "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2) & (d)(1).  "To comply with Rule 8 *each*

6    *plaintiff* must plead a short and plain statement of the elements of his or her claim, identifying the

7    transaction or occurrence giving rise to the claim and the elements of the prima facie case …."

8    *Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) (emphasis added).

9        A complaint must also allege facts sufficient "to state a claim to relief that is plausible on

10   its face" if it is to survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

11   (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

12   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13   *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citation omitted).  "[C]onclusory allegations

14   of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Doe I v. Wal-*

15   *Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).  *See also Nevijel v. North Coast Life Ins.*

16   *Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming dismissal of complaint that was "verbose,

17   confusing and almost entirely conclusory") (internal quotations omitted).

18       Allegations in a complaint are not "plausible" if they contradict one another or contradict

19   facts that are established by the very documents on which plaintiffs purport to rely.  *See Amore ex*

20   *rel. Estates of Amore v. Accor*, 529 F. Supp. 2d 85, 94-95 (D.D.C. 2008) ("Because the court does

21   not accept as true self-contradictory factual allegations and does not make favorable inferences

22   that are unsupported by facts set out in the complaint, the complaint's factual allegations do not

23   possess enough heft to show that the pleader is entitled to relief.") (internal citations and

24   quotations omitted).  The Complaint fails to meet any of these requirements as against MBUSA.

25       **1.  Specific, key contradictions in Plaintiffs' allegations doom the Complaint.**

26       The critical contradictions between conclusions and more specific allegations identified

27   above render the claims against MBUSA "inherently implausible," such that the Complaint

28   "fail[s] to comply with Rule 8, *Twombly*, and *Iqbal*."  *Hernandez v. Select Portfolio, Inc.*, 2015

WL 3914741, at *10 (C.D. Cal. June 25, 2015) (dismissing claim that alleged loan application was complete but also alleged subsequent requests for information concerning application).  *See also, e.g.*, *Lyshorn v. J.P.Morgan Chase Bank*, 2013 WL 792632, at *3 (N.D. Cal. Mar. 4, 2013); *Shkolnikov v. JPMorgan Chase Bank*, 2012 WL 6553988, at *14 n.6 (N.D. Cal. Dec. 14, 2012); *Bowes v. Christian Record Servs.*, 2012 WL 1865712, at *6 (C.D. Cal. May 21, 2012).  Even before *Twombly* and *Iqbal*, it was well established that courts were "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004) (internal quotations omitted).  For this reason alone, Plaintiffs' two most basic claims underlying the entire Complaint—that MBUSA knew of or supported fraudulent conduct and that its advertising deceived Plaintiffs—must be disregarded.

### 2.  Plaintiffs' essential claims are implausible.

Plaintiffs' allegations would be implausible even if the Complaint did not suffer from numerous direct inconsistencies.  Most critically, it is simply incredible that MBUSA would be complicit in an alleged fraud by a local independent distributor (Autobahn) to charge customers for Mercedes-Benz OEM parts while using inferior non-OEM parts supplied by third parties. MBUSA, the exclusive distributor for OEM Mercedes-Benz parts in the U.S., has a strong, undeniable motivation to protect its goodwill and brand in the eyes of Mercedes-Benz automobile purchasers and to increase sales to end-customers of Mercedes-Benz parts and automobiles.  *See, e.g.*, Ex. A.  MBUSA has no reason to support the use of allegedly inferior products, sold by third parties, in Mercedes-Benz automobiles serviced by Autobahn or any other independent dealer. Plaintiffs offer no reason at all that MBUSA would engage in conduct so in conflict with its own economic interests, rendering its claims implausible.  *See, e.g.*, *Deom v. Walgreen Co.*, 591 Fed. Appx. 313, 319 (6th Cir. 2014) ("[W]hen, as here, the seller's and buyer's economic interests are aligned and both stand to profit from attracting and retaining customers, it is facially implausible that a business buyer would intentionally drive off customers to frustrate paying the seller an earnout bonus."); *Varga v. U.S. Bank Nat'l Ass'n*, 952 F. Supp. 2d. 850, 859-60 (D. Minn. 2013)

(allegation that bank knowingly aided breach of duty, when bank had no financial incentive to do so and exposed itself to significant potential liability, was implausible).

What is more, Plaintiffs allege that OEM parts are "significantly" more expensive than and superior to non-OEM parts, *id.* ¶ 31. It strains credulity that MBUSA would support Autobahn's fraudulent use of competing inferior parts, rather than parts sold by MBUSA—to the alleged detriment of Mercedes-Benz automobile owners. To the contrary, Plaintiffs allege that MBUSA, which conducted audits to monitor use of non-OEM parts, had precisely the opposite motivation. *Id.* ¶ 41. Simply, Plaintiffs offer bare, implausible conclusions that MBUSA undertook to participate in and/or to cover up an alleged OEM-parts fraud at Autobahn motors, *id.* ¶ 52, and they suggest no conceivable reason that MBUSA would ever behave as they allege.[2]

**3.  Plaintiffs' Complaint fails Rule 8's most basic standard:  clarity.**

Plaintiffs' multiple verbatim repetitions of allegations, *see, e.g.*, Compl. ¶¶ 36, 141, 249, 290, 337, 390, inclusion of patently irrelevant material, *see, e.g.*, *id.* ¶ 71, disjointed presentation of supposed facts, *see, e.g.*, *id.* ¶¶ 129-39, and dependence on argumentative and conclusory assertions, *see, e.g.*, *id.* ¶¶ 35-37, comprise a Complaint that fails to put MBUSA on notice of what it is being charged with. It thereby violates Rule 8. *See, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1178-1179 (9th Cir. 1996) ("The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit," because "[p]rolix, confusing complaints … impose unfair burdens on litigants and judges.").

For all of these reasons, Plaintiffs' conclusory, inconsistent and implausible allegations fall far short of the Rule 8 pleading requirements, and the Complaint should be dismissed. *See* Fed. R. Civ. P. 41(b); *McHenry*, 84 F.3d at 1178-79.

---

[2]  Plaintiffs propound the implausible theory, without support of factual allegations, that the practice of using non-OEM parts inured to the benefit of MBUSA by leading to increased repairs and "caus[ing] the victims to choose to buy a new car, including new Mercedes cars from Autobahn motors." *See, e.g.*, *id.* ¶ 233. But it is facially implausible that owners of vehicles supposedly needing frequent repairs would be motivated to buy more of the vehicles that were breaking down. And, if the alleged victims purchased a car other than a Mercedes-Benz, then handicapping their vehicles with inferior parts would be to MBUSA's detriment. In any case, Plaintiffs do not actually plead facts to support a single instance in which this fictional scenario ever occurred.

**B. Plaintiffs Fail To State Any Misrepresentation Claim Against MBUSA, And All Claims Should Therefore Be Dismissed.**

All of Plaintiffs' asserted claims rest on the conclusory allegation—unsupported and contradicted by the limited facts alleged—that MBUSA made a misrepresentation or deceived Plaintiffs. The Complaint's asserted claims for Misleading Advertising in violation of Business & Professions Code Section 17500 (FAL) (Count II), Intentional Misrepresentation (Count III), Fraudulent Concealment (Count IV), and Negligent Misrepresentation (Count V) all require a false statement, misrepresentation or deception of Plaintiffs, which the Complaint fails to allege.[3] And Plaintiffs' remaining claims are all premised on allegations that MBUSA made the misrepresentations that are the subject of its other claims:  Negligence (Count VII), *see* Compl. ¶¶ 476-77 (MBUSA was negligent by publishing false and misleading ads);[4] violation of RICO (Count I), *see id.* ¶¶ 112-13 ("The fraudulent advertising is posted on both a website owned and operated by MB USA and on another website owned and operated by Autobahn Motors.  Those websites use the internet as the point of publication of the ad, which thus constitutes wire fraud."); and violation of UCL (Count VI), *see id.* ¶¶ 449-50 (MBUSA violated UCL by publishing false and misleading ads).[5] All of these counts therefore fail too.

---

[3] *See* Bus. & Prof. Code § 17500 (liability requires, *inter alia*, that a party disseminate information "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) ("The elements of a cause of action for fraud in California are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage.") (internal quotations and citations omitted); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) ("The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.") (internal quotations and citations omitted).

[4] Plaintiffs also allege that MBUSA was negligent because of its "failure to investigate any of these claims" and that it "should have uncovered the facts of this OEM fraud." *Id.* ¶ 489. Plaintiff appears to argue that MBUSA was negligent because it concealed facts about Autobahn's alleged wrongdoing that it did not know—but should have uncovered and publicized. But these allegations, if so construed, would state no claim; there is no tort for "negligent concealment." *See, e.g., Pooshs v. Phillip Morris USA, Inc.*, 2013 WL 2252471, at *9 (N.D. Cal. May 22, 2013) ("Because an action for fraud based on concealment requires that a person intentionally conceal a fact with the intent to defraud another, plaintiff cannot pursue a claim of 'negligent' concealment.") (internal citations omitted).

[5] Plaintiffs assert liability based on MBUSA's alleged cover-up and aiding and abetting of Autobahn's alleged fraud, but those allegations fail because they are conclusory and

Because Plaintiffs' claims, including the RICO, FAL, UCL and Negligent Misrepresentation counts, are all premised on consumer deception and/or the making of misrepresentations, they are grounded in fraud and therefore must be pled with specificity. *See* Fed. R. Civ. P. 9; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009); *In re Facebook PPC Advert. Litig.*, 2010 WL 3341062, at *12 (N.D. Cal. July 23, 2013) (dismissing UCL claim where plaintiffs failed to identify with particularity the representations reviewed); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2012) (dismissing FAL claim with prejudice because plaintiffs never alleged that they had read the alleged false representation); *Oakland Raiders v. Oakland-Alameda Co. Coliseum*, 144 Cal. App. 4th 1175, 1184 (2006) (negligent misrepresentation is a "species" of fraud); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (Rule 9(b)'s particularity requirements apply to RICO claims based on alleged fraudulent conduct); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (to state RICO claim based on alleged fraud, "complaint would need to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation") (internal quotation omitted).

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud" or mistake. *Kearns*, 567 F.3d at 1126. Conclusory allegations of fraud are insufficient. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged," as well as the circumstances indicating fraudulent conduct. *Id.* at 1106 (internal quotations and citations omitted). A complaint "must set forth what is false or misleading about the statement [and] must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (internal quotations omitted). The Complaint fails these standards by a wide margin.

contradictory, as explained elsewhere.

1    **1.   The Complaint lacks the specificity Rule 9(b) requires.**

2            In a fundamental omission, the Complaint offers no facts to show that any Plaintiff

3    actually viewed, or was even aware of, any alleged MBUSA advertisement or statement.  For that

4    reason, the Complaint necessarily fails to allege that any Plaintiff *relied* on any MBUSA

5    statement.  Plaintiffs' conclusory allegations that they "relied on Defendants' representation that

6    non OEM parts were [not] being used and invoiced at OEM prices" and that their reliance on that

7    representation "was a substantial factor in causing their harm," Compl. ¶¶ 96-97, do not suffice.

8    *See, e.g.*, *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1148 (N.D. Cal. 2013) (allegation that

9    plaintiff "did reasonably rely on those misrepresentations" … "is not sufficient, in and of itself, to

10   satisfy the heightened requirements of Rule 9(b)") (citing *Iqbal*, 556 U.S. at 679).  Plaintiffs

11   simply jump to the conclusion that because of alleged "misrepresentations"—*but not specifically*

12   *because of any alleged **MBUSA** statement*—Plaintiffs suffered damages when they allegedly

13   received non-OEM parts.  *See, e.g.*, Compl. ¶ 318.  The key factual predicate never pled—*i.e.*,

14   that Plaintiffs relied on an MBUSA statement or were deceived by MBUSA conduct—dooms

15   Plaintiffs' claims.  *Kearns*, 567 F.3d at 1124; *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184-185

16   (2006).

17           Nor does the Complaint adequately allege when any supposedly misleading or false

18   advertisement was made.  Plaintiffs merely plead that all of the alleged false advertisements were

19   "issued by Defendants during the period of 2005 to 2015."  Compl. ¶¶ 312; 425.  Plaintiffs

20   include what purports to be a printout of portions of MBUSA's website,[6] but it appears to bear a

21   date approximately a week before the Complaint was filed.  There is no indication what was on

22   MBUSA's website at any earlier point in time when Plaintiffs were allegedly deceived.

23           The Complaint fails to allege even the facts that are necessarily within Plaintiffs'

24   command.  The Complaint does not identify any specific Autobahn repair made for any

25   Plaintiff—there is no indication which Mercedes-Benz vehicle or vehicles Autobahn repaired,

26

27   _____

     [6]  The statements on MBUSA's website do not, on their face, say what Plaintiffs allege they

28   say—and do not remotely support Plaintiffs' claims of a false representation by MBUSA.  *See*
     discussion *infra* at III.B.

1   when the repair took place, what was repaired, how the repair was invoiced, or what was charged.

2   Even as to *pro se* plaintiffs, courts dismiss complaints that fail to plead facts specifying how each

3   plaintiff was harmed, and the actions each defendant took that allegedly contributed to that harm.

4   *See, e.g.*, *Bourke v. City of San Diego*, 2015 WL 687092, at *3 (S.D. Cal. Feb. 18, 2015)

5   (dismissing complaint where court "had trouble deciphering … each defendant's alleged role in

6   each claim").   The Complaint should be dismissed in its entirety on the grounds that it violates

7   Rule 9(b).

8   ## 2.   The Complaint does not identify any false or misleading statement by MBUSA.

9   Plaintiffs' misrepresentation claims fail because the Complaint does not identify anything

10   false or misleading about any advertisements that MBUSA allegedly published.   According to the

11   advertisements identified and quoted in the Complaint, MBUSA advertised only that "[l]ongevity,

12   safety and warranty" are reasons to use genuine MBUSA parts, that fleece oil filters last up to

13   45% longer than conventional filters, and that customers should accept nothing less than genuine

14   Mercedes-Benz parts.   *See* Compl. ¶¶ 25, 260, 301, 413, Ex.  A.   None of these statements are

15   false or misleading, or could be deemed to be so given the actual allegations of the Complaint:

16   Although MBUSA does promote the use and sale of genuine parts, as Plaintiffs acknowledge, *see*

17   *id.* ¶ 50, Plaintiffs assert no facts to suggest that MBUSA's statements explaining the benefits of

18   OEM parts are untrue.   To the contrary, a central premise of their Complaint is that OEM parts

19   are better than non-OEM parts.   *See, e.g.*, *id.* ¶ 78.

20   ## 3.   The Complaint does not allege that MBUSA actually knew of alleged fraudulent conduct by Autobahn.

21

22   The Complaint does not adequately allege that MBUSA knew about the scheme it

23   supposedly misrepresented or concealed, or even that it should have known of it.   All of

24   Plaintiffs' deception-based claims fail for this reason as well.   *See* fn. 2, *supra*.   Instead of

25   showing that MBUSA knew of Autobahn's alleged practice of using non-OEM parts while

26   invoicing customers for OEM parts, the few facts Plaintiffs allege indicate that the alleged

27   wrongdoing was kept from MBUSA.   *See* Compl. ¶ 41 (Autobahn engaged in a "parts laundering

28   scam" for the purpose of keeping its use of non-OEM parts "secret from detection by MBUSA");

¶ 203 ("Autobahn engaged in conduct best described as oil filter laundering … in an effort not to arouse suspicion from Mercedes-Benz USA" that non-OEM oil filters were allegedly used in customers' vehicles); ¶ 207 (Autobahn and its employees took steps to keep the alleged fraud "secret" from MBUSA, and "[i]t may be that Mercedes-Benz USA is a victim of the fraudulent conduct as well"). Plaintiffs make a single allegation that a MBUSA representative was told about some unspecified use of non-OEM oil filters, *id.* ¶ 135, but fail to connect MBUSA to knowledge that customers were misled. (And the Complaint then alleges that the MBUSA representative "took immediate efforts to require Autobahn Motors to stop the use [of] non-OEM parts." *Id.* ¶ 136.) For this reason, each claim dependent on MBUSA's alleged concealment of the alleged Autobahn parts fraud scheme, *id.* ¶¶ 51, 135, 345-374, must fail.

### 4. MBUSA cannot be liable for aiding and abetting Autobahn's alleged misconduct, because it did not know of it or assist it.

Plaintiffs' attempt to impose liability against MBUSA for *aiding and abetting* Autobahn's wrongdoing—by allegedly co-publishing Autobahn's misrepresentations and covering up its fraud, *see, e.g.*, Compl. ¶ 154—fails for an additional, independent reason. Aiding and abetting liability would require that MBUSA had actual knowledge of the specific primary wrong and substantially assisted its commission. *See Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005) (aiding and abetting liability permissible only if defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act"; liability will only be imposed when the defendant "had actual knowledge of the specific primary wrong the defendant substantially assisted") (internal quotations and citations omitted); *Howard v. Super. Ct*., 2 Cal. App. 4th 745, 749 (1992) ("[A]iding and abetting … requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act."). For the reasons explained immediately above, the Complaint fails to allege facts supporting a plausible inference that MBUSA knew of and intended to aid Autobahn's alleged wrongdoing.

Plaintiffs likewise fail to allege facts supporting aiding and abetting liability arising from MBUSA's "linking" to allegedly deceptive Autobahn website statements. The Complaint asserts

that MBUSA co-published statements allegedly made on Autobahn's website, because when one searches for a dealership by zip code on the MBUSA website, Autobahn appears in the results from the San Mateo, California region.  Compl. ¶¶ 24, 122, 127.  This search capability, Plaintiffs conclude, demonstrates that "ads published by Autobahn Motors are also published simultaneously with the MB USA website," *id.* ¶ 128, such that MBUSA is joining with Autobahn's advertisements.  *See id.* ¶ 307.  But these allegations do not come close to stating the basis for liability against MBUSA.

Plaintiffs' allegations that MBUSA's website provided "access" to the Autobahn website and statements included therein are not the same as alleging that MBUSA had knowledge of specific statements (or their falsity) included on the Autobahn website.  The California Court of Appeal has rejected a theory of aider and abettor liability almost identical to the one advanced here, dismissing as conclusory claims pleading only that the host knew that a third-party website was conducting illegal operations but failed to plead substantial assistance or encouragement.  *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 97 (2007) ("[The complaint] does not sufficiently allege PayPal's or Neovi's knowledge of the alleged illegal lottery or facts showing 'substantial assistance or encouragement.'  These mere conclusions do not save the causes of action.") (internal citations omitted).  *See also Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 964 (2002) ("[Plaintiff] attempts to ascribe liability for fraud and false advertising based on VISA's omission rather than commission ....  But plaintiff concedes that VISA itself played no part in preparing or sending any 'statement' that might be construed as untrue or misleading under the unfair business practices statutes.  Hence, there can be no civil liability for unfair practices.").  Plaintiffs' conclusory assertion that MBUSA "engaged in an actual overt cover up," Compl. ¶ 135, is unsupported by anything other than conjecture and contradicts other more specific allegations of Plaintiffs, *see supra* at II.  Such conclusory and contradictory allegations cannot sustain Plaintiffs' claims.

**C.  Plaintiffs' Claims Fail For Further, Independent Specific Reasons.**

**1.  Plaintiffs fail to state a RICO claim.**

The Complaint falls far short of stating a claim that MBUSA committed a civil RICO violation.  Plaintiffs' asserted RICO claim requires the following elements: "1) conduct, 2) of an enterprise, 3) through a pattern, 4) of racketeering activity (known as 'predicate acts'), 5) causing injury to the plaintiff's 'business or property.'"  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).  A "pattern" requires at least two predicate acts, 18 U.S.C. § 1961(5), and those predicate acts must be indictable.  *Howard v. Am. Online Inc.*, 208 F.3d 741, 748 (9th Cir. 2000).[7]

First, the Complaint does not adequately allege that MBUSA engaged in a pattern of predicate acts.  Plaintiff identifies generally and in conclusory fashion the following predicate acts:  mail fraud; wire fraud; and money laundering (actually, parts laundering).  Compl. ¶ 109.  But MBUSA is not alleged to have engaged in mail fraud, *see id.* ¶¶ 115-16 (alleging that Autobahn mailed a newsletter), or parts laundering, *see id.* ¶ 203 (alleging that Autobahn hid parts laundering from MBUSA).  Although MBUSA is alleged to have engaged in wire fraud via the operation of its website, *id.* ¶ 123, the Plaintiffs' few specific allegations actually preclude any inference that MBUSA committed wire fraud.  *See* discussion *supra* at III.B (no false statements on MBUSA website and no factual allegation supporting an inference that MBUSA knew of or adopted false statements by Autobahn).

Further, MBUSA did not commit a predicate act merely by operating its website with links to Mercedes-Bena dealership websites.  *See Howard*, 208 F.3d at 748.  As explained above,

---

[7]  Plaintiffs do not allege that MBUSA was part of a conspiracy to violate RICO, and such a claim would fail in any event.  To engage in a RICO conspiracy, a defendant must "have been aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard*, 208 F.3d at 751.  *See also Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, 2007 WL 5289737, at *5 (C.D. Cal. Sept. 12, 2007) (RICO conspiracy requires that defendant "knowingly agree to facilitate a scheme that includes the operation or management of a RICO enterprise").  The Complaint alleges only that MBUSA knew of "a single instance" in which Autobahn used non-warranty oil and invoiced the customer accordingly, but submitted to MBUSA the use of warranty oil.  Compl. ¶ 139.  Besides the fact that this one instance does not suggest wrongdoing against any Plaintiff or any customer, the Complaint also alleges that MBUSA did not know of further wrongdoing.  *Id.* ¶ 36 ("Had MBUSA done the right thing, it would have learned that this wasn't a single incident occurrence …."); ¶ 41 (Autobahn undertook parts laundering scheme "to keep its use of Non OEM parts … secret from detection by MBUSA's audit team").  These allegations alone preclude any inference of a RICO conspiracy.

linking to Autobahn's website does not create an inference that MBUSA had knowledge of any misrepresentations or fraud by Autobahn.  Similar allegations have been rejected as evidence of a RICO conspiracy.  *Alves v. Players Edge, Inc.*, 2007 WL 6004919, at *12 (S.D. Cal. Aug. 8, 2007) (no RICO claim stated where "[t]he only allegations which bear on the existence of such an agreement are Plaintiffs' allegations that Radio Station Defendants received the infomercials in prerecorded form and agreed to broadcast the infomercials for a fee, and the allegations that the Radio Station Defendants knew or should have known that the contents of the infomercial were illegal").

Even if advertising on MBUSA's website could be considered wire fraud (which it cannot), Plaintiffs do not adequately allege that MBUSA engaged in the requisite *pattern* of wrongdoing.  A "pattern" of predicate acts cannot be based on a single advertising campaign. Plaintiffs allege only that MBUSA made representations on its website about the benefits of OEM parts.  Indeed, all the representations by MBUSA that Plaintiffs identify come from a single webpage.  Ex. A.  A single advertising campaign cannot constitute a "pattern" of predicate acts, even if many discrete statements or publications of the ads made up the advertising effort.  *See, e.g.*, *Savastano v. Thompson Med. Co.*, 640 F. Supp. 1081, 1086-87 (S.D.N.Y. 1986) (no pattern of predicate acts, and no RICO claim, where "the specific actions underlying each alleged fraud served  common end of getting consumers to purchase *one* particular product") (internal quotation omitted).  *See also Blake v. Dierdorff*, 856 F.2d 1365, 1371 (9th Cir. 1988) ("RICO's pattern requirement cannot be satisfied by bootstrapping [defendant]'s knowledge, gained during and in furtherance of the audit, into predicate acts separate from the final audit certification itself.  The two are inextricably connected.").

In a final attempt to allege a RICO violation by MBUSA, Plaintiffs assert that MBUSA aided and abetted Autobahn's fraudulent conduct.  Compl. ¶¶ 154-55.  But there can be no aiding and abetting liability for civil RICO claims.  *See, e.g.*, *Salas v. Int'l Union of Operating Engineers*, 2015 WL 728365, at *8 (C.D. Cal. Feb. 18, 2015) (*Central Bank of Denver* forecloses implicit aiding and abetting liability not explicit in RICO statute, nor can there be liability for

1    aiding and abetting predicate acts).  Accordingly, this Complaint fails on multiple levels to state

2    RICO liability on the part of MBUSA.[8]

3                    **2.    Plaintiffs' Fraudulent Concealment claim fails.**

4            The Fraudulent Concealment claim fails independently because the Complaint does not

5    allege facts supporting the existence of a duty to disclose in this case, which would be necessary

6    to make MBUSA's alleged silence the basis for a fraudulent concealment claim.  There are "four

7    circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when

8    the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had

9    exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

10   conceals a material fact from the plaintiff; and (4) when the defendant makes partial

11   representations but also suppresses some material facts."  *LiMandri v. Judkins*, 52 Cal. App. 4th

12   326, 336 (1997).  Plaintiffs do not adequately allege facts from which it could be inferred that

13   MBUSA had exclusive knowledge of, actively concealed, or suppressed material facts, for all of

14   the reasons explained above.  *Supra* at II, (Plaintiffs' allegations are contradictory); III.A

15   (allegations are not plausible); III.B.1 (allegations lack required specificity); III.B.3 (Complaint

16   fails to allege MBUSA knew of wrongdoing).

17           That leaves the existence of a fiduciary duty as the sole basis for a fraudulent concealment

18   claim.  But Plaintiffs do not and could not allege a fiduciary relationship between them and

19   MBUSA.  California law does not make a product manufacturer a fiduciary to its end-customers

20   merely by advertising its product.  *See Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1137

21   (N.D. Cal. 2013) (no basis for fiduciary relationship with manufacturer who allegedly

22   misrepresented product's capabilities).  *See also, e.g.*, *Rickel v. Schwinn Bicycle Co.*, 144 Cal.

23

24   ─────────────────
     [8]   The asserted, but inadequate, RICO claim is the only cause of action under federal law against
     MBUSA and, therefore, the sole basis for subject matter jurisdiction in this Court.  *See* Compl. ¶¶

25   1, 3.  If the RICO claim is dismissed, the Court should decline to exercise supplemental
     jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3) (when the federal claim
     is dismissed pursuant to 12(b)(6), a district court may decline to exercise supplemental

26   jurisdiction when "the district court has dismissed all claims over which it has original
     jurisdiction").  Dismissal of the state law claims is particularly appropriate if the federal claims

27   "have dropped out of the lawsuit in its early stages."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.
     343, 350 (1988); *accord Contest Promotions, LLC v. City & Cnty. of San Francisco*, 2015 WL

28   1849525, at *10 (N.D. Cal. Apr. 22, 2015).

App. 3d 648, 654 (1983) (no fiduciary relationship between manufacturer and distributor because "A 'fiduciary relation' in law is ordinarily synonymous with a 'confidential relation.' It is also founded upon the trust or confidence reposed by one person in the integrity and fidelity of another, and likewise precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed.") (quoting *Bacon v. Soule*, 19 Cal. App. 428, 434 (1912)). The Fraudulent Concealment claim must be dismissed for these reasons as well.

### 3. The Complaint does not adequately allege that MBUSA violated the UCL.

To state a UCL violation, a plaintiff must allege conduct that is unlawful, unfair, or fraudulent. Bus. & Prof. Code § 17200. First of all, Plaintiffs fail to state a claim against MBUSA for fraudulent conduct under the UCL for the same reasons that they fail generally to state claims for misrepresentation and deception. *See* discussion *supra* at III.B. Second, the only basis suggested by the Complaint for "unlawful" UCL conduct is also alleged fraud: Plaintiffs' assert that MBUSA's conduct was unlawful, because it published false and misleading ads and that "all Defendants" violated the UCL "by instituting the program at Autobahn Motors of using non-OEM … parts, while advertising the use of OEM parts only." Compl. ¶ 448, 450, 454-55. Because the Complaint does not state an adequate claim for MBUSA's deception of Plaintiffs or fraud, and it does not allege facts that would show that MBUSA "instituted," or even knew of a "program" to use non-OEM parts, the UCL unlawful prong claim is entirely unsupported by the Complaint.[9] Because Plaintiffs identify no other law that MBUSA supposedly violated, no claim is stated under that part of the UCL. *See, e.g., Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 584 (2009) (no unlawful practice under UCL where plaintiff did not make out asserted statutory violation). *See also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (conduct that violates another law constitutes an 'unlawful' practice under the UCL).

---

[9]  Plaintiffs cannot plug the holes in their factual allegations about MBUSA by referring to "Defendants" generally. *See, e.g., Vargas v. JP Morgan Chase Bank, N.A.*, 2014 WL 3435628, at *5 (C.D. Cal. July 11, 2014) (denying UCL claims against multiple defendants based on "'lump' or 'group' pleading").

Plaintiffs' UCL claim also fails to the extent it is based on an asserted "unfair" practice by MBUSA (though Plaintiffs do not allege in any decipherable way that it is).  No definitive test for UCL unlawful conduct has yet been adopted by the California Supreme Court or the Ninth Circuit, but courts apply multiple tests, including: 1) whether a practice "violates established public policy"; 2) whether a practice is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits"; or 3) whether "(1) the consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided." *Nolte v. Cedars Sinai Med. Ctr.*, 236 Cal. App. 4th 1401, 1407-08 (2015), *review denied* (Sept. 9, 2015) (internal quotations omitted).  *See also, e.g.*, *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013).

Under any of the tests, Plaintiffs in this case would have to actually allege some course of wrongdoing by MBUSA that caused them injury, which they have not done.  As set forth above, the Complaint does not contain factual allegations to support a conclusion that MBUSA misrepresented or covered up anything.  For the same reasons, Plaintiffs have not alleged facts to support an inference that MBUSA violated the "unfair" prong of the UCL—under any of the tests articulated by courts.  As a result, the UCL claim, in its entirety, must be dismissed.  *See, e.g.*, *Pernell v. BAC Home Loans Servicing, LP*, 2011 WL 318539, at *9 (E.D. Cal. Feb. 1, 2011) (UCL claim based on "conclusory allegation" dismissed); *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1201 (N.D. Cal. 2010) ("[B]ecause plaintiffs have added no factual support to their conclusory claim … the UCL claim must be dismissed.").  *See also, e.g.*, *Gomez v. World Sav. Bank FSB*, 2010 WL 5280004, at *4 (E.D. Cal. Dec. 13, 2010) ("Plaintiff alleges Defendants engaged in conduct that violates the 'spirit' of various state and federal statutes, however, the FAC does not allege sufficient facts to support such allegations.").

### 4.  Plaintiffs are not eligible for injunctive relief.

Standing for prospective injunctive relief requires a plaintiff to allege that "he has suffered or is threatened with a 'concrete and particularized' legal harm … coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'"  *Bates v. United Parcel Serv., Inc.*,

511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  That, in turn, requires a plaintiff to allege a "real and immediate threat of repeated injury."  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).  "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy."  *Lyons*, 461 U.S. at 103.

Any assertion here that MBUSA's (or Autobahn's for that matter) misconduct is ongoing is unsupported by any *facts* alleged in the Complaint.  To the contrary, Plaintiffs do not identify any occasion since 2013 on which any customer could have been fraudulently invoiced for an OEM part.  Plaintiffs' naked allegation that "Defendants will continue in their conduct" cannot be accepted as true.  *Twombly*, 550 U.S. at 554-55.

More particularly, Plaintiffs lack standing to seek an injunction preventing MBUSA from engaging in future wrongdoing, because they do not claim they intend to seek further repairs from Autobahn.  To the contrary, they claim that "[h]ad Plaintiffs known the true facts that non OEM parts were being used, Plaintiffs would not have entrusted their vehicles to Defendants for repairs."  Compl. ¶ 372.  Now aware of the alleged facts in the Complaint, Plaintiffs face no threat of repeated injury from non-OEM repairs at Autobahn.  "[A] Plaintiff seeking injunctive relief must allege at least a willingness to consider purchasing the product at issue in the future.  Here, Plaintiffs make no such allegation.  Accordingly, they lack standing to seek injunctive relief."  *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 988 (N.D. Cal. 2015).  *See also Rahman v. Mott's LLP*, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014); *Burns v. Tristar Prods., Inc.*, 2014 WL 3728115, at *2-3 (S.D. Cal. July 25, 2014); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *12-13 (N.D. Cal. June 13, 2014); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *13 (C.D. Cal. Apr. 9, 2014).

//

//

//

1

**IV.     CONCLUSION**

2        For all of the foregoing reasons, the Complaint should be dismissed in its entirety as to

3    Defendant MBUSA.

4

5                                              Respectfully submitted,

6    Dated:  December 11, 2015                 HOGAN LOVELLS US LLP

7                                              By: /s/ *Robert B. Hawk*

8                                              *Attorneys for Defendant*
                                               Mercedes-Benz USA, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28