1  Herman Franck, Esq. (SB #123476)
   Elizabeth Betowski, Esq. (SB #245772)
2  **FRANCK & ASSOCIATES**
   1801 7th Street, Suite 150
3  Sacramento, CA 95811
   Tel. (916) 447-8400
4  Fax (916) 447-0720

5
   Attorneys for Plaintiffs Steve Ferrari, Mike Keynejad et al.
6
                    UNITED STATES DISTRICT COURT
7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8  STEVE FERRARI  and MIKE KEYNEJAD,        Case No. 4:15-cv-04379-YGR
   individually and as a representative of the
9  Class of Persons similarly Situated;
   HOOSHANG JOWZA, CELSO FRAZAO,            **FIRST AMENDED COMPLAINT FOR:**
10 RENUKA NARAYAN,GERTRUD                   **1. VIOLATION OF R.I.C.O ACT;**
   FRANKRONE, ERNEST SALINAS,               **2. VIOLATION OF B&P CODE SECTION**
11 KALKHUSAN SAREEN, HOSSEIN               **17500 [MISLEADING ADVERTISING];**
   JALALI, RON WOLFE, SOHRAB                **3. FRAUD: INTENTIONAL**
12 RAHIMZADEH, FRED GRANT, ESTER           **MISREPRESENTATION AND**
   GRANT, VINCENT LEUNG, KEN WONG,         **CONCEALMENT;**
13 JESSICA LANGRIDGE, TONY NICOLOSI,       **4. NEGLIGENT MISREPRESENTATION**
   DONALD LYANG, ARTUR SEMICHEV,           **5. VIOLATION OF B&P CODE SECTION**
14 JOHN DIAZ                                **17200 [UNFAIR COMPETITION ACT];**
                                            **6. NEGLIGENCE**
15
              Plaintiffs,                   **REQUEST FOR JURY TRIAL**
16
                 v.
17
   MERCEDES-BENZ USA, LLC;
18 AUTOBAHN, INC. DBA AUTOBAHN
   MOTORS; DAVID AHLHEIM; SONIC
19 AUTOMOTIVE INC.;

20            Defendants
21

22

23 Plaintiffs Steve Ferrari, Mike Keynejad , Hooshang Jowza, Celso Frazao, Renuka Narayan,

24 Gertrud Frankrone, Ernest Salinas, Kalkhusan Sareen, Hossein Jalali, Ron Wolfe, Sohrab

25 Rahimzadeh , Fred Grant, Ester Grant, Vincent Leung, Ken Wong, Jessica Langridge, Tony

26
                                                                                    1
27 *Ferrari v. Mercedes Benz et al.*
   First Amended Complaint
28

Nicolosi, Donald Lyang, Artur Semichev, and John Diaz herewith submits this Complaint For Violation Of The R.I.C.O. Act; Violation Of B&P Code Section 17500 [Misleading Advertising Fraud – Intentional Misrepresentation and Concealment; Negligent Misrepresentation; Violation of B&P Code Section 17200 [Unfair Competition Act]; Negligence, and allege and state as follows:

## I.
## JURISDICTION AND VENUE

1.  Jurisdiction in the U.S. District for the Northern District of California is based on federal question jurisdiction, 28 USC section 1331, as the first claim for relief is a civil damage action under the federal RICO statute, 18 U.S.C. Section 1961 et seq.

2.  Venue in the Northern District of California is based on 28 U.S.C. Section 1391(b), based on the fact that the defendant Autobahn Motors resides in San Mateo County, which is within the Northern District of California; and on the basis that a substantial portion of the acts, conduct, and damages allege herein substantially occurred in the Northern District of California, because the fraud emanates from Autobahn Motors' point of business in Belmont, California.

3.  The Court has supplemental jurisdiction over the state law claims alleged herein, pursuant to 28 USC section 1367(a):

    "(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

2

same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

## II.
## PARTIES

4. Steve Ferrari is a Plaintiff herein in his individual capacity and as a representative of the class of persons similarly situated. He is a resident of Woodside, CA, located in San Mateo County, CA.

5. Mike Keynejad is a Plaintiff herein in his individual capacity and as a representative of the class of persons similarly situated. He is a resident of San Carlos, CA, located in San Mateo County, CA.

6. The following individuals assert their claims as individual members of the class:

7. Hooshang Jowza is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

8. Celso Frazao is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

9. Renuka Narayan is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was

3

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

invoiced for OEM parts, and suffered compensable damages as a proximate result.

10. Gertrud Frankrone is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

11. Earnest Salinas is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

12. Kalkhusan Sareen is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

13. Hossein Jalali is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

14. Ronald Wolfe is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

15. Sohrab Rahimzadeh is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

16. Fred Grant is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

17. Ester Grant is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

18. Vincent Leung is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

19. Kenneth Wong is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

20. Jessica Langridge is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

21. Tony Nicolosi is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

22. Donald Lyang is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

23. Artur Semichev is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

24. John Diaz is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result. He has specific expertise in all facets of automotive sector advertising, and specifically with respect to Mercedes-Benz and other high-end automobiles.

25. Defendant Mercedes-Benz USA, LLC ["MB USA"] is a Delaware Limited Liability Company, with a principal place of business in Atlanta, Georgia. A printout from its website with further information regarding Mercedes-Benz USA, LLC is attached hereto as Exhibit A.

26. Plaintiff does not know the names of the individuals within MB USA who had knowledge of some or all parts of the fraudulent conduct described in this complaint.

27. Defendant Autobahn, Inc. dba Autobahn Motors ["Autobahn" or "Autobahn Motors"] is a California Corporation with a principal place of business in Los Angeles, CA and the dba Autobahn Motors in Belmont, San Mateo, CA. A printout from their website with further information regarding Autobahn Motors, Inc. is attached hereto as Exhibit D. Autobahn Motors is sued herein based on their direct participation in the fraudulent conduct described herein.

28. Defendant David Ahlheim ["Ahlheim"] is the Fixed Operations Director at Autobahn Motors, which has a principal place of business in Belmont, San Mateo County, CA. He is

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

6

believed to reside in San Mateo County. David Ahlheim is sued herein because he was the person who actually implemented, monitored, and managed, the OEM fraud scheme described herein.

29. Defendant Sonic Automotive, Inc. ["Sonic"] is a corporation organized under the laws of the state of Delaware, having a principal place of business in North Carolina, and doing business in California. Sonic Automotive is liable herein based on its direct involvement in the design, and implementation of the scheme to use non-OEM/genuine Mercedes-Benz automotive parts in place of genuine Mercedes-Benz automotive parts, which were invoiced to the customer as OEM parts, and alleged herein. See excerpts of its website, Exhibit F hereto.

## III.
## CLASS ACTION ALLEGATIONS

30. The following information re class action certification is supplied to show that plaintiffs comply with Rule FRCP 23 re class actions.

31. According to the data from Munich Auto Parts [the supplier of the non OEM oil filters described herein], there were a total of 17,795 non-OEM oil filters purchased by Autobahn Motors.  These non OEM oil filters were received by Autobahn Motors and sold to Autobahn Motors customers such as Plaintiffs herein. It is true that many of the victimized customers own more than one Mercedes Benz, and thus 17,795 may not equate to 17,795 Plaintiffs. Munich Auto Parts also shows the following detail regarding its sales of non-genuine, non-OEM MB USA products to Autobahn Motors during the period 2005-2013:

    1. MUNICH PARTS

    Qty Shipped: 61,230

    Total: $580,679.31

    Total Dealer Net: $772,527.20

7

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

Total Saved: $191,847.89

2. MUNICH OIL FILTERS

Qty Shipped: 17,795

Total: $127,082.00

Total Dealer Net: $174,120.00

Total Saved: $ 47,038.00

3. MUNICH FILTERS

Qty Shipped: 318

Total: $12,339.06

Total Dealer Net: $16,646.00

Total Saved: $ 4,306.94

4. ALL FILTERS (except Oil Filter)

Qty Shipped: 7853

Total: $144,970.96

Total Dealer Net: $187,284.60

Total Saved: $42,313.64

The dollar amounts sold by Munich Auto Parts to Autobahn are as follows: $174,120 in oil filters; $75,280.00 in spark plugs [13,670 units]; $1,816 in motor mounts; $16,484.50 in V-Belts; $18,358.50 in gaskets; $3,868.00 in engine mounts; $22,709.90 in battery units [5024 units]; $20,109.50 in brake sensors [5024 units]; $28,570.00 in ignition cables; $330.00 in tightener pulleys; $30,736.00 in air mass sensors; $19,857.50 in fuel filters; $22,649.00 in part kits filters; $7,460.00 in trans oil filters; $14,556.20 in cabin filters; $19,898.50 in air filters; $60,303.00 in filter elements; adding up to a total of $537,106.60 non-genuine parts.

32. Plaintiffs do not know the true number of victims, but allege that the number is in excess of ten thousand, which satisfies the numerosity requirement for a class action.

33. Named Plaintiffs are typical of the nature and types of claims herein, as they are owner of Mercedes Benz automobiles that had undergone oil changes and/or other repairs at Autobahn Motors and received non-OEM parts and were invoiced for OEM parts, at OEM prices.

34. The transactions between Autobahn Motors and an auto parts warehouse by the name of SSF Auto, show thousands of different non OEM auto /non genuine parts being purchased by Autobahn for placement into unsuspecting Plaintiffs' automobiles, which add up to thousands of other impacted victims. The SSF Imported Auto Parts documents were examined by form Autobahn Motors parts manger Roopesh Cahandra who confirmed that parts covered virtually every auto parts available for Mercedes-Benz automobiles ion in-genuine form. SSF Imported Auto Parts produced approximately 3600 pages of electronic records showing its sale of non-genuine Mercedes-Benz parts to Autobahn Motors.

35. Plaintiff Steve Ferrari will serve as a capable class representative, Plaintiff Ferrari will fairly and adequately protect the interests of the class.

36. Plaintiff Steve Ferrari is a longtime Mercedes Benz owner with multiple cars that have been regularly been brought to Autobahn for service.

37. Plaintiff Mike Keynejad has been instrumental in receiving news and evidence of the OEM fraud, and following up on that evidence in following up on those proceedings and producing documents pursuant to a series of subpoenas. Mike Keynejad's shop Eurotech has become a clearinghouse for Autobahn former techs who came to Mike Keynejad after learning of his current lawsuit with Autobahn Motors. Keynejad is also an expert concerning Mercedes

9

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

Benz car repair procedures and issues, and of any of the interrelationships that form the Mercedes-Benz subset of the auto repair business.

38. Mike Keynejad has a substantial history including ownership of Mercedes Benz dealerships, Mercedes Benz car and truck factories, Mercedes Benz certified body shop [Eurotech]; all of which has given him decades of highly specialized Mercedes Benz specific knowledge that will ready to bear in this case. He understands the duties of a class representative and agrees to abide by those duties.

39. Plaintiffs John Diaz is a prospective class representative. He has specific expertise in all facets of automotive sector advertising, and specifically with respect to Mercedes-Benz and other high-end automobiles.

40. Plaintiffs have retained Herman Franck, Esq. of Franck & Associates to prosecute this claim.

41. Herman Franck and Franck and Associates will serve as class counsel, and have the following credentials to show that they will be adequate counsel for the class:

42. Herman Franck is a Georgetown University Law Center Graduate [Juris Doctorate 1985] with a Masters of Economics [1985] and a BA in political economy from UC Berkeley [1981].

43. Mr. Franck has been a member of the California State Bar since 1986 [SBN 123476], and has owned and operated Franck & Associates in Sacramento since the year 2000. Mr. Franck represents an auto body shop in San Mateo by the name of Eurotech in a lawsuit against Autobahn and MB USA concerning an ad co-op scheme and illegal tying arrangement

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

10

*[Maskay Inc. dba Eurotech vs Autobahn Motors Inc. dba Autobahn Motors; MB USA; Rick Ali, Bobby Ali, AW Collision Inc.* San Mateo Superior Court Case No. CIV 525559].

44. During the course of that case, the facts and evidence regarding the OEM fraud described in this matter came to light through a series of subpoenas issued by Herman Franck's office; and through a series of depositions of eyewitnesses taken by Herman Franck of eyewitnesses to the OEM fraud described in this complaint.

45. Eurotech has also become instrumental in assisting Herman Franck in this matter. Eurotech, owned by Mike Keynejad, has become a clearinghouse for information concerning Autobahn Motors' fraudulent conduct.

46. Apparently, word got out in the industry about Eurotech's case, and people who formerly worked for Autobahn contacted Mike Keynejad and informed him of the OEM parts scandal.

47. Uncovering this scandal has required team members who have industry specific knowledge; and who also know the involved people in this business.

48. Mike Keynejad is also the owner of Mercedes Benz automobiles who have been serviced by Autobahn and is thus a victim in this matter.

49. Plaintiffs have a further additional plaintiff by the name of John Diaz. Mr. Diaz is an ad professional and will also provide insight into the advertising related facts of MB USA's ad campaign and resultant image of excellence, and how that image of excellence is found in the signage and layout at the dealership level.

50. Plaintiffs and class members are victims of defendant Autobahn Motors, MB USA, and Sonic's business practice of falsely advertising that OEM parts/products would be used in repairs done at Autobahn Motors, the result of which more than 17,795 non-OEM oil filters, and thousands of virtually every kind of Mercedes Benz auto part, were bought and improperly installed into customer's cars.

51. Class definition: Plaintiffs propose a class definition as follows: Any person or entity who brought one or more Mercedes Benz automobiles to Autobahn Motors, in Belmont, CA during the period of 2005-present; who received non-OEM/non-genuine Mercedes Benz parts, supplies, and/or oil from Autobahn Motors, and were invoiced for OEM parts at OEM prices.

52. Each of the repair transactions between plaintiffs and defendants has a value of between $400 to multiple thousands of dollars, depending on the specific repair and non-OEM parts in use. Though the specifics of damage amounts may differ, the common issues to all of Plaintiffs claims and all class members claims are essentially the same: A practice by Autobahn Motors to secretly use non-OEM parts, while advertising that only OEM parts will be used, and invoicing customers for OEM parts at OEM prices.

53. OEM prices are significantly higher than non-OEM prices, sometimes by a factor of double.

54. Autobahn Motors was motivated to engage in this OEM fraud, because non-OEM parts cost Autobahn Motors significantly less amounts than OEM parts. Autobahn Motors was motivated to sell a non-OEM part called zMAX, and oil and gas additive, because Autobahn Motors, parent company, Sonic Automotive has a president/founder who also founded the company that makes zMAX As described further below, zMAX violates the express

12

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

1    statements in the MB USA car manuals, prohibiting the use of such oil and gas additive.

2

3    55.   An example of the OEM; non-OEM price listing is shown by the below summary data

4          extracted from documents from Munich Auto Parts, the supplier of the non OEM oil filters:

| Quantity | dealer price | discount | Total savings |
|----------|-------------|----------|---------------|
| 6500 | $11.50 | $7.50 | $26,000 |
| 7500 | $8.50 | $6.18 | $17,400 |
| 700 | $10.50 | $8.93 | $1,099 |
| 50 | $8.30 | $6.80 | $75 |
| 1500 | | $8.75 | [$13.125] |

56.   The total savings on the oil filters is shown for the entire 17,795 oil filters purchased by

       Autobahn Motors. The oil filters are given to show an example of numerosity. in addition,

       as stated above, there were thousands of other types of non-OEM products

57.   The numbers may not appear gargantuan, but become cumulatively large across all the price

       differentials for an array of hundreds of non-OEM and OEM auto parts.

58.   A class action is a judicially efficient manner in proceeding with this type of claim. The

       respective value of claims, person by person, are inadequate to litigate on their own, and

       could only ever be brought as a practical matter as a class action.

13

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

### III.
### DISCOVERY OF UNDERLYING FACTS RE OEM SCANDAL

59. Plaintiffs did not know of this OEM scandal until it was uncovered by Herman Franck and Mike Keynejad during the process of the lawsuit against Autobahn. The evidence came to light during the May 20, 2015 deposition of eyewitness Mike Del Rosario. Del Rosario testified that he used to be a service tech [repair man] at Autobahn Motors from 2001-2012; and in that capacity had received from the parts department, parts that he could see were non OEM, and installed those non OEM parts into Autobahn Motors customers vehicles.

60. The evidence was further firmed up when a series of document production from third party subpoenas in the Maskay Inc. v. Autobahn lawsuit during the period of May 2015-present [and ongoing]. The process of investigating and researching the OEM fraud when Autobahn Motors filed a motion for protective order to stop Herman Franck/Eurotech from taking the depositions of eyewitness Greg Graziani and Roopesh Chandra .

61. Plaintiffs learned when following Herman Franck and Eurotech's discovery of the evidence. Eurotech published evidence concerning the fraud on the Eurotech Facebook page.  Plaintiff Steve Ferrari was further notified through direct discussions with Mike Keynejad re the OEM scandal.

62. Steve Ferrari learned of the evidence approximately on July 19, 2015 when Herman Franck sent him that evidence.

63. Mike Keynejad learned of this OEM scandal on May 20, 2015 at the deposition of Mike Del Rosario.

64. The other Plaintiffs learned in a similar way, but later, during approximately September 2015.

65. Thus the date of discovery of Steve Ferrari should be July 19, 2015 ; for Mike Keynejad on May 20, 2015; and the discovery for other Plaintiffs should be September 2015.

66. Thus this action is timely.

## IV.
### FIRST CLAIM FOR RELIEF FOR VIOLATION OF R.I.C.O STATUTE
### [18 U.S.C. Section 1961 et seq.]
### [AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, DAVID AHLHEIM, AND SONIC AUTOMOTIVE, INC.]

67. This is a First Claim for Relief by all Plaintiffs against Defendants Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn Motors, David Ahlheim, and Sonic Automotive, Inc. for violation of the R.I.C.O. Act, 18 U.S.C. Section 1961 et seq.

68. The allegations of paragraphs 1 through 66 of this Complaint are incorporated herein.

69. Plaintiffs and proposed class members have each brought one or more Mercedes-Benz automobiles to Autobahn Motors for repair, during which they receive non-OEM parts, and were invoiced for OEM parts at OEM prices. Plaintiffs and class members are victims of Defendants Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn Motors, David Ahlheim, and Sonic Automotive, Inc.'s business practice of falsely advertising that OEM parts/parts would be used in repairs done at Autobahn Motors.

15

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

70. Plaintiffs reasonably relied on Defendants' representation that non-OEM parts were being used and invoiced at OEM prices.

71. Plaintiffs' reliance on Defendants' representation that non OEM parts were being used and invoiced at OEM prices was a substantial factor in causing their harm.

72. Some of the plaintiffs saw the Autobahn Motors website ad [Exhibit D] stating that only genuine OEM/Mercedes-Benz parts would be used; some received the Autobahn Motors newsletter that also stated that genuine parts would be used; all plaintiffs received invoice [front and back, exemplar attached hereto as Exhibit C] for each repair transaction. All plaintiffs met with a service advisor and saw the layout of the service advisor's work area described herein. Some of the plaintiffs were verbally told by their respective service advisor that Autobahn Motors would use genuine Mercedes-Benz parts only on their cars. Some of the plaintiffs received or saw the MB USA brochure [Exhibit B], and some saw the MB USA website [excerpts of which are attached as Exhibit A hereto] advertising the benefits and longevity of genuine MB USA parts.

73. Defendants violated the RICO Act by the following conduct:

**A. Conduct of MB USA**

74. Mercedes-Benz USA maintains and operates a nationally-famous, worldwide website, www.mbusa.com. On that website, they have a page that assures customers that if they get work one at one of the authorized dealer, all part will be genuine, OEM certified parts approved by Mercedes-Benz. The following specific web pages are referenced herein as constituting a series of ads by MB USA, all of which were interlinked with Autobahn Motors website including:

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

16

"Using only Genuine Mercedes-Benz Parts affords you measurable differences every mile you travel. Longevity, safety and warranty are just a few of many reasons to buy Genuine Parts." [See Exhibit A, MB USA Website Printout, page 4];

"Being history's first car company has afforded us the time and expertise to instill durability into our parts. For example, our fleece oil filter lasts up to 45% longer than conventional filters, minimizing engine wear." [See Exhibit A, MB USA Website Printout, page 5];

"When your vehicle needs maintenance or repair, accept nothing less than Genuine Mercedes-Benz parts. Painstakingly crafted to the state-of-the-art standards of Mercedes-Benz, our parts are the final, fine-tuned word in protecting your vehicle's performance, style, comfort, and safety for years to come." [See Exhibit A, MB USA Website Printout, page 9].

75.    Through the website, a customer searching for a dealership near him/her simply enters his/her zip code and is directed to the dealership in his/her neighborhood.

76.    These ads need to be read in conjunction with the Autobahn Motors ads below because these ads are interlinked to Autobahn Motors' website.  In this manner the ads published by Autobahn Motors are also published simultaneously with the MB USA website.

77.  Plaintiffs reasonably relied on Defendants' representation that non OEM parts were being used and invoiced at OEM prices.

78.  Plaintiffs' reliance on Defendants' representation that non OEM parts were being used and invoiced at OEM prices was a substantial factor in causing their harm.

79.   Plaintiff does not know the names of the individuals within MB USA who had knowledge of some or all parts of the fraudulent conduct described in this complaint. What Plaintiffs do know is that a fraudulent ad was place by MB USA, and MB USA aided and abetted Autobahn Motors' fraudulent conduct.

80.   During the period 2005- present Defendant Autobahn Motors Inc. dba Autobahn committed an OEM [original equipment manufacturer]/Genuine Parts scandal by advertising the sole use of OEM/genuine parts, but was in fact buying and using non-OEM /non genuine parts which were installed into customer vehicles, and then invoiced to the customers as OEM parts, and at OEM prices. OEM prices are significantly higher than non-OEM prices, sometimes by a factor of double.

81.   MB USA has made further false ads regarding its Genuine Parts lasting numerically longer than non genuine parts through point of sale brochures, exemplars of which are attached as Exhibit B hereto. Exhibit B shows that MB USA makes a claim that its genuine MB oil filters last 45% longer than non-genuine oil filters, a genuine MB air filer will last 28,000 more miles than non genuine, its genuine MB brakes tested lowest in vibration versus other aftermarket brands, and that its wiper blades provide an additional 800K wiping cycles [Exhibit B hereto].

82.   When it made this data available, MB USA did so with full knowledge of its falsity, and did publish that falsity in the form of its website ad [Exhibit A hereto], brochure [Exhibit B hereto], and dealer-level invoice [back page warranty] [Exhibit C hereto], knowing that in fact, there are factories that MB USA buys its parts from, and has those factories output designated as genuine MB USA. MB USA is fully aware that the factory also makes this

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

18

same oil filter without the Mercedes-Benz star, and that there are many other capable modernized factories throughout the world making such filters that are comparable in actual quality, longevity, and use.

83. This falsity has been acknowledged publically in the case of Perez v. State Farm Automobile Insurance Co. [9th Circuit case No.13-16450]. A copy of the 9th Circuit's opinion is attached hereto as Exhibit J and states in part:

"Plaintiffs, however, failed to produce any evidence of inferior parts. Plaintiffs' sole expert on parts quality, Allen Wood, stated in his declaration that categories of inferior parts could be identified at trial by an expert other than himself. The district court therefore granted Defendants' Daubert motion to exclude Wood's testimony, and Plaintiffs have not appealed that decision."

84. Despite this actual knowledge, MB USA has publish false data that its products have numerically-described superior longevity, when it fact the superior longevity claims are false.

85. The MB USA website ad [Exhibit A] and point of sale brochures [Exhibit B] are materially false in that in fact MB USA genuine parts to not out perform non genuine parts; that in fact non genuine parts are available that are made by the same factory as the genuine part [examples; Mann Oil Filters, Bosch Spark Plugs], and there are no differences between them. The true facts are that non-genuine parts are largely and easily available that are made from either the same factories as making the genuine parts, or are made by capable factories that produce a non-genuine part that has all performance qualities of the genuine part.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

19

86. The foregoing false representations of the superiority and longevity of MB USA genuine parts, was also published and set out in a video that is within the MB USA site at the following website address: http://www.mbwholesaleparts.com/serviceItemWiperBlades.aspx. A copy of this website page containing the link to the video is attached as part of Exhibit A hereto [the last two pages of Exhibit A].

87. Plaintiffs are not contending that MB USA genuine parts are in some way inferior. Plaintiff is instead saying that the statement that the parts are superior is false, and that the true facts are that the non genuine and genuine parts are equal in performance. MB USA's genuine parts are worth substantially more than non genuine part, owing to market factors such as the power of MB USA's logo and brand, its image of excellence, the importance of warranty coverage, peace of mind in knowing that genuine parts are covered by an MBA express warranty, and other market based consumer decision making.  The fact that the genuine parts are worth more than the non-genuine parts does change the fact that the parts are in fact the same level of quality.

88. MB USA's genuine parts warranty is set forth on backside of the Autobahn Motors Invoice, which states:   [See Autobahn Motors Exemplar Invoice Front and Back, Exhibit C hereto, back side:

"This Limited Warranty covers:

DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original purchases and each subsequent owner of Mercedes-Benz genuine service replacement parts, equipment, or factory-approved accessories, excerpt tire, installed on a Mercedes-Benz vehicle which

20

is operated in the USA or Canada under normal use and service to be free from defects in the material and workmanship."

89. The full warranty actually takes up almost the entire back page of the invoice. The placement of the warranty and the wording of the warranty makes it appear to a reasonable person, including plaintiffs herein, that the warranty covers the genuine MB automobile parts listed on the front of the invoice. The MB USA warranty causes consumers to reasonably believe that all parts mentioned in the invoice are genuine MB auto parts.

90. MB USA is further liable because of an image of excellence created by its alluring and beautiful ad campaign, its general theme of a commitment to excellence, and the full inclusion of that theme on site at Autobahn Motors. Autobahn Motors main front signage shows the Mercedes-Benz logo [the "Star"], which further appears throughout the interior of the dealership. See Autobahn Motors Website Excerpts, Exhibit D hereto. This image of excellence has caused consumers such as plaintiffs and class members herein to reasonably believe that whenever they go to Autobahn Motors for a repair, the MB logo and image of excellence assures them that they will be receiving only genuine MB auto parts on their Mercedes Benz vehicles.

91. MB USA further participated in the OEM auto parts racketeering fraud scheme herein by allowing Autobahn Motors, with full knowledge and consent of MB USA to display point of sale ads and information concerning the product known as zMax. The zMax ad is contained in the Autobahn Motors' Mercedes Maintenance Guide, attached hereto as Exhibit E hereto,

21

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

1   and is contained in a point of sale service booklet in the office area of a service advisor. The

2   service advisor is the person that has direct discussion with customers about the nature and

3   service repairs to be done to their cars. A service booklet prepared by Autobahn Motors, and

4   including the Mercedes "star" includes information of ZMAx. See Exhibit E hereto. The

5   Brochure and other information about zMax in the service advice office area, long with other

6   MB USA brochures about genuine auto parts such as those attached hereto as Exhibit B.

7

8

9   92. This configuration of MB USA direct ads [Exhibit B] and the star on the guide that contains

10   the zMAX ad Exhibit E], collectively reasonably cause the consumer to reasonably believe

11   that zMAX is a genuine MB USA part, approved by MB USA for use in MB cars. The point

12   of sales service repair booklet appears to be an official MB USA document, because of the

13   presence of the MB USA logo, the MB USA "star" that booklet containing multiple pages of

14   its repair service options, , and contains direct ads and direct representations about zMax.

15

16

17   93. MB USA customers regularly visiting Autobahn Motors, and have seen with their own the

18   guide which promotes the use of zMAX [Exhibit E hereto] in the point of sale area, along

19   with MB USA's own point of sale brochure, Exhibit B hereto.

20

21   94. The zMAX ads are in fact false. The maker of zMAX, Speedway Motorsports, Inc. has

22   previously agreed to a Permanent injunctions and monetary fine in an FTC false advertising

23   claim action [Case No. 10-cv-00126; FTC File number 002 3256]. a copy of the Stipulated

24   Order is attached hereto as exhibit K. O. Burton Smith, the founder of Speedway Motor

25   Sports, Inc., the distributor of zMAX is also Sonic Automotive's president. See excerpts

26

27   *Ferrari v. Mercedes Benz et al.*

28   First Amended Complaint

22

from Speedway Motorsports, Inc website, Exhibit I hereto. Sonic Automotive is the owner of Autobahn Motors, and is marketing its zMAX product through its own dealerships. The products violate the express statements in Mercedes-Benz owners' manuals, and constitute a further example of the knowing use of non-genuine, non-OEM parts by Autobahn Motors.

95.    MB USA further came to know of the use of non-OEM parts during approximately 2010 when MB USA conducted a warranty review of a diesel engine which basically exploded, and was later confirmed to have a non-OEM oil filter.

96.    There is thus a direct link between the Mercedes-Benz USA statement and the corresponding statement by Autobahn motors on its website.

97.    During the course of the fraudulent campaign, Mercedes-Benz USA was told of the fraud by an Autobahn Motors service tech by the name of Michael Del Rosario, notified MB USA's representative on site at Autobahn Motors, "Mike" [last name unknown] of the actual use of non OEM parts; MB USA also produced a document which confirms the incident.

98.    MB USA thus directly participated in a cover-up of the OEM scandal by learning of the scandal and by keeping it an internal secret, not to be disseminated to the public, and without any corrective activity taken, such as ordering Autobahn Motors to make it right. One simple way to make it right would be to allow all customers to bring their cars in for an exchange of the non-OEM part for an OEM part at no cost to the customer. Instead of doing that, MB USA remained quiet and did nothing such to bring the matter to the public, and did not implement any compensation program.

99.  Plaintiffs and member of the public have generally detrimentally relied on MB USA's image of excellence, and other point of sale advertising [Exhibit B], and have thereby opted to bring their car for service to an authorized dealer such as Autobahn Motors, fully expecting to receive genuine parts, and later were invoiced for and paid for such MB USA genuine parts.

100.  As a proximate result of MB USA's fraudulent ads, Exhibits A, B, and C, and general image of excellence, plaintiffs and class members have been further damaged in that they purchase higher-price genuine parts, thinking that it was well worth the extra money because the parts are more reliable, last longer, and are superior to non-genuine parts.

101.  The use of non-OEM parts is not itself illegal or wrongful. The use of OEM parts becomes wrongful here because Autobahn Motors and MB USA both have inter-linked web-based advertisements, and Autobahn Motors has a newsletter, stating that only OEM parts are used; and because the invoicing gave pricing for OEM parts.

102. One probable explanation of MB USA's motivation to do nothing about this problem, is their own desire to keep the entire matter covered up.

103.  The complaint also names David Ahlheim as a Defendant because David Ahlheim was formerly the parts department manager of Autobahn Motors and was later promoted to the Fixed Operations Director at Autobahn Motors, is the person who implemented the whole array of activity resulting in the fraudulent use of non OEM parts invoiced and sold as OEM parts at Autobahn Motors during the period of 2005-present.

104.  The complaint also names Defendant Sonic Automotive as a Defendant because of their direct involvement in the fraudulent conduct and fraudulent advertising complained of here.

24

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

The following individual from Sonic Automotive is believed to be the person directly involved: David Ahlheim's boss, national fixed Operation Manager Hugh Wiles.  Sonic Automotive is in the business of owning automotive dealerships, and is the owner of Autobahn Motors, Inc.  According to Sonic Automotive's website [Exhibit C] it reportedly has "over 100 dealerships spread across 14 states and 25 major metropolitan markets." It directed David Ahlheim to engage in the fraudulent conduct; Sonic and Autobahn encouraged his conduct and facilitated it by requiring the conduct, knowing full well that it would then commit the fraudulent conduct, and other intentional wrongful conduct described herein, which they as owner has benefitted from in the terms of charging customers at OEM prices for parts that were not OEM.

105.    Sonic and Autobahn intentionally and deliberately concealed Z Maxx's non-OEM status from Autobahn Motors' customers. Mercedes Benz USA publishes a car owners manual. For example, the car owners manual for a Mercedes Benz CLK states [See attached Exhibit G, page 34]:

> "Engine Oil Additive.  Do not blend oil additives with engine oil, they may be harmful to engine operation.   Damage or malfunctions resulting from blending oil additives are not covered by the Mercedes Benz limited warranty."

106.    The complaint also alleges the following particulars of an OEM/genuine- Non-OEM/Non genuine auto parts laundering scam, whereby Autobahn Motors was buying non OEM parts, while selling its MB USA supplied OEM inventory of parts to one of the very parts vendors selling it non-OEM parts.  This parts laundering enterprise was committed by Autobahn Motors in an effort to keep its use of Non OEM parts and consequent limited use of OEM parts, secret from detection by MB USA's audit team.  MB USA regularly audits Autobahn Motors to confirm that Autobahn Motors is operating within the guidelines of the agreements between MB USA and Autobahn Motors.

25

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

107.   The complaint also alleges the following particulars of a certified autobody shop fraud:

108.   Autobahn Motors also purchased various non-OEM paint products, some of which are not MB USA approved.  In addition, the work done through the purchases from Finishmaster was handed off to a separately owned company called Dent Wizard who also did business as Paint Wizard/  Autobahn Motors basically delegated to Paint Wizard/Dent Wizard the task of repairing and painting some of the smaller level dents and bumpers on Autobahn Motors customers cars, and invoiced its customers as though the work had been done at Autobahn Motors' designated certified autobody repair shop, which until late 2010 was Eurotech.

109.   Autobahn Motors violated Eurotech's privacy right in its name, and in Eurotech's designation as an MB USA certified Autobody shop [the first autobody shop designated as such in Northern California] by letting its customers believe that Eurotech was doing the autobody work when in fact it was being done by Dent Wizard/Paint Wizard. Dent Wizard/Paint Wizard is not certified by MB USA.

110.   Though it can be perfectly fine for an uncertified shop to do work on a Mercedes auto mobile, what makes it wrong here is that Autobahn Motors showed their invoicing and their name, and their statement that they were an MB USA certified repair shop, and thereby committed a second type of fraud herein [auto repair certification fraud].

111.   There was a substantial volume of cars done under this auto repair certification scheme. Based on data provided by Finishmaster [an auto paint distributor], and based on calculations from the use of clear coat [the final stage of auto paint job is to apply clearcoat which acts as a glossy sealant to preserve the paint], approximately 1200-1250 cars probably had been repaired under this scheme.

26

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

112.    The complaint is a class action in that there are probably more than ten thousand claimants, all having similar claims.  Class action allegations are further specified in part IV below.

113.    Steve Ferrari has agreed to serve as class representative, and has been instructed as to his respective responsibilities and duties as a class representative and has agreed to live up to those responsibilities and duties.

114.   MB USA directly participated in the OEM parts fraud by its own ads described above and attached hereto as Exhibits A, B, and C.

115.   Plaintiffs thus request full damages against MB USA for directly participating in the false ad, and directly participating in a cover-up of the non-OEM fraud.

116.   On the back end of the fraudulent campaign, Mercedes-Benz USA engaged in an actual overt cover up, as was testified to by eyewitness Mike Del Rosario, former tech adviser at Autobahn Motors].  He testified in a sworn deposition on May 20, 2015, that he himself notified Mercedes-Benz USA's representative, who was then personally present at Autobahn Motors, and was shown the non-OEM oil, and was then told about the use of non-OEM filters.

117.   After that notice, Del Rosario testified Mercedes-Benz USA's representative was agitated: "I saw his face change. He was upset", and took immediate efforts to require Autobahn Motors to stop the use non-OEM parts.

118.   Plaintiffs have suffered an upswing in repair activity following Autobahn Motors performing repairs on their automobile.

27

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

119.   MB USA also had actual knowledge of the fact that autobody shop work including the painting of cars was being done openly in the Autobahn Motors parking lot. Thus MB USA also had actual knowledge of the auto repair certification fraud described in this complaint.

120.   Mercedes-Benz USA LLC failed to take further corrective steps in the form of instructing Autobahn Motors to make good on its wrongdoing, by some type of compensation program appropriate to whatever non-OEM certified parts were placed in a customers' car.

121.   Mercedes-Benz USA LLC conducted an investigation into Autobahn Motor's fraudulent conduct, confirmed that it did on fact occur; ordered it to stop; and then facilitated Autobahn Motors in covering it up by not bringing it to anyone's attention , including the customers of Autobahn. It should be noted that Autobahn Motors has a data base of its customer; has a practice of using "e-blast" marketing tools, and is well-versed in getting the word out to its customers. Autobahn Motors did not send out a corrective notice to its customers. Mercedes-Benz USA LLC did not order Autobahn Motors to do so. Under the circumstances here, there is no way that the customer would know that non-genuine, non-OEM certified parts were used. For example, oil is not brought out in labeled cans, it is stored in vats and placed it an overhead pumping to protect the workers working.

122.   An example of another act whereby MB USA co-made a fraudulent ad by listing on its website Eurotech in a manner designed to give the false impression that the local dealership, Autobahn Motors owned Eurotech.

123.    Such evidence further bolsters Plaintiff's ad co-maker allegations against MB USA by showing a pattern and practice of such an ad co-making.

28

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

124.    Exhibit L hereto is a true and correct copy of an October 12, 2007 MB USA web listing showing Eurotech as a certified collision center.

125.    By making this ad on its website, MB USA co-committed another form of a public fraud.

126.    The telephone number given in the ad is not Eurotech's telephone number; it is Autobahn Motors' telephone number.

127.    Plaintiffs also allege the reasonable inference that it wasn't an accident, and that instead it was all done part and parcel to MB USA's co-making of a fraudulent ad program that deliberately misleads consumers into thinking that the certified collision center is owned by the sponsoring dealership, when in fact it isn't owned by the sponsoring dealership.

128.    That public fraud is the Eurotech belonged to its then sponsoring dealership, Autobahn Motors.  MB USA officials have confirmed in deposition testimony that one of the purposes behind the MB USA certification requirements is to give the customer the idea that the certified collision center was an actual extension of the sponsoring Mercedes Benz dealership.

129.    The forgoing are at issue in the San Mateo County Court Proceedings [case number CIV525559] currently set for trial April 25, 2016.

130.   They are relevant here as additional facts to show Plaintiffs concept of a practice whereby MB USA engages in the co-making of a fraudulent ad.

131.   Mercedes-Benz USA is jointly and severally liable for the non-OEM fraud committed by Autobahn Motors, based on the following

132.   However, Mercedes-Benz USA failed to do the right thing, and go public to its San Mateo County-Area loyal customers [who typically purchase a series of Mercedes-Benz from Autobahn Motors, buying not just one, but 3, 4, or 5], to inform the loyal customers of what happened, to issue any regret or apology it deemed appropriate, and to offer some kind of compensation for the wrong, which for example could take the form of a replacement oil and oil filter. Or, in the case of shock absorbers, a replacement of those shock absorbers.

133.   Instead of going public to its customers to fix this problem, MB USA instead deliberately chose to keep it under wraps, and not let it see the light of day.

134.   Mercedes-Benz USA did not go public with the finding, did not notify its customers of the problem, did not acknowledge the problem publicly, and did not publicly or privately offer any kind of compensation program for what had happened.

135.   Mercedes-Benz USA has contractual power over its authorized dealers, Autobahn Motors. This power includes the right to mandate certain business images, service level, quality level, and of issue here, the use of genuine Mercedes-Benz /OEM certified parts only. Mercedes-Benz USA uses an oversight process during which it granted annual access to perform a full audit to Autobahn Motors, as well as all other of its authorized dealers, which it in fact does do on an annual basis.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

136. In the alternative Mercedes-Benz USA should have known of the program, as the oil filters are quite bulky, and easily distinguished from Mercedes-Benz USA/ OEM certified filters in that they do not bear the Mercedes-Benz USA star. An actual walk through the parts department would have revealed hundreds and hundreds neatly stacked up boxes of non-OEM filters. The testimony of Greg Graziani and Roopesh Chandra will confirm this allegation, as well as a similar practice with regards to other auto parts.

137. Further, through any kind of casual interview of any of the employees, including Graziani, Roopesh, and Del Rosario, Mercedes Benz USA could have found out all about the non-OEM fraud. The employees were never asked. They didn't tell then, but they are telling now.

138. The paperwork from the various vendors of the non-OEM parts [SSF Imported Auto Parts, Munich Auto Parts, Western State Oil, Finishmaster] would reveal that items being purchased were simply not MB USA genuine/OEM certified parts, and indeed were not OEM auto parts.

139. This is not the case of finding a needle in haystack. This is a case of finding boxes and boxes of non-OEM auto parts, which are easy to distinguish based on the missing Mercedes-Benz USA star.

**B. Conduct of Autobahn Motors**

140. Autobahn Motors is a corporation with a principal place of business in Belmont, California, but doing business with national and international companies. Excerpts of its website are attached hereto as Exhibit D. Its website also lists approximately 115 employees in the following departments: sales [25]; service [75]; parts [11]; and finances [4].

31

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

141. Autobahn Motors has long advertised it only used OEM-certified/Mercedes-Benz genuine parts. See Exhibit D hereto page 19, excerpts from Autobahn Motors' website stating "Best of all, we only use OEM Certified Mercedes-Benz auto parts and accessories!"

142. A further false and misleading advertisement published by Autobahn Motors is in the form of a newsletter of which approximately 217,316 were distributed [Exhibit G, page 284, date unknown] and states: "Genuine Mercedes Benz parts".

143. On November 19, 2015, Bruce Nye, counsel for Autobahn Motors, verbally told Herman Franck during a break at a deposition, that Autobahn Motors has taken down the ad from their website that stated Autobahn used genuine parts only. Bruce Nye told us the ad was taken down during the summer of 2015.

144. During summer 2015 Maskay Inc. dba Eurotech conducted the following initial discovery into the issue of this OEM/genuine parts fraud/racketeering scheme:

    (a) May 20, 2015Deposition of Michael Del Rosario

    (b) August 24, 2015 Deposition of Steve Meade

    (c) March 24, 2015 Subpoena to SSF Auto

    (d) April 2, 2015 subpoena to Munich Parts Warehouse

    (e) June 26, 2015 Amended Notice of Deposition of Former Autobahn Parts Advisors, Roopesh Chandra, Greg Graziani, and Frank Rosier.

145. Plaintiffs point out the activities in the OEM fraud matters in summer 2015, to show the court that Autobahn Motors was put on notice by Plaintiff, that Plaintiffs have evidence of an ad fraud regarding the use of non genuine parts. The fact that Autobahn Motors then took down the offending ad should be viewed by the court as an admission that the ad was false and misleading. The ad has indeed been taken down, and is no longer on the Autobahn

32

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

Motors website. The fact that they took down the false ad, supports Plaintiffs' claim of advertising fraud.

146.   During that discovery, Autobahn Motors' counsel was present or received documents from the subpoenas.

147.   Removing the ad does not eliminate the ongoing problem, because Autobahn Motors is still failing to abide by its statutory obligation under Business and Professions Code section 9875 to place written designations as genuine or non genuine on the Auto parts used on its customer's vehicles.   The designation is supposed to be on the invoice. The fact that Autobahn has not done that, shows that there is a continuing fraudulent ad. Invoices and billing statements themselves constitute a fraudulent ad, which is ongoing and is expected to continue into the future.

148.   These ads need to be read in conjunction with the MB USA ads described above because these ads are interlinked to MB USA's website.  In this manner the ads published by Autobahn Motors are also published simultaneously with the MB USA website.

149.   The newsletter also shows Eurotech falsely as being designated the MB USA repair service, when in fact significant auto body work was done by uncertified Dent Wizard and Paint Wizard. Autobahn Motors preferred hiring the uncertified shop because then it could significantly mark up the work done by Dent Wizard invoice which then made it appear the work was done by an MB USA certified shop when it in fact had been done by a shop that is not certified by MB USA.

150.   These ads make willfully false misrepresentations that OEM parts were being used, when in fact non-OEM parts were being used.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

33

151. The Internet was used as part and parcel in effectuating this campaign including the ordering of non-OEM parts from companies such as SSF Imported Auto Parts and Munich Parts Warehouse; and processing orders between SSF and Autobahn for OEM parts [order generally made by email]; and the international transport of auto parts [from China] and state lines.

152. In addition, Autobahn Motors' service advisors, including former service advisor Steve Mead, verbally tell Autobahn Motors customers that only OEM parts are being used in connection with any repair. The service advisors are the direct face to face point of contact between the customers of Autobahn Motors and Autobahn Motors.

153. The true fact was that Autobahn Motors has a regular business practice of not buying OEM certified Mercedes-Benz parts and supplies. When Autobahn Motors customers such as, and including Plaintiffs herein, would bring their Mercedes-Benz vehicles into Autobahn Motors for service or repair, Autobahn Motors would install non-OEM certified, non-Mercedes-Benz parts in the automobiles, and would then invoice and charge such unknowing customers for the full price of OEM/genuine parts and supplies as though OEM-certified Mercedes-Benz parts had been used.

154. The involved auto parts and supplies include oil, oil filters, air filters, cabin filters, disc brake pads assembly, shock absorbers, spark plugs, and virtually every kind of auto parts made by Mercedes Benz.

155. According to SSF Imported Auto Parts documents, there were roughly 3650 pages of instances whereby Autobahn Motors purchased a non OEM part from SSF Imported Auto Parts. The parts are described in the SSF Imported Auto Parts documentation and cover the full gambit of almost every part made by Mercedes Benz.

34

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

156. Autobahn Motors was motivated to engage in this OEM fraud, because non-OEM parts cost Autobahn Motors significantly less amounts than OEM parts. Also, OEM parts last longer [See MB USA Website, Exhibit A re OEM products quoted above]. Autobahn Motors was also motivated to obey the directive of its parent company, Sonic Automotive Inc., to purchase its sister company's product, zMAX.

157. Autobahn Motors profited on both ends by purchasing the non OEM parts and selling them as the OEM parts, and then having the added benefit of the customer returning much earlier for further repair work. Ultimately, customers decided to buy a new car which added a further benefit to Autobahn Motors.

158. An example of the OEM/ non-OEM price listing is shown by the below summary data extracted from documents from Munich Auto Parts, the supplier of the non-OEM oil filters:

| Quantity | dealer price | discount | Total savings |
| --- | --- | --- | --- |
| 6500 | $11.50 | $7.50 | $26,000 |
| 7500 | $8.50 | $6.18 | $17,400 |
| 700 | $10.50 | $8.93 | $1,099 |
| 50 | $8.30 | $6.80 | $75 |
| 1500 | | $8.75 | [$13,125] |

159. The total savings on the oil filters is shown for the entire 17,795 oil filters purchased by Autobahn Motors.

160. The numbers may not appear gargantuan, but become cumulatively large across all the price differentials for an array of hundreds of non-OEM and OEM auto parts.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

35

161. Autobahn Motors through David Ahlheim had actual knowledge that Autobahn Motors was in fact purchasing all kinds of non-OEM/non-genuine Mercedes Benz Auto Parts, and was knowingly invoicing them to customers at OEM prices , and using OEM parts numbers in the repair/invoicing process.

162. When Autobahn Motors made the written and verbal representations, it knew them to be false; and made the representations knowingly and willfully false; and with the intent to defraud unknowing members of the public, including Plaintiffs herein. The person with knowledge of the falsity is David Ahlheim, Fixed Operations manager of Autobahn Motors. Plaintiff believes higher ups also had actual knowledge of the company's ads, including the general managers during the period of 2005-present.

163. Plaintiffs reasonably relied on the false representations to their detriment, in that they did in fact pay the Autobahn Motors invoice and charges, which include part pricing, services pricing of the prices for services using OEM certified Mercedes-Benz parts and supplies, when in fact non OEM non genuine parts were used.

164. Plaintiffs and members of the class further detrimentally relied on the misrepresentations by entrusting their car to the service of Autobahn Motors, some of the non-OEM certified Mercedes-Benz supplies such as oil and oil filters can have immediate and long term negative impacts on the automobile. The wrong oil and wrong oil filter can, for example, reduce a car's life, and can cause the car to have a problem with serial repair issues.

165. Plaintiffs claim in this action that Autobahn Motors was aware that its use of sub-standard oil and oil filters would fetch Autobahn Motors return repair business, and eventually new car sales, as frustrated customers would give up their once-smooth-running Mercedes-Benz automobiles for new automobiles.

36

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

166. In the meantime, Autobahn Motors profits from a steady flow of repair jobs.

167. Plaintiffs have also obtained documents produced from Western States Oil, which summarizes a long history of supplying oil to Autobahn Motors. Western States Oil supplied non-OEM oil to Autobahn Motors. During the period of 2008-2010 a total of $213,999.79 of non-OEM oil was purchased by Autobahn from Western States Oil for delivery to Autobahn Motors and later for use in Autobahn Motors Customers Cars. The OEM-approved oil is Mobile 1 Synthetic and Pennzoil Synthetic. Autobahn is using a lower-grade Pennzoil, which is not approved by Mercedes-Benz USA. All of the oil purchased from Western States is non-OEM oil.

168. Eyewitness Mike DelRosario testified in his deposition that he saw a tanker truck from Western State Oil arrive at Autobahn Motors, and pump Pennzoil oil into a vat. He knew it was Pennzoil because he saw the label on the tanker, and a decal on the tank.

169. Greg Graziani, a former auto parts advisor at Autobahn Motors has stated the following: He worked behind the parts desk and was responsible for bringing various parts to the tech people who would then install the parts into the car. His title was parts advisor. He worked as such at Autobahn Motors initially for a 15 year period; took a couple of years off; then worked for another 5 year period, leaving during 2013. He saw that Autobahn Motors kept in stock a non Mercedes-Benz genuine oil filter, brand name unknown, which came in a non-descript white box. He knows it is not a Mercedes box, because the Mercedes box has the Mercedes logo [the "star"] right on it.

170. Graziani also notes a similar issue with engine air filters; cabin filters; brake pad sensors; and motor oil. During 2012-2013 there was an incident where a diesel Mercedes "kind of blew up". In the post incident examination of the automobile, one of the non-genuine oil

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

filters was found and was blamed by Mercedes-Benz USA. Mercedes-Benz USA used it as an excuse to not pay a warranty claim. He is not certain of the outcome of that matter, but what he does know is that he received a directive to remove those non genuine oil filters and put them in an upstairs storage area. After that, as far as he knows, they no longer sold that oil filter. He believed that the non genuine parts were purchased primarily at a company called SSF Imported Auto Parts, and another one called Munich Auto Parts.

171. The oil filters from Munich Auto Parts were non-OEM. They came in a white box easily recognizable as a non-OEM part. Mercedes-Benz OEM parts bear the Mercedes Star; and come in a particularly colored box. These oil filters came in a blank white box and did not bear the Mercedes Star.

172. The non-OEM oil came to Autobahn Motors from Western States Oil, located in San Leandro, CA. It would deliver Pennzoil in a tanker truck. Plaintiffs' data shows that these purchases were made during the period of 2008-2010 and totaled $233,999.79. Plaintiffs believe there were further purchases going back to approximately 2005.

173. Western States Oil would come with a tanker truck of Pennzoil. It would be partially emptied into a vat on premises to Autobahn Motors. That vat was then connected to repair stations through an overhead pipe system that pumped the oil to the various repair areas. As a result, there were no Pennzoil cans lying around; no Pennzoil signs; no mention of Pennzoil at all.

174. Steve Meade is a former service advisor of Autobahn Motors, who worked there during much of the time of this OEM scandal. Mead also confirmed that he was directly involved in the initial invoicing [work order] process. The customer would come to him and explain whatever issues they were having with the car. Later the work order would turn into an

invoice after receiving data from the repair department that the repairs had in fact been done; and, in the case of warranty job, it had to be "booked in" by the warranty department [also known as the booking department].  The booking department primarily registers the fact that some kind of repair, covered by a warranty, was in fact done. As for any kind of price indication based on non-OEM parts, he said absolutely not, there was not a kind of statement about the use of a non-OEM part.

175. Steve Meade also stated that he verbally advised that OEM parts would be used on their cars.

176. Autobahn Motors specifically benefitted from the fraudulent conduct by paying out much lower amount for non-OEM, non-genuine parts and supplies and charging the same amount as though genuine and OEM parts and supplies had been used.

177. The difference in the price and value between OEM certified parts and non-OEM, non genuine parts is huge. By way of example, non-OEM certified oil filters can cost in the neighborhood of $7 versus $35 or more for OEM certified/genuine filters.

178. The oil purchased by Autobahn Motors was produced by Pennzoil, which can cost about one-third of the oil recommended/designated by Mercedes-Benz to be used [Mobile 1 Synthetic].

179. Former Autobahn Motors parts advisors confirm and state that they regularly gave non-OEM parts from the Autobahn Motors parts department, and provided those parts to service techs who performed the actual repairs; and stated that they would then key in the part number for an OWM parts, even though non-OEM parts were used.

180. That key in later went into the repair order, into the booking data and into the final invoice to the customer.

181. As a result, the customer was invoiced for an OEM part, but in fact a non-OEM part was used.

182. Further, a former service adviser [Roopesh Chandra] has stated that when generating an invoice, he did not input the non-OEM part number, instead inputting the OEM part number, and transmitted the invoice data from the booking data to the accounting department for a final invoice. He stated that he did not ever place on such a repair order, any information about non-OEM parts being used:

"Q. Is it your understanding that non-OEM parts were sold at the same price as OEM parts?

A. Yes.

Q. What is that understanding based on?

A. We used to buy them from, like, SSF or someone and sell it at the same price you would sell the Mercedes-Benz parts for.

Q. The process of preparing the Autobahn invoice to a customer, like a repair invoice, you are not involved in that; am I right?

A. No.

Q. There is a service advisor that does that?

A. The service advisor does all that. He creates a repair order. Once he creates the repair order, we bill everything out on the repair order.

Q. Do you have some impact on the ultimate invoice because you key in the part number?

A. We just key in the part number, yeah.

Q. Okay. Do you ever recall having a situation where you have used a non-OEM part, but the part number you are giving is an OEM part number?

*Ferrari v. Mercedes Benz et al.*

First Amended Complaint

40

A. Yes.

Q. And if that was done, do you understand that it would be charged the regular OEM price to a customer?

A. Yeah.

Q. And that would be a scenario where a non-OEM part was used, but still invoiced out as an OEM part?

A. Yeah."

*** 

"Q. Did you ever think keying in an OEM part number for a non-OEM part was wrong?

A. It was wrong, yes. I couldn't say anything to anybody. It wasn't my decision."

183. The customer was kept in the dark on this scandal, even after it came to light by MB USA.

184. Mercedes-Benz USA has been actively instrumental in jointly creating the publicly fraudulent ad in the form of a published writing on the Mercedes-Benz USA website, Exhibits A, B, and C hereto.

185. Autobahn Motors engaged in conduct best described as oil filter laundering, by commencing to buy its oil filters from Mercedes-Benz USA [OEM-certified], and in an effort to not arouse suspicion from Mercedes-Benz USA, used those oil filters up not by installing them in cars [as Mercedes-Benz USA would like to believe], but instead sold them and other OEM parts to other auto parts companies, including SSF Imported Auto Parts.

186. Autobahn Motors similarly buys non-OEM auto parts from SSF Imported Auto Parts, and selling their OEM parts inventory to SSF Imported Auto Parts. SSF Imported Auto Parts is in the business of buying OEM parts from Mercedes-Benz dealerships, and reselling those

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

parts to auto repair shops throughout San Mateo County, San Francisco County, and beyond.

187. Plaintiffs are in possession documents [series of invoices] from SSF Imported Auto Parts showing Autobahn Motors sale of OEM auto parts to SSF Imported Auto for the period of 2005-2015. The documents show that the total sales by Autobahn Motors to SSF Imported Auto Parts for auto parts were $5,317,582.77. The parts that were sold by For the period December 2004-May 29, 2015, the total purchases of non-OEM/non-genuine Mercedes – Benz auto parts by Autobahn Motors was $215,027.71.

188. Roopesh Chandra performed an analysis of the markup Autobahn Motors put on these wholesale prices and determined it was 1.5%. He also stated that the normal markup from the parts department to the wholesaler is approximately 17.5%. The absence of a regular markup on the OEM parts transactions shows that Autobahn Motors' agenda was not selling OEM auto parts for a profit, but was instead about using non-OEM parts, invoice as though they were OEM parts, and then offloading their own inventory of OEM parts to another wholesaler.

189. Plaintiffs make no claims that SSF Imported Auto Parts did anything wrong in buying legitimate OEM parts from Mercedes-Benz dealerships. By selling off the Mercedes-Benz USA oil filters and auto parts to other auto parts stores, Autobahn Motors made it appear as though they are really buying and using Mercedes-Benz USA genuine/OEM certified parts, as least as far as Mercedes-Benz USA was led to understand. It may be that Mercedes-Benz USA is a victim of the fraudulent conduct as well, and truly "did not know." Plaintiffs submit that Mercedes-Benz USA either actually knew, or should have known in the exercising of reasonable diligence o the OEM fraud.

42

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

190. Autobahn Motors engaged in the following activity to cover up its use of non-OEM parts:

191. Former parts advisors have stated that it became known at Autobahn Motors that MB USA officials would be coming to Autobahn Motors to do an inspection of the premises. An order came out from the parts manager's boss to the parts advisors requiring that the non-OEM and other parts be removed from the parts department.  The parts were removed for a period of a couple of weeks, and were then placed back into the parts area after the MB USA officials came and left.

192. Autobahn Motors also purchased various non OEM paint products, some of which are not MB USA approved.  In addition, the work done through the purchases from Finishmaster was handed off to a separately owned company called Dent Wizard who also did business as Paint Wizard.  Autobahn Motors basically delegated to Paint Wizard/Dent Wizard the task of repairing and painting some of the smaller level dents and bumpers on Autobahn Motors customers' cars, and invoiced its customers as though the work had been done at Autobahn Motors' designated certified auto body repair shop, which until late 2010 was Eurotech.

193. Autobahn Motors violated Eurotech's privacy right in its name, and in Eurotech's designation as an MB USA certified auto body shop [the first auto body shop designated as such in Northern California] by letting its customers believe that Eurotech was doing the auto body work when in fact it was being done by Dent Wizard/Paint Wizard.

194. Dent Wizard/Paint Wizard is not certified by MB USA.

195. Though it can be perfectly fine for an uncertified shop to do work on a Mercedes, what makes it wrong here is that Autobahn Motors showed their invoicing and their name, and

their statement that they were an MB USA certified repair shop, and thereby committed a second type of fraud herein [auto repair certification fraud].

196. There was a substantial volume of cars done under this auto repair certification scheme. Based on data provided by Finishmaster [an auto paint distributor], and based on calculations from the use of clear coat [the final stage of auto paint job is to apply clearcoat which acts as a glossy sealant to preserve the paint], approximately 1200-1250 cars probably had been repaired under this scheme.

**C. Conduct of David Ahlheim**

197. David Ahlheim was formerly the parts department manager of Autobahn Motors and was later promoted to the Fixed Operations Director at Autobahn Motors, and is now the Director of Parts and Service. He is the person who implemented the whole array of activity resulting in the fraudulent use of non OEM parts invoiced and sold as OEM parts at Autobahn Motors during the period of 2005-present.

198. Ahlheim implemented the Autobahn Motors website [See Exhibit D hereto] that only OEM and genuine parts and supplies were used for Mercedes-Benz repairs at Autobahn Motors.

199. He is responsible for implementing the program to purchase non-OEM certified oil, oil filters, air filters, cabin filters, disc brake pads assembly, shock absorbers, spark plugs, other parts; placing those non-OEM parts in the department of Autobahn Motors; and instructing the parts mangers and dole those parts out to tech service workers who actually install them.

200. Ahlheim takes his orders from Sonic Automotive and is responsible for implementing the non OEM program.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

201.  Ahlheim implemented the Autobahn Motors service department personnel to install the non-OEM certified/non-genuine Mercedes Benz parts into customers' cars, including Plaintiffs' herein. He also directed the service department to key in OEM parts numbers into customer repair orders.

202.  Ahlheim ordered the Autobahn Motors service department to print out invoices to customers such as Plaintiffs that show price levels charged as though OEM certified and genuine Mercedes Benz parts were used/installed when in fact lower priced non-OEM, non genuine Mercedes-Benz parts were used. The price and value difference between non OEM certified parts/supplies and OEM-certified, Mercedes Benz genuine parts is significant.

203.  Autobahn Motors is responsible for the fraudulent conduct of David Ahlheim based on the doctrine of respondeat superior. Ahlheim worked in his position as Autobahn Motors' parts manager and later the Fixed Operations Director at all relevant times to this complaint. Ahlheim was directed by his direct boss at Sonic Automotive, or other Sonic Automotive officials, who ordered Ahlheim to implement this OEM fraud.

204.  David Ahlheim aided and abetted Autobahn Motors' placement of a false and misleading ad, by agreeing to implement the directive given by his superior officials within Sonic Automotive Inc., and taking actual steps to implement the OEM fraud, by maintaining as part of his job duties Autobahn Motors' website, which he knew to be including and publishing a statement that only OEM parts were used, when he had actual knowledge that non OEM parts were being used.

**D. Conduct of Sonic Automotive**

205. Sonic Automotive is a corporation organized under the laws of the state of Delaware, having a principal place of business in North Carolina, and doing business in California. See

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

45

excerpts of its website, Exhibit F hereto. It reportedly has "over 100 dealerships spread across 14 states and 25 major metropolitan markets."

206. Former automotive parts advisors from Autobahn Motors state that they were under orders to use zMAX in every used car repair job coming in. zMAX constitutes a non-OEM part. The mandate given to the parts department to use it, was initiated an propelled by and out of Sonic Automotive, Inc. in this way, they directly participated in a scheme to use a non-OEM part of their own making, and having that part in voiced to the customer as though it were an OEM part.

207. Sonic Automotive is sued herein because of their direct involvement in the fraudulent conduct and fraudulent advertising complained of here. It is the owner of Autobahn Motors, Inc. It directed David Ahlheim to engage in the fraudulent conduct; Sonic and Autobahn encouraged his conduct and facilitated it by requiring the conduct, knowing full well that it would then commit the fraudulent conduct, and other intentional wrongful conduct described herein, which they as owner has benefitted from in the terms of charging customers at OEM prices for parts that were not OEM.

208. Sonic further was directly involved in the non–OEM scandal because its sister company Speedway Motorsports, Inc. ["SMI"], produces a part called zMAX, which is a liquid oil additive. We call it a "sister company", because the founder and CEO of Sonic is also the founder and CEO of SMI; and many of the members of the boards of directors of the two companies are directors of both companies. See excerpts of Sonic's website, Exhibit F hereto, and excerpts of SMI's website, attached hereto as Exhibit I hereto.

209. Sonic and Autobahn intentionally and deliberately concealed Z Maxx's non-OEM status from Autobahn Motors' customers. Mercedes Benz USA publishes a car owner's manual.

For example, the car owners manual for a Mercedes Benz CLK states [See attached Exhibit D]:

"Engine Oil Additive. Do not blend oil additives with engine oil, they may be harmful to engine operation. Damage or malfunctions resulting from blending oil additives are not covered by the Mercedes Benz limited warranty. "

210. Sonic Automotive Inc. directly benefitted and was motivated to implement its non-OEM parts scandal. Sonic as owner of Autobahn Motors receives a direct financial benefit when its revenues and profits increase. Either a dividend is paid, in which case Sonic Automotive would receive the dividend, or the profit is retained in which case, Sonic would receive an increase in its stock holding.

211. In addition, Sonic Automotive further by its direct interest in the company that produces zMAX . This is a non-OEM part, which Sonic directly ordered Autobahn Motors to use in all jobs.

212. Sonic Automotive aided and abetted the misleading ad placed by Autobahn Motors by directing Autobahn Motors to place an ad knowing that he ad is false. Sonic Automotive knew that in directing its subsidiary dealership, Autobahn Motors, to publish the ad, that Autobahn Motors would and did commit an intentional wrongdoing of a fraud and deceit. Sonic Automotive benefitted from this scheme because it is the owner of Autobahn Motors, and thus reaped the rewards of the OEM scandal.

**E. Facts re Individual/Enterprise Interrelations**

213. The following facts concern the interrelationship between the involved individuals and enterprise, and how the individuals used the enterprise to conceive and implement the fraudulent scheme.

47

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

214.   Defendants each constitute an enterprise separate and apart from the improper conduct alleged herein.

215.   Each of these defendants is a substantial company, employing many persons. They each constitute an enterprise for RICO purposes.

216.   MB USA is a new car and auto parts company which distributes the Mercedes Benz Automobile line and OEM parts line throughout the United States.  According to its website, it employs over 1600 persons, and oversees 338 dealerships employing over 22,000 persons [See http://www.mbusa.com, the hard copy of excerpts of which are printed out and attached as Exhibit A.]

217.   Autobahn Motors is a corporation with a principal place of business in Belmont, California, but doing business with national and international companies. Excerpts of its website are attached hereto as Exhibit D.  Its website also lists approximately 115 employees in the following departments: sales [25]; service [75]; parts [11]; and finances [4].

218. Sonic Automotive is a corporation organized under the laws of the state of Delaware, having a principal place of business in North Carolina, and doing business in California. See excerpts of its website, Exhibit F hereto. It reportedly has "over 100 dealerships spread across 14 states and 25 major metropolitan markets."

219. All three of these companies have a formalistic corporate structure [with a President, Vice President(s), treasurer]; and including finance managers, human resource managers, accounting managers, marketing managers, and other related corporate officials.

220. David Ahlheim is a member of the Autobahn Motors enterprise and is part of that management team first as Fixed Operations Director, and now as Director of Parts and Service. Ahlhiem is the individual within Autobahn Motrs who was the primary conceiver/ instigator/implementer/ administrator of the scheme to purchase non-genuine MB USA auto parts and to invoice them as though they were genuine MB USA auto parts, and at genuine MB USA auto parts prices.

221. Plaintiffs know the method by which this was done, based on the testimony of former Autobahn Motors parts department manager, Mr. Frank Rosier, and thought the depositions of former Autobahn Motors parts advisors, Mr. Roopesh Chandra and Mr. Greg Graziani.

222. Their testimony described the following hierarchy of individuals at Autobahn Motors applies to this OEM fraud/racketeering scheme.

|  | The Enterprise: Autobahn Inc. dba Autobahn Motors |  |
|---|---|---|
|  | Joe Cox General Manager [October 2012-present], former regional vice president of Sonic Automotive, Inc. [April 2008-September 2012 |  |
|  | David Ahlheim, Fixed operations Director |  |
|  | Frank Roseier, Parts Manager |  |
| Roopesh Chadnra, Greg Grazinai, Parts advisor | Service advisor, such as Steve Meade; person who meets face to face with car repair customers | Service Technician: Mike DelRosario and others |
| Invoice Department | Warranty claim review/Booking Department |  |

223.   Joe Cox has been General Manager of Autobahn Motors since October 2012. He was previously regional vice president of Sonic Automotive, Inc. from April 2008-September 2012.

224.   So far, the witnesses have all pointed of David Ahlheim as the person directly responsible and involved in creating and implementing this OEM parts fraud. Mr. Ahlheim has a lengthy career as a parts professional, and came up through the dealership ranks as a repair technician, later became manager of the parts department, where he learned all of the ins and out of the Mercedes-Benz auto industry; and then became directors of Fixed operations, akin to Chief Operating Officer of Autobahn Motors. David Ahlheim directed his subordinate Frank Rosier, Autobahn Parts Manager to commence a regular program of purchasing non-genuine parts from reputable supplies, including Munich Auto Parts [oil filters, air filters, cabin filters, spark plugs, and other], and from SSF Imported Auto part [full gamut of all non-genuine auto parts applicable for Mercedes-Benz. the parts department through Frank Rosier would order parts via email transmission to the non-genuine parts supplier. the email would list the part number, the quantity requested. the parts supplier would then accept the order and an invoice and other appropriate shipping would be prepared, and would then send the non-genuine auto parts directly to Autobahn Motors.

225.   The non-genuine parts would be physically stocked in the shelving area of the parts department. When a service technician would come to the parts department for a part on a repair, the parts department would regularly give out the non-genuine parts form use in the repair. The repair tech would then take the non-genuine part, and remove the existing part from the customer's car, and would then replace it wit the non-genuine part.

50

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

226.   The parts department would then enter data to the repair order, which would include the parts number of an MB USA genuine part.

227.   The repair order process begins at the desk of the service advisor, such as Steve Meade, who conducts face-to-face discussions with the MB USA repair customer. A repair order is developed to take the car into service; do a diagnosis/assessment of what is wrong wit the car; and to then prepare a repair order ["RO", as they are referred to in the industry]. The repair order becomes the basis for a written estimate of repairs given to the customer, which the customer is required to receive in writing and to approve wither in writing or verbally.

See B&P code section 9884.9(a), which states:

"(a) The automotive repair dealer shall give to the customer a written estimated price for labor and parts necessary for a specific job. No work shall be done and no charges shall accrue before authorization to proceed is obtained from the customer. No charge shall be made for work done or parts supplied in excess of the estimated price without the oral or written consent of the customer that shall be obtained at some time after it is determined that the estimated price is insufficient and before the work not estimated is done or the parts not estimated are supplied. Written consent or authorization for an increase in the original estimated price may be provided by electronic mail or facsimile transmission from the customer. The bureau may specify in regulation the procedures to be followed by an automotive repair dealer if an authorization or consent for an increase in the original estimated price is provided by electronic mail or facsimile transmission. If that consent is oral, the dealer shall make a notation on the work order of the date, time, name of person authorizing the additional repairs, and telephone number called, if any, together with a specification of the additional parts and labor and the total additional cost, and shall do either of the following:
 (1) Make a notation on the invoice of the same facts set forth in the notation on the work order.
 (2) Upon completion of the repairs, obtain the customer's signature or initials to an acknowledgment of notice and consent, if there is an oral consent of the customer to additional repairs, in the following language:
 'I acknowledge notice and oral approval of an increase in the original estimated price.'
 Nothing in this section shall be construed as requiring an automotive repair dealer to give a written estimated price if the dealer does not agree to perform the requested repair."

228.   Autobahn Motors' violation of this statute constitutes fraud per se.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

229.   After the customer approves the estimate, the work commences, the repair order is created, and the repair tech is responsible for setting out a description of whatever repairs were done. Those descriptions are then inserted into the RO, for what will later become the invoice.

230.   The parts department keys in the data about the parts used. In order for this scheme to happen, the parts department was ordered by David Ahlheim, and in turn was ordered by Frank Rosier to falsify invoices by keying in the parts data used on a repair with a genuine MB USA parts number and genuine price.

231.   This falsification was done deliberately and intentionally, and with full knowledge of its falsity, and with further knowledge that for the most part, a customer would never be the wiser as to that scheme.

232.   The customer would then pay the invoice, and have no idea that the parts that were given to the customer were not genuine.

233.   There is a further group of people and enterprises involved in the process of implementing a marketing campaign for the sale of the non-genuine product zMAX. The interrelations between the individuals and entities is set forth in the below box.

| Speedway Motorsports, Inc. | Sonic Automotive, Inc. |
| --- | --- |
| Makes zMAX; sells zMAX to auto dealers, including Autobahn Motors | Owner of over 100 auto dealerships owned by Sonic, one of which is Autobahn Motors |
| President: O. Burton Smith | President: O. Burton Smith |

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

| | Directs Autobahn Motor to purchase and market zMAX to Autobahn Motors repair customers |
| --- | --- |
| | Enterprise: Autobahn Motors |
| | Joe Cox, General Manager of Autobahn Motors<br><br>Obeys Sonic directive to buy and market zMAX |
| | Parts advisors and service advisors at Autobahn Motors |

234.    As to Joe Cox, he was involved in the scheme as follows:

235.    Joe Cox had either actual or constructive knowledge of the scheme, and permitted the scheme to go forward; and with knew or should have known that consumers were in fact being regularly defrauded by Autobahn Motors. Joe Cox, as the General Manager of Autobhan Motors ratified,. cenocneted, and approved the conduct of David Ahlheim in implementing this fraudulent OEM scheme.

236.    Joe Cox was individually involved with the marketing campaign about zMAX.  zMAX is a gas oil engine additive produced by Speedway Motorsports, Inc. As noted above, the presidnet opdSeMI is the president of Sonic, and has directed its dealers including Autobhan, to buy zMax, and to market it to Autobahn Motors' repair customers.

237.    Joe Cox was personally involved in implementing the marketing campaign to sell zMAX. at Autobahn Motors. He was asked by officials at Sonic, his former employer. Sonic

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

Automotive's founder and president, Mr. O. Burton Smith is also the founder of Speedway

Motorsports, Inc., the company that manufactures and markets zMAX.

238.    Whether zMAX is any different now, than in 2003, when the FTC obtained its fraud

judgment [Exhibit K] is currently under study by plaintiffs. If it turns out that zMAX is

basically the same product with the same ingredients as when it was advertised as back in

2001-2003, then Autobahn Motors, Sonic Automotive, and its individuals are thereby

culpable of continuing in a fraudulent and misleading advertising campaign in defiance of the

permanent injunction, exhibit K hereto.

239.    For now, what plaintiff knows is that zMAX. was offered up at the point of sale officer

advisor's desk, exhibit E hereto, which fraudulently mislead customers, including plaintiffs

herein into believing that zMAX was a genuine MB USA auto part. The true facts are that

zMAX is expressly excluded by the language of the MB USA owner's manual [See CLK

Owner's manual, attached hereto as Exhibit G]:

> "Engine Oil Additive. Do not blend oil additives with engine oil, they may be harmful to
>
> engine operation.   Damage or malfunctions resulting from blending oil additives are not
>
> covered by the Mercedes Benz limited warranty."

240.    Plaintiffs allege that the fact that zMAX was non-genuine, but was shown and advertised

as genuine constitute specified and different of non-OEM fraud than as described above with

respect to the non-genuine parts purchases from Munich Auto and SSF Imported Auto Parts.

in the zMAX example, due to the relationship between the president an founder of Speedway

Motorsports, Inc. and Sonic, the marketing incentive began with him, Mr. O. Burton Smith,

54

and was carried to dealers owned by Sonic [there are more then 100 such dealers], and gave general managers like Joe Cox to complete a marketing campaign at the dealership level for the sale of zMAX as part of the maintenance offering shown in the form of a high quality booklet.

241.    At that point, Joe Cox instructed David Ahlheim to instruct the parts department to purchase wholesale quantities of zMAX from Speedway Motorsports, Inc. Plaintiffs do not know the dollar amount of zMAX volume sold, and have issued a subpoena to determine the volume of zMAX sold.

242.    Witness Roopesh Chandra testified that they were ordered to use zMax in all used/pre-owned cars.

243.    It was regularly offered to customers, and based on that, plaintiffs allege and state that the volume was substantial.

244.    The parts department gave out the zMAX to service techs for installation into the repair customers' automobiles. The RO [repair order] would not state that zMAX was not a genuine part and/or approved by MB USA. Autobahn Motors did this knowing that these owner manuals contained an express statement NOT to use such oil additives.

245.    The customer would then pay the invoice, under the completely and deliberately misguided belief that zMAX was a Mercedes-Benz genuine product.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

246.   MB USA's conduct in knowing, ratifying, Autobahn Motors' conduct of promoting and using zMAX, and using other non-OEM/non-genuine parts constitutes an active and direct participation in Autobahn Motors' fraudulent conduct of as described above.

247.   MB USA's ads are at the beginning of the process, at the service department, and at the end of the process, when the customer gets the invoice [Exhibit C].

248.   With respect to the individuals interacting with the enterprise of MB USA, plaintiff has the following information:

|  |  |  |
|---|---|---|
|  | Parent Company: Daimler AG Corporate Headquarters Mercedesstr. 137 70327 Stuttgart, Germany owner of Mercedes-Benz; owner of Mercedes Benz logo, trade mark, and brand name, and MB USA LLC |  |
| Drector of Marketing | Director of warranty claims | Director of research & development |
|  | MB USA LLC headquartered in Atlanta Georgia operations Daimlers marketing objectives for the sale of Mercedes-Benz cars and auto parts

President of MB USA, Steven Cannon |  |
| Director of Marketing | Director of warranty claims | Director of research & development |
| Outsourcing to ad agencies [Ross Delconte now of the | Walter Schmitt, Warranty Audit/Controlling Specialist; Field operators |  |

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

| greater New York area] | [Mike Frates – investigates warranty claims]; | |
| --- | --- | --- |
| | Autobahn Motors, and other authorized MB dealerships | |

249.   MB USA employed or contracted with individuals who performed regular and periodic audits of Autobahn Motors. During those audits, they saw, among other items, the selling catalog with zMAX in it [Exhibit E hereto].

250.   MB USA Field agents and investigators determined that non-genuine parts had been used in a customer car at Autobahn Motors. Field agent Mike Frates performed a car autopsy on an MB vehicle at Autobahn Motors, the car had exploded. He had the vehicle opened up, and is believed to have reached the conclusion that there was evidence of non-genuine oil fragments in the car. The MB warranty does not apply on the non-genuine parts. MB USA used this to deny the customer's warranty claim.

251.   Eyewitness Mike DelRosario, former service technician, testified that he personally showed an MB USA field investigator that an improperly-low grade oil had been used against MB USA guidelines. The MB USA official confirmed this, and brought the information to MB USA official Mr. Walter Schmitt. Mr. Schmitt used that information to then reverse the previously-accepted warranty claim on the basis that improper oil had been used.

252.   Except for these two individuals, MB USA did not take further steps to disclose a general use of non-OEM products at Autobahn Motors. It instead engaged in cover up as though it

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

knew nothing about it, except in order to save its own financial interests in denying warranty claims based on those parts.

253.    With respect to MB USA's fraudulent advertising shown as exhibit A, B, and C, hereto, individuals within and outside of MB USA are involved the process of conceiving the advertising program, implementing the advertising program, , developing the artwork, graphics, narrative, photography, style, design, and layout of the ad, drafting and design look and placement of the MB USA warranty that is placed on the back of Autobahn Motors invoices.

254.    This participation in the advertising and the failure to disclose the use of non-OEM/non-Mercedes-Benz genuine parts constitutes an active and direct participation in Autobahn Motors' fraudulent conduct.

**F. Facts re Interstate Commerce**

255.    MB USA's ads are at the beginning of the process, at the service department, and at the end of the process, when the customer gets the invoice [Exhibit C].

256.    The back side of Exhibit C also indicates the address of MB USA is listed as Montvale, NJ. That address and connection further shows interstate commerce.

257.    As for the development of the ad, the website and corporate brochures [Exhibit A and B] are done by MB USA individuals that plaintiffs do not know the identities of, and states that

58

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

they are within the marketing division of MB USA, but also involves people in auto parts research and development/technical testing.

258.    Below them are outsourced agencies such as with John Diaz and his former company Zonic Design & Imaging, a San Francisco, California-based advertising and marking firm with specific experience in the automotive world.

259.    Plaintiffs also allege that interplay between the Mercedes-Benz design teams in Germany, Atlanta, and California through the use of interstate commerce including fax, email, and telephone. It was a significant amount.

260.    This includes, for example, Mr. Ross Delconte, of greater New York City are, who during 2005-2014 years provided ad services to MB USA states on his Linkedin account states the following:

"Creative Director
Mercedes-Benz USA Torque Creative

January 2005 – August 2014  (9 years 8 months)Montvale, NJ

Creative Director responsible for the strategy, conception and visualization of the creative content that fed mbusa.com for Mercedes-Benz, USA. From hero visuals to vehicle configurators, my creative vision fueled MBUSA to be ranked in the top third in the industry in the JD Power MWES fielding for over 8 years. Recently ranked 1st overall in Site Appearance, receiving the highest individual score of any segment, in the 2014 JD Power MWES Fielding.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

261.    The involvement of content from Germany, the greater New York Area, which results in a brochure placed at the point of sale [service advisor at a dealer], constitutes interstate commerce.

262.    As a further example of the interplay between Germany, Greater New York area, Atlanta Georgia, and California by MB USA is a 24-page brochure entitled "genuine Mercedes-Benz Accessories for the C-Class Sedan and Coupe [2011] states on page 24: "Printed in the Federal Republic of Germany". the 24-page brochure describes an array of various accessories [such as ski racks, iPad docking stations, spoke wheel, wheel hub inserts, and many others]

263.    It is believed that individuals within MB USA's marketing department also received factory guidelines and other examples of artwork, style and design from individuals within the marketing department of MB USA's parent company, Daimler AG.

264.    Plaintiffs do not know the names of the individual with Daimler AG, but states that those individuals have developed and approved the raw material used in the advertisements, including the photography used, the narrative language used, and the representations regarding the numerical longevity claims of MB genuine auto parts.

265.    There is a kind of triangle of information between the German parent company, the testing facilities in New Jersey, outsourcing testing [names of outsourcing entities unknown, in NJ and elsewhere] and marking professionals located either in Germany or Atlanta.

60

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

266.    Plaintiffs are aware that at the local level, MB USA and the dealers cooperate to prepare the brochures [exhibit B] John Diaz was an advertising person who brought forward the project of the brochures [exhibit B]. Diaz did not prepare the photos and other artwork which was approved by him through MB USA's other outsources ad agencies.

267.    John Diaz is not sure where those photos originated, but on information and belief, plaintiff alleges that the add in part originated with individuals within Daimler AG, or such other outsourcing done by Daimler AG, which they then passed on to MB USA, which in turn passed it one to the dealerships such as Autobahn Motors, who in turn provide such information to add service like plaintiff John Diaz.

268.    The conduct alleged herein utilizes the means of interstate commerce including transactional and international orders, purchases, and shipments of OEM and non-OEM parts from overseas manufacturers [in China, Germany, and elsewhere], and through interstate ordering of auto parts that travel from other states to California.

269.    By way of example, the non-OEM oil filters complained of herein were sourced by Munich Auto Parts Warehouse [with offices in New Jersey and California] from China.

270.    In the course of administering and performing the various activities of the enterprise, and the activities pertaining to the R.I.C.O. offenses alleged herein, Defendants used the instrumentalities of interstate commerce.

271.    Discussions leading to orders and shipment of parts were done primarily through the use of email.  Other discussions occurred through telephone and fax.  There may be instances

61

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

where payments for the parts were done through a bank wire. As stated above, the auto parts themselves were transported between state lines.

## G. Allegations of Predicate Offenses

272. The following predicate offences are alleged in support of this RICO claim:

1. mail fraud; and
2. wire fraud.

273. The communications required to buy non-OEM parts from auto supply warehouses, and to also offload OEM parts to auto body warehouses, all of which were part and parcel to the fraudulent use of the non-OEM parts; was done in substantial part with these of telephone discussions, email communications, and thus constitute wire fraud.

274. The OEM fraud also in substantial part uses the mail system in that the various invoices and payments for the whole sale purchases and sale of OEM and non-OEM parts were done though the use of the mail service.

275. The fraudulent advertising is posted on both a website owned and operated by MB USA and on another website owned and operated by Autobahn Motors. Those websites use the internet as the point of publication of the ad, which thus constitutes wire fraud.

276. There is further a website interlink between MB USA website, which states that only OEM parts are used, and when a customer search for a dealer near Autobahn, that customer is redirected to the Autobahn Motors website.

277. The Internet was used as part and parcel in effectuating this campaign including the ordering of non-OEM parts from companies such as SSF Imported Auto and Munich Parts

1   Warehouse; processing orders from SSF Autobahn for OEM parts [order generally made by

2   email].

3

4   278. The US mail was used in part because Autobahn Motors published a newsletter [Exhibit G]

5   which was mailed out to the customers in the San Mateo community and thereabouts.

6

7   279. The fraudulent advertising was further done in the form of periodic newsletters published by

8   Autobahn Motors and were sent out by the US Postal Service in the tens of thousands to

9   Autobahn Customers in the San Mateo County newsletter and elsewhere.

10

11  280. An exemplar of an Autobahn newsletter is attached hereto as Exhibit G, page 284 [date

    unknown] and states: "Genuine Mercedes Benz parts".

12

13  281. According to documents obtained from Autobahn Motors' advertising company, the series

14  of newsletters were sent out by US postal service in the range of 217,316. See Exhibit G,

15  page 284 [date unknown].

16

17  282. The newsletters were sent out through the United States postal service periodically during

18  the period of 2005-present, and are believed to be still being sent out.

19

20  **H. Damages**

21

22  283.    As a proximate result of Defendants conduct, Plaintiff suffered actual damages.

23  Damages are requested equal to the full amount charged to class members who received an

24  OEM part, but were invoiced and paid for an OEM part; Plaintiffs request consequential

25  damages equal to the value of the impact of the use of non-OEM products on the claimants

26

27  *Ferrari v. Mercedes Benz et al.*

28  First Amended Complaint

63

automobiles, including an impact whereby their cars needed irregularly high levels of repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer. Plaintiff requests all consequential damages, however suffered.

284. Plaintiffs further seek a trebling of its damages pursuant to the R.I.C.O. Act, 18 U.S.C. Section 1961 et seq.

285. An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000. It is likely the 17,795 oil filter represent 17,795 different victims. However some allowances must be made for the fact that some of the victims have more than one Mercedes cars, some of the victims have brought the same car in multiple times.

286. The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they bargained for. These claims are made in an amount according to proof, in excess of $15 million, for total damages according to proof but in excess of $21 million.

287. In the alternative, Plaintiffs request for some other amount of damages and damage calculations that the court deems just and appropriate is on the basis that they paid for

64

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

1  something, that they did not receive. Their part served requests required OEM, parts and that

2  Plaintiffs and class member have also suffered compensatory and general damages to their

3  vehicles, arising from the fact that use of non-OEM arts, such as oil filters, zMAX, oil, and

4  other non-OEM parts as described in this complaint negatively impact the Mercedes Benz

5  automobiles owned by Plaintiffs herein.

## I. Further Relief Requested

288.  Plaintiffs herewith seek the following other relief:

289.  Unless and until injunctive relief is issued by the court, Defendants will continue in their
       conduct. Defendants' conduct violates the RICO Act, and is this enjoinable. Plaintiffs are
       presumed to have suffered irreparable harm in light of the showing of a RICO Act
       violation.

290.  Plaintiffs accordingly requests injunctive relief in the form of an order enjoining and
       prohibiting the defendants from using an enterprise to commit acts of mail fraud and wire
       fraud, and such other injunctive relief as the Court deems just and appropriate.

291.  Specifically, Plaintiffs request an injunction prohibiting defendants from advertising either
       through brochures, emails, or invoices, that they only use or did use genuine Mercedes-
       Benz parts, when in fact they use non- genuine Mercedes-Benz parts

292.  Plaintiffs also request declaratory relief in the form of a decree in which the Court states
       that the Defendants have violated the R.I.C.O. Act by their conduct towards Plaintiffs and
       other victims, as alleged herein; and such other and further declaratory relief as the Court
       deems just and appropriate.

65

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

293. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate.

294. Plaintiffs further seek attorneys fees as allowed under the R.I.C.O. Act.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

**V.**

**SECOND CLAIM FOR RELIEF FOR VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17500 [MISLEADING ADVERTISING] [AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, DAVID AHLHEIM, AND SONIC AUTOMOTIVE, INC.]**

295. Plaintiffs assert this second claim for relief for violation of Business & Professions Code section 17500 [misleading advertising] against Defendants Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn Motors, David Ahlheim, and Sonic Automotive, Inc.

296. The allegations of paragraphs 1-294 above are incorporated herein as though set forth in full.

297. The allegations of fraudulent conduct, including the specification of the ads and how they were done in a fraudulent knowing manner, is set out in the first claim for relief for violation of the RICO Act, paragraphs 66-292 above, which are also incorporated into this claim for relief.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

298. Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim's conduct constitutes the dissemination and publication of false and misleading advertisements in violation of Business & Professions Code section 17500, which provides:

"It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."

67

299. Plaintiffs request all available equitable remedies under Business & Professions Code section 17500, including injunctive relief requiring the Defendants to stop their OEM Auto parts fraudulent and misleading advertisements, and if allowable, a further affirmative injunction requiring Defendants to engage in an ad recall, in which they state words to the effect that their previous ads were false and misleading, and to add corrective statements; or such other injunctive relief as the court deems just and appropriate.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## VI.
### THIRD CLAIM FOR RELIEF FOR FRAUD – INTENTIONAL MISREPRESENTATION AND CONCEALMENT
### [AGAINST DEFENDANTS MERCEDES BENZ USA, LLC,  AUTOBAHN, INC. DBA AUTOBAHN MOTORS, DAVID AHLHEIM, AND SONIC AUTOMOTIVE, INC.]

300. Plaintiffs assert this second claim for relief for fraud based on intentional misrepresentation and concealment against Defendants Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn Motors, David Ahlheim, and Sonic Automotive, Inc.

301. The allegations of paragraphs 1-299 are incorporated herein as though set forth in full.

302.   The allegations of fraudulent conduct, including the specification of the ads and how they were done in a fraudulent knowing manner, set out in the first claim for relief for violation of the RICO Act, paragraphs 66-292 above, which are also incorporated into this claim for relief.

68

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

303.    Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim conduct constitutes intentional fraud by making a material misrepresentation in writing and verbally as given by the service advisors at Autobahn Motors during the process of talking to repair customers.

304.    Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim conduct further constitutes a fraud by concealment of a material facts that:

(a) genuine MB auto parts were not being used;

(b) Consumers were being invoiced and charged at OEM prices; and that MB USA's claims about genuine auto parts' superior longevity are false;

(c) other concealments according to proof.

305.    Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim acted with knowledge of the falsity of their written and verbal statements, did so knowing the facts stated to be false; and did so with the intent to defraud Plaintiffs by inducing them to have their automobiles fixed at Autobahn Motors under the belief that their car would receive genuine parts only; and would not receive any corrosive element contradicting an owner's manual such as zMAX additives.

306.    Customers did in fact reasonably detrimentally rely on Plaintiffs misrepresentations by bringing their cars over to Autobahn Motors for which they received invoices which indicated the use of genuine parts when in fact non genuine parts were used.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

69

307.   As described above, non-OEM parts are worth less than OEM [genuine] Mercedes Benz Parts, by a significant amount, often by a factor of double.

308.   As a proximate result of Defendants conduct, Plaintiff suffered actual damages. Damages are requested equal to the full amount charged to class members who received an OEM part, but were invoiced and paid for an OEM part; Plaintiffs request consequential damages equal to the value of the impact of the use of non-OEM products on the claimants automobiles, including an impact whereby their cars needed irregularly high levels of repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer. Plaintiff requests all consequential damages, however suffered.

309.   An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000. It is likely the17,795 oil filters represent 17,795 different victims. However some allowances must be made for the fact that some of the victims have more than one Mercedes cars, some of the victims have brought the same car in multiple times.

310.   The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they bargained for. These claims are made in an amount according to proof, in excess of $15

70

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

million, for total damages according to proof but in excess of $21 million.

311.   In the alternative, Plaintiffs request for some other amount of damages and damage calculations that the court deems just and appropriate is on the basis that they paid for something, that they did not receive. their part served requests required OEM, parts and Plaintiffs and class member have also suffer compensatory and general damages to their vehicles, arising from the fact that use of non-OEM arts, such as oil filters, Z-Maxx, oil, and other non-OEM parts as described in this complaint negatively impact the Mercedes Benz automobiles owned by Plaintiffs herein.

312.   Plaintiffs further seek an award of exemplary damages in an amount according to proof against David Ahlheim, based on willful, fraudulent, oppressive, and malicious conduct. Ahlheim's conduct was done with the intent to trick unknowing customers, who he know had no way of knowing; and who knew had entrusted their valuable cars to Autobahn Motors' repair facilities; Ahlheim is believed to have personally partaken in eating the fraudulent cake.

313.   Plaintiffs further seek an award of exemplary damages in an amount according to proof against Autobahn Motors. David Ahlheim's conduct described above was known by the upper management of Autobahn Motors. Autobahn Motors benefitted financially from the fraudulent scheme. Autobahn Motors ratified, consented, and encouraged David Ahlheim to act in this manner.

314.   Plaintiffs also seek exemplary damages against Mercedes Benz USA based on the fact that Mercedes Benz USA directly participated in the fraudulent ads through its own MB USA false ads identified herein as Exhibits A, B, and C hereto. had actual knowledge of the fraudulent scheme, and chose to assist in covering it up and remaining quiet to the many customers of Autobahn Motors. Mercedes Benz USA's conduct in this regard, constitute fraudulent and oppressive conduct, and also aided and abetted Autobahn Motors and David Ahlheim's fraudulent, oppressive and malicious conduct. Exemplary damages are requested in an amount according to proof.

315.   Had MB USA done the right thing, it would have learned that this wasn't a single incident occurrence as suggested by their auditing note, but was rather a widespread practice committed with substantial premeditation and expertise. Had MB USA done the right thing and instituted a full fix to the problem, the Plaintiffs would have received their full compensation thereby.  Plaintiffs thus request full damages against MB USA for directly participating in the false ad, and directly participating in a cover-up of the non-OEM fraud.

316. Autobahn Motors' violation of this statute constitutes fraud per se

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

## VII.
## FOURTH CLAIM FOR RELIEF FOR NEGLIGENT MISREPRESENTATION
## [AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, AUTOBAHN, INC. DBA
## AUTOBAHN MOTORS, DAVID AHLHEIM, AND SONIC AUTOMOTIVE, INC.]

317. Plaintiffs assert this fourth claim for relief for negligent misrepresentation against

Defendants Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn Motors, David

Ahlheim, and Sonic Automotive, Inc.

318. The allegations of paragraphs 1-316 above are incorporated herein as though set forth in

full.

319. The allegations of fraudulent conduct, including the specification of the ads and how they

were done in a fraudulent knowing manner, set out in the first claim for relief for violation

of the RICO act, paras 66-292 above, which are also incorporated into this claim for relief.

320. Defendants' conduct constitutes a negligent misrepresentation and/or a negligent

concealment.

321. As a proximate result of Defendants' conduct, Plaintiffs suffered actual damages.  Damages

are requested equal to the full amount charged to class members who received an OEM part,

but were invoiced and paid for an OEM part; Plaintiffs request consequential damages equal

to the value of the impact of the use of non-OEM products on the claimants automobiles,

including an impact whereby their cars needed irregularly high levels of repairs, and for

some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer.

Plaintiff requests all consequential damages, however suffered.

73

322. An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000.  Plaintiffs do not know the total amount they have spent on the other non genuine parts such as spark plugs; motor mounts; v belts; end gaskets; engine mounts; battery units; brake sensors; and other non genuine parts; and thus allege damages therefor in an amount according to proof, but believed to excess of $15 million.

323. The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they bargained for. These claims are made in an amount according to proof, in excess of $15 million, for total damages according to proof but in excess of $21 million.

324. In the alternative, Plaintiffs request some other amount of damages and damage calculations that the court deems just and appropriate on the basis that Plaintiffs paid for something  they did not receive.

325. Plaintiffs and class members have also suffered compensatory damages to their vehicles, arising from the fact that use of zMax, lower grade oil as described in this complaint negatively impact the Mercedes Benz automobiles owned by Plaintiffs herein.

326. Autobahn Motors has produced various invoices to some of the Plaintiffs; and other Plaintiffs who have invoices have given those Invoices to Autobahn Motors.  The discovery to date shows that Autobahn Motors failed to comply with the law's requirement for an auto

74

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

1    repair facility to specify on the invoice if a genuine or non genuine part was used.  See BP
2    9875.1.

3

4    327. Autobahn Motors' violation of this statute constitutes negligent misrepresentation/
5    concealment per se.

6

7    WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.
8

9                                                **VIII.**
                **FIFTH CLAIM FOR RELIEF FOR VIOLATION OF BUSINESS & PROFESSIONS**
10                                    **CODE SECTION 17200**
                **[AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, AUTOBAHN, INC. DBA**
11                **AUTOBAHN MOTORS, DAVID AHLHEIM, AND SONIC AUTOMOTIVE, INC.]**
12

13   328. Plaintiffs assert this fifth claim for relief for violation of Business & Professions Code
14        section 17200 against Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn
15        Motors, David Ahlheim, and Sonic Automotive, Inc.
16

17   329. The allegations of paragraphs 1-327 above are incorporated herein as though set forth in
18        full.
19

20

21   330. The allegations of fraudulent conduct, including the specification of the ads and how they
22        were done in a fraudulent knowing manner, set out in the first claim for relief for violation
23        of the RICO Act, paras 66-307 above, which are also incorporated into this claim for relief.
24

25

26

27   *Ferrari v. Mercedes Benz et al.*                                                     75
     First Amended Complaint
28

331. Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim conduct constitutes the dissemination and publication of false and misleading advertisements in violation of Business & Professions Code section 17500.

332. Plaintiffs request all available equitable remedies under Business & Professions Code section 17200, including injunctive relief requiring the Defendants to stop their OEM auto parts fraudulent and misleading advertisements, and if allowable, a further affirmative injunction require Defendants to engage in an ad recall, in which they state words to the effect that their previous ads were false and misleading, and to add corrective statements in such ads they make a new ad stating; or such other injunctive relief as the court deems just and appropriate.

333. Plaintiffs request equitable remedies of disgorgement of profits; restitution; an accounting; and other equitable relief as available.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## IX.
### SIXTH CLAIM FOR RELIEF FOR NEGLIGENCE
[AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, DAVID AHLHEIM, AND SONIC AUTOMOTIVE, INC.]

334. Plaintiffs assert this sixth claim for relief for negligence against Defendants Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn Motors, David Ahlheim, and Sonic Automotive, Inc.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

76

335. The allegations of paragraphs 1-333 above are incorporated herein as though set forth in full.

336. Defendants' conduct was careless, reckless, and in breach of Defendants' duty owed to Plaintiffs, and in violation of California Civil Code 1714(a).

337. As a proximate result of Defendants' conduct, Plaintiffs suffered actual damages. Damages are requested equal to the full amount charged to class members who received an OEM part, but were invoiced and paid for an OEM part; Plaintiffs request consequential damages equal to the value of the impact of the use of non OEM products on the claimants automobiles, including an impact whereby their cars needed irregularly high levels of repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer. Plaintiff requests all consequential damages, however suffered.

338. An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000. Plaintiffs do not know the total amount they have spent on the other non genuine parts such as spark plugs; motor mounts; v belts; end gaskets; engine mounts; battery units; brake sensors; and other non genuine parts; and thus allege damages therefor in an amount according to proof, but believed to excess of $15 million.

339. The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they

77

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

bargained for. These claims are made in an amount according to proof, in excess of $15 million, for total damages according to proof but in excess of $21 million.

340. In the alternative, Plaintiffs request some other amount of damages and damage calculations that the court deems just and appropriate on the basis that Plaintiffs paid for something they did not receive.

341. Plaintiffs and class members have also suffered compensatory damages to their vehicles, arising from the fact that use of zMAX, lower grade oil as described in this complaint negatively impact the Mercedes Benz automobiles owned by Plaintiffs herein.

342. Autobahn Motors has produced various invoices to some of the Plaintiffs; and other Plaintiffs who have invoices have given those Invoices to Autobahn Motors. The discovery to date shows that Autobahn Motors failed to comply with the law's requirement for an auto repair facility to specify on the invoice if a genuine or non genuine part was used. See Business & Professions Code section 9875.1.

343. The violation of this statute constitutes negligence per se as to all defendants.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

# X.
## PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS prays for relief as follows:

1. For compensatory, consequential, and general damages, as described above, in an amount according to proof.

2. Three times the amount of the actual damages, if any, sustained by the Plaintiffs per Business & Professions Code Section 17082, and per 18 USC section 1964(c).

3. For prejudgment interest in an amount according to proof.

4. For exemplary damages against Defendants pursuant to CC Section 3294 based on the intentional misconduct described in the second, third, and fourth claims for relief.

5. For all equitable remedies available under 18 USC section 1964(a), B&P Code section 17500 and/or B & P Code Section 17200, as requested above.

6. For injunctive releife as requested above, or such other injunctive relief as the court deems just and appropriate.

7. For declaratory relief as requested above, or such other declaratory relief as the court deems just and appropriate.

8. For Defendants Autobahn Motors and David Ahlheim to provide an accounting of all profits earned as a result of their mutual transactions pursuant to CCP section 872.140 and B&P Code Section 17200.

9. For attorneys fees:

   (a) As to the first claim, for relief [violation of the RICO Act], the request for attorney fees is based on statute, 18 USC section 1964(c);

   (b) As to the fifth claim for relief [violation of B & P Code Section 17200], the request for reimbursement/payment of attorneys fees is based on the common fund doctrine in an amount according to proof on the basis of

10. For costs of suit.

11. For such other relief as the Court deems just and appropriate.

79

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

1

Respectfully submitted,

2

3     //s// Herman Franck                                    Date: March 8, 2016
      Herman Franck, Esq.

4     Franck & Associates
      Attorney for Plaintiffs

5     STEVE FERRARI and MIKE KEYNEJAD,
      individually and as a representative of the

6     Class of Persons similarly Situated;
      HOOSHANG JOWZA, CELSO FRAZAO,

7     RENUKA NARAYAN,GERTRUD FRANKRONE,
      ERNEST SALINAS, KALKHUSAN SAREEN,

8     HOSSEIN JALALI, RON WOLFE,
      SOHRAB RAHIMZADEH, FRED GRANT,

9     ESTER GRANT, VINCENT LEUNG, KEN WONG,
      JESSICA LANGRIDGE, TONY NICOLOSI,

10    DONALD LYANG, ARTUR SEMICHEV, JOHN DIAZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                                                          80
27    *Ferrari v. Mercedes Benz et al.*
      First Amended Complaint

28

1

**DEMAND FOR JURY TRIAL**

2

3   Plaintiffs herewith submit this DEMAND FOR JURY TRIAL, and request a jury trial as to all

4   claims asserted herein that are triable to a jury.

5

6

7   Respectfully submitted,

8

9

10   _//s// Herman Franck_                                    Date: March 8, 2016
     Herman Franck, Esq.

11   Franck & Associates
     Attorney for Plaintiffs

12   STEVE FERRARI and MIKE KEYNEJAD,
     individually and as a representative of the

13   Class of Persons similarly Situated;
     HOOSHANG JOWZA, CELSO FRAZAO,

14   RENUKA NARAYAN,GERTRUD FRANKRONE,
     ERNEST SALINAS, KALKHUSAN SAREEN,

15   HOSSEIN JALALI, RON WOLFE,
     SOHRAB RAHIMZADEH, FRED GRANT,

16   ESTER GRANT, VINCENT LEUNG, KEN WONG,

17   JESSICA LANGRIDGE, TONY NICOLOSI,
     DONALD LYANG, ARTUR SEMICHEV, JOHN DIAZ

18

19

20

21

22

23

24

25

26

27   *Ferrari v. Mercedes Benz et al.*
     First Amended Complaint

28

81

## List of Attachments

Exhibit A.  Excerpts of Website printout for MB USA, re use of OEM parts [www.mbusa.com]

Exhibit B.  Point of Sale Brochure

Exhibit C.  Autobahn Motors Exemplar Invoice Front and Back

Exhibit D.  Excerpts of Website Printout for Autobahn Motors including ad re only OEM parts are used; [www.autobahnmotors.com]

Exhibit E.  Autobahn Motors Mercedes Maintenance Guide

Exhibit F.  Excerpts of Website printout for Sonic Automotive, Inc. [www.sonicautomotive.com]

Exhibit G.  Excerpts from Mercedes Benz CLK Manual

Exhibit H.  Exemplar of Newsletter [date unknown]

Exhibit I.   Excerpts of Website printout for Speedway Motorsports, Inc. makers of Z Maxx [www.speedwaymotorsports.com]

Exhibit J.   *Perez et al v. State Farm Automobile Insurance, Inc.* et al.  Ninth Circuit Court of Appeals Decision

Exhibit K.  Complaint and Stipulated Judgment in Federal Trade Commission v. Speedway Motorsports, Inc. et al., MD NC, Case no 01-cv-1561

Exhibit L.  October 12, 2007 Mercedes-Benz USA LLC web listing Eurotech as a Mercedes-Benz certified collision center.

*Ferrari v. Mercedes Benz et al.*
First Amended Complaint

82