1  Herman Franck, Esq. (SB #123476)
   Elizabeth Betowski, Esq. (SB #245772)
2  **FRANCK & ASSOCIATES**
   1801 7th Street, Suite 150
3  Sacramento, CA 95811
   Tel. (916) 447-8400; Fax (916) 447-0720
4
5  Attorneys for Plaintiffs Steve Ferrari, Mike Keynejad et al.

6                 UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
7

8  STEVE FERRARI  and MIKE KEYNEJAD,        Case No. 4:15-cv-04379-YGR
   individually and as a representative of the
9  Class of Persons similarly Situated;          **SECOND AMENDED** COMPLAINT FOR:
   HOOSHANG JOWZA, CELSO FRAZAO,           **1. VIOLATIONS OF R.I.C.O ACT [Claims
10 RENUKA NARAYAN,GERTRUD                   for Relief 1-6];**
   FRANKRONE, ERNEST SALINAS,               **7. VIOLATION OF B&P CODE SECTION
11 KALKHUSAN SAREEN, HOSSEIN                17500 [MISLEADING ADVERTISING];**
   JALALI, RON WOLFE, SOHRAB                **8. FRAUD: INTENTIONAL
12 RAHIMZADEH, FRED GRANT, ESTER           MISREPRESENTATION AND
   GRANT, VINCENT LEUNG, KEN WONG,         CONCEALMENT;**
13 JESSICA LANGRIDGE, TONY NICOLOSI,        **9. NEGLIGENT MISREPRESENTATION
   DONALD LYANG, ARTUR SEMICHEV,           10. VIOLATION OF B&P CODE
14 JOHN DIAZ; HAROLD FETHE;                 SECTION 17200 [UNFAIR
   RAYMOND GAPASIN                          COMPETITION ACT];**
15          Plaintiffs,                      **11. NEGLIGENCE**
16         v.
   MERCEDES-BENZ USA, LLC; ERNST           **REQUEST FOR JURY TRIAL**
17 LIEB; STEVE CANNON; DIETMAR
   EXLER; AUTOBAHN, INC. DBA
18 AUTOBAHN MOTORS; JOE COX; DAVID
   AHLHEIM; SONIC AUTOMOTIVE INC.; O.
19 BRUTON SMITH; SPEEDWAY
   MOTORSPORTS INC.
20          Defendants
21
22 Plaintiffs Steve Ferrari, Mike Keynejad , Hooshang Jowza, Celso Frazao, Renuka Narayan,
   Gertrud Frankrone, Ernest Salinas, Kalkhusan Sareen, Hossein Jalali, Ron Wolfe, Sohrab
23 Rahimzadeh , Fred Grant, Ester Grant, Vincent Leung, Ken Wong, Jessica Langridge, Tony
   Nicolosi, Donald Lyang, Artur Semichev, John Diaz, Harold Fethe and Raymond Gapasin
24 herewith submits this Complaint For Violations Of The R.I.C.O. Act; Violation Of B&P Code
   Section 17500; Fraud – Intentional Misrepresentation and Concealment; Negligent
25 Misrepresentation; Violation of B&P Code Section 17200 [Unfair Competition Act];
   Negligence, and allege and state as follows:
26
                                                                              1
27 *Ferrari v. Mercedes Benz et al.*
   Second Amended Complaint
28

# I.
## JURISDICTION AND VENUE

1. Jurisdiction in the U.S. District for the Northern District of California is based on federal question jurisdiction, 28 USC section 1331, as the first through sixth claims for relief is a civil damage action under the federal RICO statute, 18 U.S.C. Section 1961 et seq.

2. Venue in the Northern District of California is based on 28 U.S.C. Section 1391(b), based on the fact that the defendant Autobahn Motors resides in San Mateo County, which is within the Northern District of California; and on the basis that a substantial portion of the acts, conduct, and damages allege herein substantially occurred in the Northern District of California, because the fraud emanates from Autobahn Motors' point of business in Belmont, California.

3. The Court has supplemental jurisdiction over the state law claims alleged herein, pursuant to 28 USC section 1367(a):

    "(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

2

## II.
## PARTIES

4. Steve Ferrari is a Plaintiff herein in his individual capacity and as a representative of the class of persons similarly situated. He is a resident of Woodside, CA, located in San Mateo County, CA.

5. Mike Keynejad is a Plaintiff herein in his individual capacity and as a representative of the class of persons similarly situated. He is a resident of San Carlos, CA, located in San Mateo County, CA.

6. Plaintiff John Diaz is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result. He has specific expertise in all facets of automotive sector advertising, and specifically with respect to Mercedes-Benz and other high-end automobiles. John Diaz is a prospective class representatives for individuals who brought their car for service to Autobahn Motors, and received non OEM parts, but were invoiced as if they received OEM parts.

7. Plaintiff Harold Fethe is an individual who during 2009 purchased a 2005 S12 Mercedes Benz as a preowned vehicle from Autobahn Motors. His VMI is attached [Exhibit M hereto], and shows that zMAX was put in his car by Autobahn Motors. The VMI shows that during 2009, a Mercedes Benz certified preowned warranty was issued covering the automobile for the period 09/24/2009-09/23/2011. Harold Fethe purchased a further third party warranty that expires December of 2016. Although the VMI does not show zMAX to the previous owner of Harold Fethe's car, a reasonable inference from the evidence was that zMAX was in fact placed into the car at that time. This evidence includes testimony of former parts advisor Roopesh Chandra, that they placed zMAX in all the pre-owned cars. Chandra worked at Autobahn for app. 10 years.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

3

8.  Harold Fethe is a proposed class representative for individuals who purchased a pre-owned vehicle from Autobahn Motors, Belmont, CA, in which zMax was placed, during the period 2004-present, and/or purchased pre-owned vehicle from any dealership owned by Sonic Automotive [of which there are app. 132 per the Sonic Automotive website].

9.  Plaintiff Ray Gapasin is an individual who purchased a pre-owned Mercedes Benz from non party Peter Pan Motors, a BMW dealership located in Burlingame, CA. His car had been earlier sold to the previous owner of the car, through a sale that occurred at Autobahn Motors. His VMI is attached [Exhibit M hereto], and shows that zMAX was put in his car. This car was brought to Autobahn Motors as a sublet of Peter Pan Motors for repairs. He was having problems with his oil light coming on and off. Although the VMI does not show zMAX to the previous owner of Raymond Gapasin's car, a reasonable inference from the evidence was that zMAX was in fact placed into the car at that time. This evidence includes testimony of former parts advisor Roopesh Chandra, that they placed zMAX in all the pre-owned cars. Chandra worked at Autobahn for app. 10 years. Autobahn Motors, without Plaintiff Gapasin's consent, added zMAX on September 30, 2010 [See VMI report, Exhibit M, Ray Gapasin VMI report, page 6]. Ray Gapasin's automobile is an example of where zMax caused actual injury to the physical car, in the form of gummed up oil sludge that is now throughout the car's engine.   Fixing the problem is a matter of fixing up the entire engine and cleaning it out piece by piece.

10. Plaintiff Ray Gapasin is a proposed class representative for individuals who purchased a pre-owned vehicle from Autobahn Motors, Belmont, CA, in which zMax was placed, during the period 2004-present, and/or purchased pre-owned vehicle from any dealership owned by Sonic Automotive [of which there are app. 132 per the Sonic Automotive website].

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

4

11. The following individuals assert their claims as individual members of the class:

12. Plaintiff Hooshang Jowza is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

13. Plaintiff Celso Frazao is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

14. Plaintiff Renuka Narayan is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

15. Plaintiff Gertrud Frankrone is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

16. Plaintiff Earnest Salinas is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

17. Plaintiff Kalkhusan Sareen is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

18. Plaintiff Hossein Jalali is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

19. Plaintiff Ronald Wolfe is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

20. Plaintiff Sohrab Rahimzadeh is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

21. Plaintiff Fred Grant is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

22. Plaintiff Ester Grant is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

23. Plaintiff Vincent Leung is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

24. Plaintiff Kenneth Wong is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

25. Plaintiff Jessica Langridge is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

26. Plaintiff Tony Nicolosi is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

27. Plaintiff Donald Lyang is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

28. Plaintiff Artur Semichev is an individual who brought one or more Mercedes Benz automobiles into Autobahn Motors for repairs, and received non OEM parts during those repairs, and was invoiced for OEM parts, and suffered compensable damages as a proximate result.

29. Defendant Mercedes-Benz USA, LLC ["MB USA"] is a Delaware Limited Liability Company, with a principal place of business in Atlanta, Georgia. A printout from its website with further information regarding Mercedes-Benz USA, LLC is attached hereto as Exhibit A.

30. Defendant Ernst Lieb is sued herein in his official and personal capacity, and was the CEO of Mercedes-Benz USA, LLC from 2006-2011. Defendant Ernst Lieb is sued herein for his actions taken in his capacity as the CEO of Mercedes-Benz USA, LLC.

31. Defendant Steve Cannon is sued herein in his official and personal capacity, and was the CEO of Mercedes-Benz USA, LLC from 2011-2015. Defendant Steve Cannon is sued herein for his actions taken in his capacity as the CEO of Mercedes-Benz USA, LLC.

8

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

32. Defendant Dietmar Exlar is sued herein in his official and personal capacity, and is the CEO of Mercedes-Benz USA, LLC from 2015-present. Defendant Dietmar Exlar is sued herein for his actions taken in his capacity as the CEO of Mercedes-Benz USA, LLC.

33. Defendant Autobahn, Inc. dba Autobahn Motors ["Autobahn" or "Autobahn Motors"] is a California Corporation with a principal place of business in Los Angeles, CA and the dba Autobahn Motors in Belmont, San Mateo, CA. A printout from their website with further information regarding Autobahn Motors, Inc. is attached hereto as Exhibit D. Autobahn Motors is sued herein based on their direct participation in the fraudulent conduct described herein.

34. Defendant Joe Cox["Ahlheim"] is the General Manager at Autobahn Motors, which has a principal place of business in Belmont, San Mateo County, CA. He is believed to reside in San Mateo County. David Ahlheim is sued herein because he was the person who actually implemented, monitored, and managed, the OEM fraud scheme described herein.

35. Defendant David Ahlheim ["Ahlheim"] is the Fixed Operations Director at Autobahn Motors, which has a principal place of business in Belmont, San Mateo County, CA. He is believed to reside in San Mateo County. David Ahlheim is sued herein because he was the person who actually implemented, monitored, and managed, the OEM fraud scheme described herein.

36. Defendant Sonic Automotive, Inc. ["Sonic"] is a corporation organized under the laws of the state of Delaware, having a principal place of business in North Carolina, and doing business in California. Sonic Automotive is liable herein based on its direct involvement in the design, and implementation of the scheme to use non-OEM/genuine/approved Mercedes-Benz automotive parts in place of genuine/approved Mercedes-Benz automotive parts, which were invoiced to the customer as OEM parts, and alleged herein. See excerpts of its website, Exhibit F hereto.

37. Defendant O. Bruton Smith is the CEO at Sonic Automotive, Inc., which has a principal place of business in North Carolina. O. Bruton Smith is sued herein because he was the person who actually implemented, monitored, and managed, the OEM fraud scheme described herein.

38. Defendant Speedway Motorsports Inc. ["SMI"] is a corporation, having a principal place of business in North Carolina, and doing business in California.


### III.
### CLASS ACTION ALLEGATIONS

39. Plaintiffs make the following class action allegation:

40. According to the data from Munich Auto Parts [the supplier of the non OEM oil filters described herein], there were a total of 17,795 non-OEM oil filters purchased by Autobahn Motors.  These non OEM oil filters were received by Autobahn Motors and sold to Autobahn Motors customers such as Plaintiffs herein.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

10

41. It is true that many of the victimized customers own more than one Mercedes Benz, and thus 17,795 may not equate to 17,795 Plaintiffs. Munich Auto Parts also shows the following detail regarding its sales of non-genuine/approved, non-OEM MB USA products to Autobahn Motors during the period 2005-2010:

1. MUNICH PARTS

Qty Shipped: 61,230

Total: $580,679.31

Total Dealer Net: $772,527.20

Total Saved: $191,847.89

2. MUNICH OIL FILTERS

Qty Shipped: 17,795

Total: $127,082.00

Total Dealer Net: $174,120.00

Total Saved: $ 47,038.00

3. MUNICH FILTERS

Qty Shipped: 318

Total: $12,339.06

Total Dealer Net: $16,646.00

Total Saved: $ 4,306.94

4. ALL FILTERS (except Oil Filter)

Qty Shipped: 7853

Total: $144,970.96

Total Dealer Net: $187,284.60

Total Saved: $42,313.64

11

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

The dollar amounts sold by Munich Auto Parts to Autobahn are as follows: $174,120 in oil filters; $75,280.00 in spark plugs [13,670 units]; $1,816 in motor mounts; $16,484.50 in V-Belts; $18,358.50 in gaskets; $3,868.00 in engine mounts; $22,709.90 in battery units [5024 units]; $20,109.50 in brake sensors [5024 units]; $28,570.00 in ignition cables;  $330.00 in tightener pulleys; $30,736.00 in air mass sensors; $19,857.50 in fuel filters; $22,649.00 in part kits filters; $7,460.00 in trans oil filters; $14,556.20 in cabin filters; $19,898.50 in air filters; $60,303.00 in filter elements;  adding up to a total of $537,106.60 non-genuine/approved parts.

42. The transactions between Autobahn Motors and an auto parts warehouse by the name of SSF Auto, show thousands of different non OEM auto /non genuine/approved parts being purchased by Autobahn for placement into unsuspecting Plaintiffs' automobiles, which add up to thousands of other impacted victims. The SSF Imported Auto Parts documents were examined by form Autobahn Motors parts manger Roopesh Chandra who confirmed that parts covered virtually every auto parts available for Mercedes-Benz automobiles ion in-genuine/approved form. SSF Imported Auto Parts produced approximately 3600 pages of electronic records showing its sale of thousands non-genuine/approved Mercedes-Benz parts to Autobahn Motors.

43. Plaintiffs do not know the true number of victims, but allege that the number is in excess of ten thousand, which satisfies the numerosity requirement for a class action.

44. According to Autobahn Motors Counsel Bruce Nye, the total MB Auto Parts purchased from SSF Auto during the period of December 2004-May, 2015 were part of Autobahn Motors preowned fleet.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

12

45. The same cars in the pre-owned car fleet also received a non OEM product known as zMAX. zMAX is an oil additive manufactured by Speedway Motorsports Inc. Speedway Motors was founded by the same President [O. Bruton Smith] as the president of Sonic Automotive. Defendant Smith has instructed the General Managers at the Autobahn Motors Dealerships [APP 162 Dealerships], to actively market zMAX, and to automatically place zMAX into all of the cars in the dealerships preowned car fleet. Autobahn Motors with form Sonic Automotive Executive Joe Cox, both enforced and followed this directive, and did during app. 2004- present, regularly cause zMAx to be placed into all pre-owned cars, in stock at Autobahn Motors.

46. There are thus 2 classes of victims. The class of victims include the customers of Autobahn Motors and other dealerships whose car received non OEM parts including zMAX. Plaintiff does not know the number of pre-owned cars, but notes because of email blasts in the San Mateo Area, that number is in the neighborhood of 12,000.

47. Named Plaintiffs are typical of the nature and types of claims herein, as they are owner of Mercedes Benz automobiles that had undergone oil changes and/or other repairs at Autobahn Motors and received non-OEM parts and were invoiced for OEM parts, at OEM prices.

48. Plaintiff Steve Ferrari will serve as a capable class representative, Plaintiff Ferrari will fairly and adequately protect the interests of the class.

49. Plaintiff Steve Ferrari is a longtime Mercedes Benz owner with multiple cars that have been regularly been brought to Autobahn for service.

13

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

50. Plaintiff Mike Keynejad has been instrumental in receiving news and evidence of the OEM fraud, and following up on that evidence in following up on those proceedings and producing documents pursuant to a series of subpoenas. Mike Keynejad's shop Eurotech has become a clearinghouse for Autobahn former techs who came to Mike Keynejad after learning of his current lawsuit with Autobahn Motors. Keynejad is also an expert concerning Mercedes Benz car repair procedures and issues, and of any of the interrelationships that form the Mercedes-Benz subset of the auto repair business.

51. Mike Keynejad has a substantial history including ownership of Mercedes Benz dealerships, Mercedes Benz car and truck factories, Mercedes Benz certified body shop [Eurotech]; all of which has given him decades of highly specialized Mercedes Benz specific knowledge that will ready to bear in this case.  He understands the duties of a class representative and agrees to abide by those duties.

52. Plaintiffs John Diaz is a prospective class representative. He has specific expertise in all facets of automotive sector advertising, and specifically with respect to Mercedes-Benz and other high-end automobiles.

53. Harold Fethe is a proposed class representative for individuals who purchased a pre-owned vehicle from Autobahn Motors, Belmont, CA, in which zMax was placed, during the period 2004-present, and/or purchased pre-owned vehicle from any dealership owned by Sonic Automotive [of which there are app. 132 per the Sonic Automotive website].  Plaintiffs believe that some of the Sonic Automotive dealerships do not sell zMAx [For example, Mercedes Benz of Walnut Creek].

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

14

54. Harold Fethe had a career of working at the Shell Oil research facility working in which issues about oil additives were researched.   He is an example of someone who brought a preowned car from Autobahn which had zMAX put into it, which consequentially caused Mr. Fethe's automobile warranty to become voidable at the option of the warrantor.  This legal impact on the warranty is common to all purchasers of preowned vehicles of Autobahn Motors, and many of the other 132 dealerships owned by Sonic Automotive.

55. Plaintiff Ray Gapasin is a proposed class representative for individuals who purchased a pre-owned vehicle from Autobahn Motors, Belmont, CA, in which zMax was placed, during the period 2004-present, and/or purchased pre-owned vehicle from any dealership owned by Sonic Automotive [of which there are app. 132 per the Sonic Automotive website].

56. Raymond is an example of a person that purchased a preowned Mercedes Benz that was previously sold by Autobahn Motors, and that had received zMax placed into the car by Autobahn Motors, when it sold the car as a certified preowned car, and then again in September 2010, when the car was taken in for a repair.  Raymond Gapasin is an auto mechanic enthusiast who has a substantial level of knowledge concerning the operation of automobiles generally, and his own Mercedes Benz.  Raymond is also an example of a person whose car was damaged by zMAx as described above.

57. Plaintiffs have retained Herman Franck, Esq. of Franck & Associates to prosecute this claim.

58. Herman Franck and Franck and Associates will serve as class counsel, and have the following credentials to show that they will be adequate counsel for the class:

59. Herman Franck is a Georgetown University Law Center Graduate [Juris Doctorate 1985] with a Masters of Economics [1985] and a BA in political economy from UC Berkeley [1981].

60. Mr. Franck has been a member of the California State Bar since 1986 [SBN 123476], and has owned and operated Franck & Associates in Sacramento since the year 2000. Mr. Franck represents an auto body shop in San Mateo by the name of Eurotech in a lawsuit against Autobahn and MB USA concerning an ad co-op scheme and illegal tying arrangement [*Maskay Inc. dba Eurotech vs Autobahn Motors Inc. dba Autobahn Motors; MB USA; Rick Ali, Bobby Ali, AW Collision Inc.* San Mateo Superior Court Case No. CIV 525559].

61. During the course of that case, the facts and evidence regarding the OEM fraud described in this matter came to light through a series of subpoenas issued by Herman Franck's office; and through a series of depositions of eyewitnesses taken by Herman Franck of eyewitnesses to the OEM fraud described in this complaint.

62. Eurotech has also become instrumental in assisting Herman Franck in this matter. Eurotech, owned by Mike Keynejad, has become a clearinghouse for information concerning Autobahn Motors' fraudulent conduct.

63. Apparently, word got out in the industry about Eurotech's case, and people who formerly worked for Autobahn contacted Mike Keynejad and informed him of the OEM parts scandal.

64. Uncovering this scandal has required team members who have industry specific knowledge; and who also know the involved people in this business.

1  65. Class definition: Plaintiffs propose a class definition as follows:

2      (a) Any person or entity who brought one or more Mercedes Benz automobiles to Autobahn

3  Motors, in Belmont, CA during the period of 2005-present; who received non-OEM/non-

4  genuine/approved Mercedes Benz parts, supplies, and/or oil from Autobahn Motors, and

5  were invoiced for OEM parts at OEM prices;

6      (b) All Buyers of preowned Mercedes Benz from Autobahn Motors during the period 2005-

7  present who had zMAX or any other non OEM product put into their car;

8      (c) All Buyers of automobiles from any dealership of Autobahn Motors that places zMAX

9  into the used or preowned car inventory during the period 2005-present who had zMAX or

10  any other non OEM product put into their car.

11
12  66. A class action is a judicially efficient manner in proceeding with this type of claim. The

13  respective value of claims, person by person, are inadequate to litigate on their own, and

14  could only ever be brought as a practical matter as a class action.

15                                        IV.
16           DISCOVERY OF UNDERLYING FACTS RE OEM SCANDAL

17
18  67. Plaintiffs did not know of this OEM scandal until it was uncovered by Herman Franck and

19  Mike Keynejad during the process of the lawsuit against Autobahn. The evidence came to

20  light during the May 20, 2015 deposition of eyewitness Mike Del Rosario. Del Rosario

21  testified that he used to be a service tech [repair man] at Autobahn Motors from 2001-2012;

22  and in that capacity had received from the parts department, parts that he could see were non

23  OEM, and installed those non OEM parts into Autobahn Motors customers vehicles.

24
25
26
27  *Ferrari v. Mercedes Benz et al.*

28  Second Amended Complaint

68. The evidence was further firmed up when a series of document production from third party subpoenas in the Maskay Inc. v. Autobahn lawsuit during the period of May 2015-present [and ongoing]. The process of investigating and researching the OEM fraud when Autobahn Motors filed a motion for protective order to stop Herman Franck/Eurotech from taking the depositions of eyewitness Greg Graziani and Roopesh Chandra .

69. Plaintiffs learned when following Herman Franck and Eurotech's discovery of the evidence. Eurotech published evidence concerning the fraud on the Eurotech Facebook page.  Plaintiff Steve Ferrari was further notified through direct discussions with Mike Keynejad re the OEM scandal.

70. Steve Ferrari learned of the evidence approximately on July 19, 2015 when Herman Franck sent him that evidence.

71.  Mike Keynejad learned of this OEM scandal on May 20, 2015 at the deposition of Mike Del Rosario.

72. The other Plaintiffs learned in a similar way, but later, during approximately September 2015.

73. Thus the date of discovery of Steve Ferrari should be July 19, 2015 ; for Mike Keynejad on May 20, 2015; and the discovery for other Plaintiffs should be September 2015.

74. Thus this action is timely.

18

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

# V.
## FIRST CLAIM FOR RELIEF FOR VIOLATION OF R.I.C.O STATUTE
### [18 U.S.C. Section 1962(c)]
### [AGAINST DEFENDANT ERNST LIEB]

75. This is a First Claim for Relief by all Plaintiffs against Defendant Ernst Lieb for violation of the R.I.C.O. Act, 18 U.S.C. Section 1962(c).

76. The allegations of paragraphs 1 through 75 of this Complaint are incorporated herein.

77. Defendant Ernst Lieb corruptly influenced an enterprise known as MB USA LLC as CEO of Mercedes-Benz USA, LLC from 2006-2011. Defendant Ernst Lieb is sued herein for his actions taken in his capacity as the CEO of Mercedes-Benz USA, LLC.

78. MB USA LLC is not a defendant in this claim for relief.

79. MBUSA engages in interstate commerce by being the subsidiary North American Daimler MG located in Stuttgart, Germany. MBUSA is responsible for the entire process of granting dealerships authority to serve as authorized Mercedes Benz dealerships. They are also the conduit for car parts made in Germany and elsewhere that are shipped out to dealerships in all states of the USA.

80. Defendant Ernest Lieb conduct constitutes mail fraud and wire fraud, both of which are predicate offenses under the RICO Act, 18 USC 1962 [section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)].

81. The wire fraud offense is based on the fact that the corrupt practices complained of were done in part in the form of statements and representations in the MB USA website. The

19

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

creation of the ads also included typical communications between outside and inside marketing staff done through emails.

82. The mail fraud offense is based on the fact that the US mails were involved in dissemination the various brochures, ads, and invoices described in this claim.

83. The various tens of thousands of victims are all victims by a scheme that results in tens of thousands of people receiving non OEM parts, where they were invoiced that OEM parts were used. This victimization is all related to the same basic conduct by Defendant.

84. The following conduct constitutes corrupt racketeering behavior because it was done methodically with premeditation, knowing that many thousands of victims would result; was done knowingly and willfully; and involved a substantial stream of commerce; involved the use of not only top management and subordinate management to accomplish all of the various directives and activities of the non OEM parts scheme described herein.

85. The acts further constitute a pattern of racketeering because of the similarity of the conduct, and the purpose of the conduct to sell various non OEM parts, and to invoice though they are OEM parts, and to across the board place non OEM parts, including zMAX, and other auto body parts, into the entire pre-owned car inventory on a regular and continuous basis since app. 2004 [when Sonic purchased Autobahn Motors], to and through the present.   The ads on the autobahn website are similar.  The statements made by MB USA brochures is similar; the conduct about zMax is similar right across the board to all purchasers of pre-owned vehicles from any dealership by Sonic Automotive.

86. Mercedes-Benz USA LLC maintains and operates a nationally-famous, worldwide website, www.mbusa.com. On that website, they have a page that assures customers that if they get

work one at one of the authorized dealer, all part will be genuine/approved, OEM certified parts approved by Mercedes-Benz. The following specific web pages are referenced herein as constituting a series of ads by MB USA, all of which were interlinked with Autobahn Motors website including:

"Using only Genuine Mercedes-Benz Parts affords you measurable differences every mile you travel. Longevity, safety and warranty are just a few of many reasons to buy Genuine Parts." [See Exhibit A, MB USA Website Printout, page 4];

"Being history's first car company has afforded us the time and expertise to instill durability into our parts. For example, our fleece oil filter lasts up to 45% longer than conventional filters, minimizing engine wear." [See Exhibit A, MB USA Website Printout, page 5];

"When your vehicle needs maintenance or repair, accept nothing less than Genuine Mercedes-Benz parts. Painstakingly crafted to the state-of-the-art standards of Mercedes-Benz, our parts are the final, fine-tuned word in protecting your vehicle's performance, style, comfort, and safety for years to come." [See Exhibit A, MB USA Website Printout, page 9].

87. Defendant Ernst Lieb corruptly influenced, both directly and indirectly, MB USA LLC by the following conduct: a practice whereby Certified Pre Owned Warranty were fraudulently issued by Autobahn Motors, Belmont, California, for used cars that had an oil/engine additive known as zMAX. The Mercedes Benz parent company, Daimler AG, publishes an owners manual which admonishes customers not to use oil additives, and that using an oil additive will void the Mercedes Benz warranty on the car. This disapproval of oil additives by MB is common in the automobile and oil industry, and is due to the fact that oil additives are largely useless and can be damaging to a car. Autobahn Motors has an ongoing practice [2004-present] of putting zMAX into its inventory of pre owned cars.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

88. These cars are given a Certified Pre Owned warranty that is issued by MB USA or other third party warranty providers, and is a false warranty in that the warranty is already void or voidable by virtue of the use of zMAX in the car. MB USA knows that zMAX was being put into the pre owned cars at Autobahn because such use is stated in a document known as a VMI report. Exemplars of VMI forms with reference to zMAX are attached as Exhibit M to this complaint.

89. MB USA is the operator and controller of the VMI reports, and thus has received actual knowledge of Autobahn's practice to place zMAX into all used cars. MB USA grants an oxymoron warranty on the Certified Pre Owned cars at Autobahn motors because the warranty is already void on day one due to the use of zMAX [A Certified Pre-Owned checklist from MB USA is attached to Exhibit G hereto].

90. A further exemplar of a false statement and ad published on the MBUSA website, includes the following reference that shows MB USA's guidance of all consumers to a dealer, where certified and warranted parts are used:

91. Per all MBUSA car manuals produced in US by Mercedes factory & given to car buyers (required by the MBUSA) states:

Warning!  Please make sure you read the technical documentation, such as the Operation's Manual and workshop information, before carrying out  any maintenance work.

92. Also stated on that page:

"PLEASE NOTE WE STRONGLY RECOMMEND THAT YOU HAVE YOUR VEHICLE SERVICED BY YOUR AUTHORIZED MERCEDES-BENZ CENTER WHO IS FULLY EQUIPPED TO PROVIDE THIS SERVICE AND THAT GENUINE MERCEDESBENZ PARTS BE USED. SERVICE, REPLACEMENT, OR REPAIR OF THE EMISSION

22

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

1    CONTROL DEVICES AND SYSTEMS CAN BE PERFORMED BY ANY AUTOMOTIVE

2    REPAIR ESTABLISHMENT OR INDIVIDUAL USING CERTIFIED PARTS. THE USE

3    OF DEFECTIVE OR NONEQUIVALENT PARTS MAY RESULT IN YOUR EMISSION

4    PERFORMANCE WARRANTY CLAIM BEING DENIED."

5

6    93. This statement or a statement similar to it was made during the tenure of Defendant Lieb as a

7    result of the pattern of corrupt influencing he committed through MB USA.

8

9    94.   Defendant Ernest Lieb, corruptly influenced MB USA to make and publish false ads

10          regarding its Genuine/approved Parts lasting numerically longer than non genuine/approved

11          parts through point of sale brochures, exemplars of which are attached as Exhibit B hereto.

12          Exhibit B shows that MB USA makes a claim that its genuine/approved MB oil filters last

13          45% longer than non-genuine/approved oil filters, a genuine/approved MB air filer will last

14          28,000 more miles than non genuine/approved, its genuine/approved MB brakes tested

15          lowest in vibration versus other aftermarket brands, and that its wiper blades provide an

16          additional 800K wiping cycles [Exhibit B hereto].

17    95.   When Defendant Ernest Lieb, made this data available, he did so with full knowledge of its

18          falsity, and did publish that falsity in the form of its website ad [Exhibit A hereto], brochure

19          [Exhibit B hereto], and dealer-level invoice [back page warranty] [Exhibit C hereto],

20          knowing that in fact, there are factories that MB USA buys its parts from, and has those

21          factories output designated as genuine/approved MB USA. MB USA is fully aware that the

22          factory also makes this same oil filter without the Mercedes-Benz star, and that there are

23          many other capable modernized factories throughout the world making such filters that are

24          comparable in actual quality, longevity, and use.

25

26

27    *Ferrari v. Mercedes Benz et al.*                                                    23
      Second Amended Complaint

28

96. This falsity has been acknowledged publically in the case of *Perez v. State Farm Automobile Insurance Co.* [9th Circuit case No.13-16450]. A copy of the 9th Circuit's opinion is attached hereto as Exhibit J and states in part:

"Plaintiffs, however, failed to produce any evidence of inferior parts. Plaintiffs' sole expert on parts quality, Allen Wood, stated in his declaration that categories of inferior parts could be identified at trial by an expert other than himself. The district court therefore granted Defendants' Daubert motion to exclude Wood's testimony, and Plaintiffs have not appealed that decision."

97. Despite this actual knowledge, Defendant Ernest Lieb has influenced MBUSA to publish false data that its products have numerically-described superior longevity, when it fact the superior longevity claims are false.

98. The MB USA website ad [Exhibit A] and point of sale brochures [Exhibit B] are materially false in that in fact MB USA genuine/approved parts to not out perform non genuine/approved parts; that in fact non genuine/approved parts are available that are made by the same factory as the genuine/approved part [examples; Mann Oil Filters, Bosch Spark Plugs], and there are no differences between them. The true facts are that non-genuine/approved parts are largely and easily available that are made from either the same factories as making the genuine/approved parts, or are made by capable factories that produce a non-genuine/approved part that has all performance qualities of the genuine/approved part.

99. The foregoing false representations of the superiority and longevity of MB USA genuine/approved parts, was also published and set out in a video that is within the MB USA site at the following website address:

http://www.mbwholesaleparts.com/serviceItemWiperBlades.aspx. A copy of this website

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

page containing the link to the video is attached as part of Exhibit A hereto [the last two pages of Exhibit A].

100. Plaintiffs are not contending that MB USA genuine/approved parts are in some way inferior. Plaintiff is instead saying that the statement that the parts are superior is false, and that the true facts are that the non genuine/approved and genuine/approved parts are equal in performance.

101. MB USA's genuine/approved parts are worth substantially more than non genuine/approved part, owing to market factors such as the power of MB USA's logo and brand, its image of excellence, the importance of warranty coverage, peace of mind in knowing that genuine/approved parts are covered by an MBA express warranty, and other market based consumer decision making.

102. The fact that the genuine/approved parts are worth more than the non-genuine/approved parts does change the fact that the parts are in fact the same level of quality.

103. Defendant Ernest Lieb further corruptly influenced MB USA to issue genuine/approved parts warranty as set forth on the backside of the Autobahn Motors Invoice, which states [See Autobahn Motors Exemplar Invoice Front and Back, Exhibit C hereto, back side]: "This Limited Warranty covers:
DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original purchases and each subsequent owner of Mercedes-Benz genuine service replacement parts, equipment, or factory-approved accessories, excerpt tire, installed on a Mercedes-Benz vehicle which is operated in the USA or Canada under normal use and service to be free from defects in the material and workmanship."

25

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

104. The full warranty actually takes up almost the entire back page of the invoice. The placement of the warranty and the wording of the warranty makes it appear to a reasonable person, including plaintiffs herein, that the warranty covers the genuine/approved MB automobile parts listed on the front of the invoice. The MB USA warranty causes consumers to reasonably believe that all parts mentioned in the invoice are genuine/approved MB auto parts.

105. MB USA has actually knowledge that Autobahn Motors regularly sold non OEM parts. Thus MB USA was knowingly giving a feel good warranty to consumers, while having actually given a warranty that was void or voidable in part, due to Autobahn Motors' use of non OEM parts.  MB USA's warranty is thus misleading in that it:

    (a) Makes it seem to a reasonable person to cover all parts on the invoice;

    (b) At a time when MB USA had actual knowledge that parts being used were non OEM;

    (c) At that time issued a warranty it knew to be void or voidable due to the use of non OEM parts.

106. Defendant Ernest Lieb corruptly influenced MB USA to engage in such fraudulent conduct.

107. Defendant Ernest Lieb corruptly influenced MB USA by having MBUSA create an image of excellence created by its alluring and beautiful ad campaign, its general theme of a commitment to excellence, and the full inclusion of that theme on site at Autobahn Motors. Autobahn Motors main front signage shows the Mercedes-Benz logo [the "Star"], which further appears throughout the interior of the dealership. See Autobahn Motors Website Excerpts, Exhibit D hereto.

108. This image of excellence has caused consumers such as plaintiffs and class members herein to reasonably believe that whenever they go to Autobahn Motors for a repair, the MB logo

26

and image of excellence assures them that they will be receiving only genuine/approved MB auto parts on their Mercedes Benz vehicles.

109. Defendant Ernest Lieb corruptly influenced MB USA to participate in the OEM auto parts racketeering fraud scheme herein by allowing Autobahn Motors, with full knowledge and consent of MB USA to display point of sale ads and information concerning the product known as zMAX. The zMAX ad is contained in the Autobahn Motors' Mercedes Maintenance Guide, attached hereto as Exhibit E hereto, and is contained in a point of sale service booklet in the office area of a service advisor.

110. The service advisor is the person that has direct discussion with customers about the nature and service repairs to be done to their cars. A service booklet prepared by Autobahn Motors, and including the Mercedes "star" includes information of zMAX. See Exhibit E hereto.

111. The Brochure and other information about zMAX in the service advice office area, long with other MB USA brochures about genuine/approved auto parts such as those attached hereto as Exhibit B.

112. This configuration of MB USA direct ads [Exhibit B] and the star on the guide that contains the zMAX ad Exhibit E], collectively reasonably cause the consumer to reasonably believe that zMAX is a genuine/approved MB USA part, approved by MB USA for use in MB cars.

113. The point of sales service repair booklet appears to be an official MB USA document, because of the presence of the MB USA logo, the MB USA "star" that booklet containing multiple pages of its repair service options, and contains direct ads and direct representations about zMAX.

27

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

114. MB USA customers regularly visiting Autobahn Motors, and have seen with their own the guide which promotes the use of zMAX [Exhibit E hereto] in the point of sale area, along with MB USA's own point of sale brochure, Exhibit B hereto.

115. The zMAX ads are in fact false. The maker of zMAX, Speedway Motorsports, Inc. has previously agreed to a Permanent injunctions and monetary fine in an FTC false advertising claim action [Case No. 10-cv-00126; FTC File number 002 3256]. a copy of the Stipulated Order is attached hereto as Exhibit K. O. Bruton Smith, the founder of Speedway Motor Sports, Inc., the distributor of zMAX is also Sonic Automotive's president. See excerpts from Speedway Motorsports, Inc. website, Exhibit I hereto. Sonic Automotive is the owner of Autobahn Motors, and is marketing its zMAX product through its own dealerships. The products violate the express statements in Mercedes-Benz owners' manuals, and constitute a further example of the knowing use of non-genuine/approved, non-OEM parts by Autobahn Motors.

116. MB USA further came to know of the use of non-OEM parts during approximately 2010 when MB USA conducted a warranty review of a diesel engine which basically exploded, and was later confirmed to have a non-OEM oil filter.

117. There is thus a direct link between the Mercedes-Benz USA statement and the corresponding statement by Autobahn motors on its website.

118. During the course of the fraudulent campaign, Mercedes-Benz USA was told of the fraud by an Autobahn Motors service tech by the name of Michael Del Rosario, notified MB USA's representative on site at Autobahn Motors, "Mike" [last name unknown] of the actual use of non OEM parts; MB USA also produced a document which confirms the incident.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

119. As CEO of MB USA, the Defendant thus directly participated in a cover-up of the OEM scandal by learning of the scandal and by keeping it an internal secret, not to be disseminated to the public, and without any corrective activity taken, such as ordering Autobahn Motors to make it right. One simple way to make it right would be to allow all customers to bring their cars in for an exchange of the non-OEM part for an OEM part at no cost to the customer. Instead of doing that, MB USA remained quiet and did nothing such to bring the matter to the public, and did not implement any compensation program.

120. Plaintiffs and member of the public have generally detrimentally relied on MB USA's image of excellence, and other point of sale advertising [Exhibit B], and have thereby opted to bring their car for service to an authorized dealer such as Autobahn Motors, fully expecting to receive genuine/approved parts, and later were invoiced for and paid for such MB USA genuine/approved parts.

121. As a proximate result of MB USA's fraudulent ads, Exhibits A, B, and C, and general image of excellence, plaintiffs and class members have been further damaged in that they purchase higher-price genuine/approved parts, thinking that it was well worth the extra money because the parts are more reliable, last longer, and are superior to non-genuine/approved parts.

122. The use of non-OEM parts is not itself illegal or wrongful. The use of OEM parts becomes wrongful here because Autobahn Motors and MB USA both have inter-linked web-based advertisements, and Autobahn Motors has a newsletter, stating that only OEM parts are used; and because the invoicing gave pricing for OEM parts.

123. One probable explanation of MB USA's motivation to do nothing about this problem, is their own desire to keep the entire matter covered up.

29

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

124. Sonic and Autobahn intentionally and deliberately concealed Z Maxx's non-OEM status from Autobahn Motors' customers. Mercedes Benz USA publishes a car owners manual. For example, the car owners manual for a Mercedes Benz CLK states [See attached Exhibit G, page 34]:

"Engine Oil Additive.  Do not blend oil additives with engine oil, they may be harmful to engine operation.   Damage or malfunctions resulting from blending oil additives are not covered by the Mercedes Benz limited warranty."

125. Exemplars of other car company owner manuals with similar prohibitions and voiding of warranties [Mercedes Benz, Mercedes Benz G Class, Lexus RC 350/RCF, 918 Porsche Spyder, BMW 7 Series, Nissan GTR, Chevrolet, Bugatti, Acura NSX, 2015 Corvette, Bentley, Toyota Highlander, Range Rover, Ford GT 06, 2013 Corvette, Toyota Camry, Jeep Wrangler] are attached hereto as Exhibit P.

126. Defendants are currently investigating zMAX as currently constituted, and have obtained a lab report dated March 23, 2016 from Blackstone Labs. This lab performed high temperature performance testing on a bottle of zMAX [1 Qt.], which costs $30 [purchased from Autobahn Motors app. January, 2016].  The lab report states:

"Virtually nothing showed up in the spectral examination of this ZMAX sample. That doesn't necessarily mean that the additive didn't have anything in it, just none of the elements that we read."

127. One scenario based on that lab report is that zMAX is in the category of a "snake oil" product, making impressive claims to solve all kinds of ailments, but which in fact is nothing, and does nothing.  To put this in perspective it should be noted that zMAX can be bought retail at a price of app. $30 per quart.  It should further be noted that MBUSA's

30

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

1   designated oil is a non synthetic, Mobil 1.  ZMAX is petroleum based.  The last thing you

2   want to put into a car is a synthetic oil with a petroleum based additive.

3

4   128.  Further lab testing is being done on the current versions of zMAX, which plaintiffs believe

5         will have findings consistent with the findings of Honda, General Motors, Porsche, Audi,

6         Mobil 1 and Pennzoil that oil additives are useless, duplicate existing oil additives, and do

7         not increase the longevity of the used oil.

8

9   129. A Honda dealership owned by Sonic Automotive that it carry and offer the zMAX product.

10        Not all Sonic owned enterprises act in this manner.  For example, Walnut Creek Mercedes

11        does not offer zMAX product.

12

13  130.  The complaint also alleges the following particulars of an OEM/genuine/approved- Non-

14        OEM/Non genuine/approved auto parts laundering scam, whereby Autobahn Motors was

15        buying non OEM parts, while selling its MB USA supplied OEM inventory of parts to one

16        of the very parts vendors selling it non-OEM parts.  This parts laundering enterprise was

17        committed by Autobahn Motors in an effort to keep its use of Non OEM parts and

18        consequent limited use of OEM parts, secret from detection by MB USA's audit team.  MB

19        USA regularly audits Autobahn Motors to confirm that Autobahn Motors is operating within

20        the guidelines of the agreements between MB USA and Autobahn Motors.

21

22  131.  Defendant Ernest Lieb by corruptly influencing MB USA to participate in the OEM parts

23        fraud by its own ads described above and attached hereto as Exhibits A, B, and C.

24

25  132.  Plaintiffs thus request full damages against Defendant Ernest Lieb by corruptly influencing

26        MB USA into conduct that constitutes a pattern and practice of racketeering activity in the

27

28

31

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

form of mail fraud and wire fraud for directly participating in the false ad, and directly participating in a cover-up of the non-OEM fraud.

133. On the back end of the fraudulent campaign, Mercedes-Benz USA engaged in an actual overt cover up, as was testified to by eyewitness Mike Del Rosario, former tech adviser at Autobahn Motors]. He testified in a sworn deposition on May 20, 2015, that he himself notified Mercedes-Benz USA's representative, who was then personally present at Autobahn Motors, and was shown the non-OEM oil, and was then told about the use of non-OEM filters.

134. After that notice, Del Rosario testified Mercedes-Benz USA's representative was agitated: "I saw his face change. He was upset", and took immediate efforts to require Autobahn Motors to stop the use non-OEM parts.

135. Plaintiffs have suffered an upswing in repair activity following Autobahn Motors performing repairs on their automobile.

136. MB USA also had actual knowledge of the fact that autobody shop work including the painting of cars was being done openly in the Autobahn Motors parking lot. Thus MB USA also had actual knowledge of the auto repair certification fraud described in this complaint.

137. Mercedes-Benz USA LLC failed to take further corrective steps in the form of instructing Autobahn Motors to make good on its wrongdoing, by some type of compensation program appropriate to whatever non-OEM certified parts were placed in a customers' car.

138. Mercedes-Benz USA LLC conducted an investigation into Autobahn Motor's fraudulent conduct, confirmed that it did on fact occur; ordered it to stop; and then facilitated

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

Autobahn Motors in covering it up by not bringing it to anyone's attention , including the customers of Autobahn. It should be noted that Autobahn Motors has a data base of its customer; has a practice of using "e-blast" marketing tools, and is well-versed in getting the word out to its customers. Autobahn Motors did not send out a corrective notice to its customers. Mercedes-Benz USA LLC did not order Autobahn Motors to do so. Under the circumstances here, there is no way that the customer would know that non-genuine/approved, non- OEM certified parts were used. For example, oil is not brought out in labeled cans, it is stored in vats and placed it an overhead pumping to protect the workers working.

139. An example of another act whereby MB USA co-made a fraudulent ad by listing on its website Eurotech in a manner designed to give the false impression that the local dealership, Autobahn Motors owned Eurotech.

140. Such evidence further bolsters Plaintiff's ad co-maker allegations against MB USA by showing a pattern and practice of such an ad co-making.

141. Exhibit L hereto is a true and correct copy of an October 12, 2007 MB USA web listing showing Eurotech as a certified collision center.

142. By making this ad on its website, MB USA co-committed another form of a public fraud.

143. The telephone number given in the ad is not Eurotech's telephone number; it is Autobahn Motors' telephone number.

144. Plaintiffs also allege the reasonable inference that it wasn't an accident, and that instead it was all done part and parcel to MB USA's co-making of a fraudulent ad program that

33

deliberately misleads consumers into thinking that the certified collision center is owned by the sponsoring dealership, when in fact it isn't owned by the sponsoring dealership.

145. That public fraud is the Eurotech belonged to its then sponsoring dealership, Autobahn Motors. MB USA officials have confirmed in deposition testimony that one of the purposes behind the MB USA certification requirements is to give the customer the idea that the certified collision center was an actual extension of the sponsoring Mercedes Benz dealership.

146. The forgoing are at issue in the San Mateo County Court Proceedings [case number CIV525559] currently set for trial April 25, 2016.

147. They are relevant here as additional facts to show Plaintiffs concept of a practice whereby MB USA engages in the co-making of a fraudulent ad.

148. Mercedes-Benz USA is jointly and severally liable for the non-OEM fraud committed by Autobahn Motors, based on the following:

149. Mercedes-Benz USA failed to do the right thing, and go public to its San Mateo County-Area loyal customers [who typically purchase a series of Mercedes-Benz from Autobahn Motors, buying not just one, but 3, 4, or 5], to inform the loyal customers of what happened, to issue any regret or apology it deemed appropriate, and to offer some kind of compensation for the wrong, which for example could take the form of a replacement oil and oil filter. Or, in the case of shock absorbers, a replacement of those shock absorbers.

150. Instead of going public to its customers to fix this problem, MB USA instead deliberately chose to keep it under wraps, and not let it see the light of day.

34

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

151. Mercedes-Benz USA did not go public with the finding, did not notify its customers of the problem, did not acknowledge the problem publicly, and did not publicly or privately offer any kind of compensation program for what had happened.

152. There was the following motivation for concealment:

153. MB USA is a willful beneficiary of the zMAX fraud because MB USA is the entity that issues a certified pre-owned warranty; which under terms of the warranty, are void, or as in practice, voidable at MB USA's option, if the owner of the car uses any kind of oil additive. zMAX is an engine oil additive, which Sonic Automotive, per this marketing campaign with its sister company, Speedway Motorsports does its part by automatically putting zMAX into its pre-owned Mercedes-Benz car inventory.

154. For this scheme to work, concealment of the facts of the scheme is necessary. If people knew that whenever they bought a pre-owned car from Autobahn Motors, that their certified pre-owned car and attendant MB USA, or third-party warranties contain language that render them void or voidable at the option of the warrantor if oil additives or engine additives are used, and if the true facts about the impact of zMAX on the warranty were told to buyers, buyers would rarely if ever by a pre-owned car from Autobahn Motors.

155. The success of the program was dependent on the ability of all participants to conceal the scheme from public view. Toward that end, MB USA has VMI reports showing use of zMAX, but the VMI reports are generally not available to the consumer. It is an internal MB USA document. It registers the fact the zMAX was used, which then and there renders the certified pre-owned warranties void or voidable.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

35

156. Defendant Speedway Motors makes the statement as set forth in the letter form Mr. Smith, Exhibit Q hereto, that the use of zMAX will not void the manufacturer's warranty. Plaintiffs refer to and incorporate herein the plain language of the automobile warranties, collectively attached hereto as Exhibits N and O, including Mercedes-Benz, which generally have language prohibiting the use of oil and engine additive and stating that warranties will be void if such additives are used.

157. The fraudulent advertising committed by defendants MB USA, Autobahn Motors, Sonic Automotive, And Speedway Motorsports, Inc. is done in a manner which confusingly makes it appear that non-OEM products are in fact Mercedes-Benz genuine products, and carry the full benefit of the Mercedes-Benz trademark, the start, including the Mercedes-Benz parts warranty, when in fact the product is not Mercedes-Benz genuine part, does not carry the Mercedes-Benz star and is not subject to an MB USA parts warranty. Indeed, it is expressly excluded from the MB USA parts warranty. in the case of zMax, the placement of the non-OEM product into a maintenance offering book kept at the Autobahn Motors' service adviser office area, which on top of the book as had the Mercedes-Benz star, and which inside the book has several pages of advertising concerning zMAX.

158. The zMAX claims are further specified below.

159. Mercedes-Benz USA has contractual power over its authorized dealers, Autobahn Motors. This power includes the right to mandate certain business images, service level, quality level, and of issue here, the use of genuine/approved Mercedes-Benz /OEM certified parts only. Mercedes-Benz USA uses an oversight process during which it granted annual access to perform a full audit to Autobahn Motors, as well as all other of its authorized dealers, which it in fact does do on an annual basis.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

36

160. In the alternative Mercedes-Benz USA should have known of the program, as the oil filters are quite bulky, and easily distinguished from Mercedes-Benz USA/ OEM certified filters in that they do not bear the Mercedes-Benz USA star. An actual walk through the parts department would have revealed hundreds and hundreds neatly stacked up boxes of non-OEM filters. The testimony of Greg Graziani and Roopesh Chandra will confirm this allegation, as well as a similar practice with regards to other auto parts.

161. Further, through any kind of casual interview of any of the employees, including Graziani, Roopesh, and Del Rosario, Mercedes Benz USA could have found out all about the non-OEM fraud. The employees were never asked. They didn't tell then, but they are telling now.

162. The paperwork from the various vendors of the non-OEM parts [SSF Imported Auto Parts, Munich Auto Parts, Western State Oil, Finishmaster] would reveal that items being purchased were simply not MB USA genuine/approved/OEM certified parts, and indeed were not OEM auto parts.

163. This is not the case of finding a needle in haystack. This is a case of finding boxes and boxes of non-OEM auto parts, which are easy to distinguish based on the missing Mercedes-Benz USA star.

164. As a proximate result of Defendants conduct, Plaintiff suffered actual damages. Damages are requested equal to the full amount charged to class members who received a non OEM part, but were invoiced as though it was an OEM part; Plaintiffs request consequential damages equal to the value of the impact of the use of non-OEM products on the claimants automobiles, including an impact whereby their cars needed irregularly high levels of

37

repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer.  Plaintiff requests all consequential damages, however suffered.

165.  Plaintiffs further seek a trebling of its damages pursuant to the R.I.C.O. Act, 18 U.S.C. Section 1961 et seq.

166.  An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000. It is likely the 17,795 oil filters  represent 17,795 different victims.  However some allowances must be made for the fact that some of the victims have more than one Mercedes car, some of the victims have brought the same car in multiple times.

167. An example of the OEM; non-OEM price listing is shown by the below summary data extracted from documents from Munich Auto Parts, the supplier of the non OEM oil filters:

| Quantity | dealer price | discount | Total savings |
|----------|-------------|----------|---------------|
| 6500 | $11.50 | $7.50 | $26,000 |
| 7500 | $8.50 | $6.18 | $17,400 |
| 700 | $10.50 | $8.93 | $1,099 |
| 50 | $8.30 | $6.80 | $75 |
| 1500 | | $8.75 | [$13.125] |

168.  The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they

38

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

1  bargained for. These claims are made in an amount according to proof, in excess of $15

2  million, for total damages according to proof but in excess of $21 million.

3

4  169.  In the alternative, Plaintiffs request for some other amount of damages and damage

5      calculations that the court deems just and appropriate is on the basis that they paid for

6      something, that they did not receive. Their part served requests required OEM, parts and that

7      Plaintiffs and class member have also suffered compensatory and general damages to their

8      vehicles, arising from the fact that use of non-OEM parts, such as oil filters, zMAX, oil, and

9      other non-OEM parts as described in this complaint negatively impact the Mercedes Benz

10     automobiles owned by Plaintiffs herein.   These damages include diminution of an

11     automobile known to have zMAX in it in an amount according to proof; other diminutions in

12     values of the car brought out by uncertainties.

13  170.  Plaintiffs herewith seek the following other relief:

14

15  171.  Unless and until injunctive relief is issued by the court, Defendants will continue in their

16     conduct. Defendants' conduct violates the RICO Act, and is this enjoinable. Plaintiffs are

17     presumed to have suffered irreparable harm in light of the showing of a RICO Act

18     violation.

19

20  172.  Plaintiffs accordingly requests injunctive relief in the form of an order enjoining and

21     prohibiting the defendants from using an enterprise to commit acts of mail fraud and wire

22     fraud, and such other injunctive relief as the Court deems just and appropriate.

23

24  173.  Specifically, Plaintiffs request an injunction prohibiting defendants from advertising either

25     through brochures, emails, or invoices, that they only use or did use genuine/approved

26     Mercedes-Benz parts, when in fact they use non- genuine/approved Mercedes-Benz parts

27  *Ferrari v. Mercedes Benz et al.*                                                              39

28  Second Amended Complaint

174. Plaintiffs also request declaratory relief in the form of a decree in which the Court states that the Defendants have violated the R.I.C.O. Act by their conduct towards Plaintiffs and other victims, as alleged herein; and such other and further declaratory relief as the Court deems just and appropriate.

175. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

176. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to fraudulently market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

177. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

178. Plaintiffs further seek attorneys fees as allowed under the R.I.C.O. Act.

40

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

1

2    WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

3

4                                        **VI.**

5        **SECOND CLAIM FOR RELIEF FOR VIOLATION OF R.I.C.O STATUTE**
                              **[18 U.S.C. Section 1962(c)]**
6                      **[AGAINST DEFENDANT STEVE CANNON]**

7    179. This is a Second Claim for Relief by all Plaintiffs against Defendant Steve Cannon violation

8         of the R.I.C.O. Act, 18 U.S.C. Section 1962(c).

9

10   180. The allegations of paragraphs 1 through 178 of this Complaint are incorporated herein.

11

12   181. Defendant Steve Cannon corruptly influenced an enterprise known as MB USA LLC as

13        CEO of Mercedes-Benz USA, LLC from 2011-2015.  Defendant Steve Cannon is sued

14        herein for his actions taken in his capacity as the CEO of Mercedes-Benz USA, LLC.    MB

15        USA LLC is not a defendant in this claim for relief.

16

17   182. The allegations of the First Claim for Relief for RICO violations are incorporated herein as

18        constituting a corrupt influences and ensuing pattern of racketeering conduct as specified

19        above, with the following difference:  Defendant Steve Cannon is sued herein for his time

20        period as President and CEO of MBUSA during 2011-2015.  During this time Period, Steve

21        Cannon corruptly influenced MBUSA to commit the wire fraud and mail fraud specified

22        above in the first claim for relief.

23

24   183. Plaintiff sets forth the same damages as described in the first claim for relief, except for the

25        time period of Defendant Cannon's tenure as CEO and President of MB USA.

26

27                                                                                          41

     *Ferrari v. Mercedes Benz et al.*
28   Second Amended Complaint

184. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

185. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to fraudulently market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

186. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

42

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

# VII.
## THIRD CLAIM FOR RELIEF FOR VIOLATION OF R.I.C.O STATUTE
### [18 U.S.C. Section 1962(c)]
### [AGAINST DEFENDANT DIETMAR EXLER]

187. This is a Third Claim for Relief by all Plaintiffs against Defendant Dietmar Exler violation of the R.I.C.O. Act, 18 U.S.C. Section 1962(c).

188. The allegations of paragraphs 1 through 186 of this Complaint are incorporated herein.

189. Defendant Dietmar Exlar corruptly influenced an enterprise known as MB USA LLC as CEO of Mercedes-Benz USA, LLC from 2015-present. Defendant Dietmar Exlar is sued herein for his actions taken in his capacity as the CEO of Mercedes-Benz USA, LLC. MB USA LLC is not a defendant in this claim for relief.

190. The allegations of the First Claim for Relief for RICO violations are incorporated herein as constituting a corrupt influences and ensuing pattern of racketeering conduct as specified above, with the following difference:  Defendant Dietmar Exlar is sued herein for his time period as President and CEO of MBUSA during 2015-Present.  During this time Period, Steve Cannon corruptly influenced MBUSA to commit the wire fraud and mail fraud specified above in the first claim for relief.

191. Plaintiff sets forth the same damages as described in the first claim for relief, except for the time period of Defendant Exlar's tenure as CEO and President of MB USA.

192.  Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

193. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to fraudulently market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

194. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## VIII.
## FOURTH CLAIM FOR RELIEF FOR VIOLATION OF R.I.C.O STATUTE
### [18 U.S.C. Section 1962(c)]
### [AGAINST DEFENDANT DAVID AHLHEIM]

195. This is a Fourth Claim for Relief by all Plaintiffs against DEFENDANTS DAVID AHLHEIM for violation of the R.I.C.O. Act, 18 U.S.C. Section 1962(c).

44

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

196. The allegations of paragraphs 1 through 194 of this Complaint are incorporated herein.

197. Plaintiffs and proposed class members have each brought one or more Mercedes-Benz auto mobiles to Autobahn Motors for repair, during which they receive non-OEM parts, and were invoiced for OEM parts at OEM prices. Plaintiffs and class members are victims of Defendants' business practice of falsely advertising that OEM parts/parts would be used in repairs done at Autobahn Motors.

198. Defendant David Ahlheim corruptly influenced an enterprise known as Autobahn Motors.

199. Autobahn Motors is not a defendant in this claim for relief.

200. Defendant David Ahlheim ["Ahlheim"] is the Fixed Operations Director at Autobahn Motors, which has a principal place of business in Belmont, San Mateo County, CA. He is believed to reside in San Mateo County. David Ahlheim is sued herein because he was the person who actually implemented, monitored, and managed, the OEM fraud scheme described herein.

201. Autobahn Motors is a corporation with a principal place of business in Belmont, California, but doing business with national and international companies. Excerpts of its website are attached hereto as Exhibit D. Its website also lists approximately 115 employees in the following departments: sales [25]; service [75]; parts [11]; and finances [4].

202. Defendant David Ahlheim used the following modes of interstate commerce to accomplish this corrupt influence on Autobahn Motors: Wire fraud and mail fraud.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

45

203. Defendant David Ahlheim's conduct constitutes mail fraud and wire fraud, both of which are predicate offenses under the RICO Act, 18 USC 1962 [section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)].

204. The wire fraud offense is based on the fact that the corrupt practices complained of were done in part in the form of statements and representations on the Autobahn website. The creation of the ads also included typical communications between outside and inside marketing staff done through emails.

205. The mail fraud offense is based on the fact that the US mails were involved in dissemination the various brochures, ads, and invoices described in this claim.

206. Plaintiffs reasonably relied on Defendants' representation that non-OEM parts were being used and invoiced at OEM prices.

207. Plaintiffs' reliance on Defendants' representation that non OEM parts were being used and invoiced at OEM prices was a substantial factor in causing their harm.

208. Some of the plaintiffs saw the Autobahn Motors website ad [Exhibit D] stating that only genuine/approved OEM/Mercedes-Benz parts would be used; some received the Autobahn Motors newsletter that also stated that genuine/approved parts would be used; all plaintiffs received invoice [front and back, exemplar attached hereto as Exhibit C] for each repair transaction. All plaintiffs met with a service advisor and saw the layout of the service advisor's work area described herein. Some of the plaintiffs were verbally told by their respective service advisor that Autobahn Motors would use genuine/approved Mercedes-Benz parts only on their cars.

46

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

209. Some of the plaintiffs received or saw the MB USA brochure [Exhibit B], and some saw the MB USA website [excerpts of which are attached as Exhibit A hereto] advertising the benefits and longevity of genuine/approved MB USA parts.

210. Furthermore, the OEM and non OEM auto parts in this case also travel through state lines and/or international lines to get to Belmont, CA.

211. The following conduct constitutes corrupt racketeering behavior because it was done methodically with premeditation, knowing that many thousands of victims would result; was done knowingly and willfully; and involved a substantial stream of commerce; involved the use of not only top management and subordinate management to accomplish all of the various directives and activities of the non OEM parts scheme described herein.

212. The acts further constitute a pattern of racketeering because of the similarity of the conduct, and the purpose of the conduct to sell various non OEM parts, and to invoice though they are OEM parts, and to across the board place non OEM parts, including zMAX, and other auto body parts, into the entire pre-owned car inventory on a regular and continuous basis since app. 2004 [when Sonic purchased Autobahn Motors], to and through the present.   The ads on the autobahn website are similar.  The statements made by MB USA brochures is similar; the conduct about zMax is similar right across the board to all purchasers of pre-owned vehicles from any dealership by Sonic Automotive.

213. Defendant David Ahlheim corruptly influenced, both directly and indirectly, Autobahn Motors by the following conduct constituting racketeering activity:

47

214.    Autobahn Motors for many years been fraudulently servicing, repairing, and selling cars (CPO), by using non-approved parts & material as required in every Mercedes car manuals, also Autobahn Motors assured customers by falsely advertising that they use genuine Mercedes parts; Autobahn further falsely advertised / claimed we have 22 Mercedes Master Technicians, also they claim.

215. Autobahn Motors/Sonic Automotive in at least 4 confirmed states (including CA), which is believed to be the practice of most of the dealerships owned by Sonic Automotive, are involved in the same fraudulent sales (CPO).

216. Autobahn Motors practice in placing zMAX automatically in all preowned cars at dealerships owned by Autobahn Motors, has been investigated by Plaintiff in the following manner:

217. Dealerships commonly have pre-owned cars inventory displayed with photos and VIN numbers, on the dealerships commercial website. Plaintiff Mike Keynejad has gone to several such websites, has obtained VIN numbers of preowned cars of dealerships listed on the Sonic Automotive website as a Sonic Automotive owned dealership. VMI or similar reports thereon were done; and 100% of those cars in 4 different states came up positive for zMAX.

218. Plaintiff Keynejad will be providing a detailed report, but based on this VIN/VMI comparison, Plaintiffs are able to currently confirm the practice of placing zMAX into preowned cars, is being done actively by Sonic Automotive owned dealerships in 4 states. We also point out that former parts manager Roopesh Chandra stated that Autobahn Motors had a practice of putting zMAX in all preowned cars; a reasonable inference is that this is a Sonic driven campaign involving General managers in all of the Sonic Automotive owned

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

dealerships, agreeing to place zMAX into preowned cars, and to market zMAX in a manner as though it were OEM or approved.

219. Autobahn Motors has long advertised it only used OEM-certified/Mercedes-Benz genuine/approved parts. See Exhibit D hereto page 19, excerpts from Autobahn Motors' website stating "Best of all, we only use OEM Certified Mercedes-Benz auto parts and accessories!"

220. A further false and misleading advertisement published by Autobahn Motors is in the form of a newsletter of which approximately 217,316 were distributed [Exhibit G, page 284, date unknown] and states: "Genuine Mercedes Benz parts".

221. On November 19, 2015, Bruce Nye, counsel for Autobahn Motors, verbally told Herman Franck during a break at a deposition, that Autobahn Motors has taken down the ad from their website that stated Autobahn used genuine/approved parts only. Bruce Nye told us the ad was taken down during the summer of 2015.

222. During summer 2015 Maskay Inc. dba Eurotech conducted the following initial discovery into the issue of this OEM/genuine/approved parts fraud/racketeering scheme:

(a) May 20, 2015 Deposition of Michael Del Rosario

(b) August 24, 2015 Deposition of Steve Meade

(c) March 24, 2015 Subpoena to SSF Auto

(d) April 2, 2015 subpoena to Munich Parts Warehouse

(e) June 26, 2015 Amended Notice of Deposition of Former Autobahn Parts Advisors, Roopesh Chandra, Greg Graziani, and Frank Rosier.

223. Plaintiffs point out the activities in the OEM fraud matters in summer 2015, to show the court that Autobahn Motors was put on notice by Plaintiff, that Plaintiffs have evidence of an ad fraud regarding the use of non genuine/approved parts. The fact that Autobahn Motors then took down the offending ad should be viewed by the court as an admission that the ad was false and misleading. The ad has indeed been taken down, and is no longer on the Autobahn Motors website. The fact that they took down the false ad, supports Plaintiffs' claim of advertising fraud.

224. During that discovery, Autobahn Motors' counsel was present or received documents from the subpoenas.

225. Removing the ad does not eliminate the ongoing problem, because Autobahn Motors is still failing to abide by its statutory obligation under Business and Professions Code section 9875 to place written designations as genuine/approved or non genuine/approved on the Auto parts used on its customer's vehicles.   The designation is supposed to be on the invoice. The fact that Autobahn has not done that, shows that there is a continuing fraudulent ad. Invoices and billing statements themselves constitute a fraudulent ad, which is ongoing and is expected to continue into the future.

226.  These ads need to be read in conjunction with the MB USA ads described above because these ads are interlinked to MB USA's website.  In this manner the ads published by Autobahn Motors are also published simultaneously with the MB USA website.

227. The newsletter also shows Eurotech falsely as being designated the MB USA repair service, when in fact significant auto body work was done by uncertified Dent Wizard and Paint Wizard. Autobahn Motors preferred hiring the uncertified shop because then it could significantly mark up the work done by Dent Wizard invoice which then made it appear the

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

work was done by an MB USA certified shop when it in fact had been done by a shop that is not certified by MB USA.

228. These ads make willfully false misrepresentations that OEM parts were being used, when in fact non-OEM parts were being used.

229. The Internet was used as part and parcel in effectuating this campaign including the ordering of non-OEM parts from companies such as SSF Imported Auto Parts and Munich Parts Warehouse; and processing orders between SSF and Autobahn for OEM parts [order generally made by email]; and the international transport of auto parts [from China] and state lines.

230. In addition, Autobahn Motors' service advisors, including former service advisor Steve Mead, verbally tell Autobahn Motors customers that only OEM parts are being used in connection with any repair. The service advisors are the direct face to face point of contact between the customers of Autobahn Motors and Autobahn Motors.

231. The true fact was that Autobahn Motors has a regular business practice of not buying OEM certified Mercedes-Benz parts and supplies. When Autobahn Motors customers such as, and including Plaintiffs herein, would bring their Mercedes-Benz vehicles into Autobahn Motors for service or repair, Autobahn Motors would install non-OEM certified, non-Mercedes-Benz parts in the automobiles, and would then invoice and charge such unknowing customers for the full price of OEM/genuine/approved parts and supplies as though OEM-certified Mercedes-Benz parts had been used.

232. The involved auto parts and supplies include oil, oil filters, air filters, cabin filters, disc brake pads assembly, shock absorbers, spark plugs, and virtually every kind of auto parts

51

1  made by Mercedes Benz.

2

3  233. According to SSF Imported Auto Parts documents, there were roughly 3650 pages of

4  instances whereby Autobahn Motors purchased a non OEM part from SSF Imported Auto

5  Parts.  The parts are described in the SSF Imported Auto Parts documentation and cover the

6  full gambit of almost every part made by Mercedes Benz.

7

8  234. Autobahn Motors was motivated to engage in this OEM fraud, because non-OEM parts

9  cost Autobahn Motors significantly less amounts than OEM parts. Also, OEM parts last

10  longer [See MB USA Website, Exhibit A re OEM products quoted above].  Autobahn

11  Motors was also motivated to obey the directive of its parent company, Sonic Automotive

12  Inc., to purchase its sister company's product, zMAX.

13

14  235. Autobahn Motors profited on both ends by purchasing the non OEM parts and selling them

15  as the OEM parts, and then having the added benefit of the customer returning much earlier

16  for further repair work. Ultimately, customers decided to buy a new car which added a

17  further benefit to Autobahn Motors.

18  236. An example of the OEM/ non-OEM price listing is shown by the below summary data

19  extracted from documents from Munich Auto Parts, the supplier of the non-OEM oil filters:

| Quantity | dealer price | discount | Total savings |
|----------|-------------|----------|---------------|
| 6500 | $11.50 | $7.50 | $26,000 |
| 7500 | $8.50 | $6.18 | $17,400 |
| 700 | $10.50 | $8.93 | $1,099 |
| 50 | $8.30 | $6.80 | $75 |
| 1500 | | $8.75 | [$13,125] |

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

52

237. The total savings on the oil filters is shown for the entire 17,795 oil filters purchased by Autobahn Motors.

238. The numbers may not appear gargantuan, but become cumulatively large across all the price differentials for an array of hundreds of non-OEM and OEM auto parts.

239. Autobahn Motors through David Ahlheim had actual knowledge that Autobahn Motors was in fact purchasing all kinds of non-OEM/non-genuine/approved Mercedes Benz Auto Parts, and was knowingly invoicing them to customers at OEM prices , and using OEM parts numbers in the repair/invoicing process.

240. When Autobahn Motors made the written and verbal representations, it knew them to be false; and made the representations knowingly and willfully false; and with the intent to defraud unknowing members of the public, including Plaintiffs herein. The person with knowledge of the falsity is David Ahlheim, Fixed Operations manager of Autobahn Motors. Plaintiff believes higher ups also had actual knowledge of the company's ads, including the general managers during the period of 2005-present.

241. Plaintiffs reasonably relied on the false representations to their detriment, in that they did in fact pay the Autobahn Motors invoice and charges, which include part pricing, services pricing of the prices for services using OEM certified Mercedes-Benz parts and supplies, when in fact non OEM non genuine/approved parts were used.

242. Plaintiffs and members of the class further detrimentally relied on the misrepresentations by entrusting their car to the service of Autobahn Motors, some of the non-OEM certified Mercedes-Benz supplies such as oil and oil filters can have immediate and long term

1    negative impacts on the automobile. The wrong oil and wrong oil filter can, for example,

2    reduce a car's life, and can cause the car to have a problem with serial repair issues.

3

4 243. Plaintiffs claim in this action that Autobahn Motors was aware that its use of sub-standard

5    oil and oil filters would fetch Autobahn Motors return repair business, and eventually new

6    car sales, as frustrated customers would give up their once-smooth-running Mercedes-Benz

7    automobiles for new automobiles.

8

9 244. In the meantime, Autobahn Motors profits from a steady flow of repair jobs.

10

11 245.  Plaintiffs have also obtained documents produced from Western States Oil, which

12    summarizes a long history of supplying oil to Autobahn Motors. Western States Oil

13    supplied non-OEM oil to Autobahn Motors. During the period of 2008-2010 a total of

14    $213,999.79 of non-OEM oil was purchased by Autobahn from Western States Oil for

15    delivery to Autobahn Motors and later for use in Autobahn Motors Customers Cars. The

16    OEM-approved oil is Mobile 1 Synthetic and Pennzoil Synthetic. Autobahn is using a

17    lower-grade Pennzoil, which is not approved by Mercedes-Benz USA. All of the oil

18    purchased from Western States is non-OEM oil.

19 246.  Eyewitness Mike DelRosario testified in his deposition that he saw a tanker truck from

20    Western State Oil arrive at Autobahn Motors, and pump Pennzoil oil into a vat. He knew it

21    was Pennzoil because he saw the label on the tanker, and a decal on the tank.

22

23 247.  Greg Graziani, a former auto parts advisor at Autobahn Motors has stated the following: He

24    worked behind the parts desk and was responsible for bringing various parts to the tech

25    people who would then install the parts into the car. His title was parts advisor. He worked

26    as such at Autobahn Motors initially for a 15 year period; took a couple of years off; then

27   *Ferrari v. Mercedes Benz et al.*

   Second Amended Complaint

28

worked for another 5 year period, leaving during 2013.  He saw that Autobahn Motors kept in stock a non Mercedes-Benz genuine/approved oil filter, brand name unknown, which came in a non-descript white box. He knows it is not a Mercedes box, because the Mercedes box has the Mercedes logo [the "star"] right on it.

248.  Graziani also notes a similar issue with engine air filters; cabin filters; brake pad sensors; and motor oil. During 2012-2013 there was an incident where a diesel Mercedes "kind of blew up". In the post incident examination of the automobile, one of the non-genuine/approved oil filters was found and was blamed by Mercedes-Benz USA. Mercedes-Benz USA used it as an excuse to not pay a warranty claim. He is not certain of the outcome of that matter, but what he does know is that he received a directive to remove those non genuine/approved oil filters and put them in an upstairs storage area. After that, as far as he knows, they no longer sold that oil filter. He believed that the non genuine/approved parts were purchased primarily at a company called SSF Imported Auto Parts, and another one called Munich Auto Parts.

249.  The oil filters from Munich Auto Parts were non-OEM. They came in a white box easily recognizable as a non-OEM part. Mercedes-Benz OEM parts bear the Mercedes Star; and come in a particularly colored box. These oil filters came in a blank white box and did not bear the Mercedes Star.

250.  The non-OEM oil came to Autobahn Motors from Western States Oil, located in San Leandro, CA. It would deliver Pennzoil in a tanker truck. Plaintiffs' data shows that these purchases were made during the period of 2008-2010 and totaled $233,999.79.  Plaintiffs believe there were further purchases going back to approximately 2005.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

55

251. Western States Oil would come with a tanker truck of Pennzoil. It would be partially emptied into a vat on premises to Autobahn Motors.  That vat was then connected to repair stations through an overhead pipe system that pumped the oil to the various repair areas. As a result, there were no Pennzoil cans lying around; no Pennzoil signs; no mention of Pennzoil at all.

252. Steve Meade is a former service advisor of Autobahn Motors, who worked there during much of the time of this OEM scandal. Mead also confirmed that he was directly involved in the initial invoicing [work order] process. The customer would come to him and explain whatever issues they were having with the car. Later the work order would turn into an invoice after receiving data from the repair department that the repairs had in fact been done; and, in the case of warranty job, it had to be "booked in" by the warranty department [also known as the booking department].  The booking department primarily registers the fact that some kind of repair, covered by a warranty, was in fact done. As for any kind of price indication based on non-OEM parts, he said absolutely not, there was not a kind of statement about the use of a non-OEM part.

253. Steve Meade also stated that he verbally advised that OEM parts would be used on their cars.

254. Autobahn Motors specifically benefitted from the fraudulent conduct by paying out much lower amount for non-OEM, non-genuine/approved parts and supplies and charging the same amount as though genuine/approved and OEM parts and supplies had been used.

255. The difference in the price and value between OEM certified parts and non-OEM, non genuine/approved parts is huge. By way of example, non-OEM certified oil filters can cost in the neighborhood of $7 versus $35 or more for OEM certified/genuine/approved filters.

56

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

256. The oil purchased by Autobahn Motors was produced by Pennzoil, which can cost about one-third of the oil recommended/designated by Mercedes-Benz to be used [Mobile 1 Synthetic].

257. Former Autobahn Motors parts advisors confirm and state that they regularly gave non-OEM parts from the Autobahn Motors parts department, and provided those parts to service techs who performed the actual repairs; and stated that they would then key in the part number for an OWM parts, even though non-OEM parts were used.

258. That key in later went into the repair order, into the booking data and into the final invoice to the customer.

259. As a result, the customer was invoiced for an OEM part, but in fact a non-OEM part was used.

260. Further, a former service adviser [Roopesh Chandra] has stated that when generating an invoice, he did not input the non-OEM part number, instead inputting the OEM part number, and transmitted the invoice data from the booking data to the accounting department for a final invoice. He stated that he did not ever place on such a repair order, any information about non-OEM parts being used:

"Q. Is it your understanding that non-OEM parts were sold at the same price as OEM parts?

A. Yes.

Q. What is that understanding based on?

A. We used to buy them from, like, SSF or someone and sell it at the same price you would sell the Mercedes-Benz parts for.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

1   Q. The process of preparing the Autobahn invoice to a customer, like a repair invoice,

2   you are not involved in that; am I right?

3   A. No.

4   Q. There is a service advisor that does that?

5   A. The service advisor does all that. He creates a repair order. Once he creates the repair

6   order, we bill everything out on the repair order.

7   Q. Do you have some impact on the ultimate invoice because you key in the part

8   number?

9   A. We just key in the part number, yeah.

9   Q. Okay. Do you ever recall having a situation where you have used a non-OEM part, but

10  the part number you are giving is an OEM part number?

11  A. Yes.

12  Q. And if that was done, do you understand that it would be charged the regular OEM

13  price to a customer?

14  A. Yeah.

15  Q. And that would be a scenario where a non-OEM part was used, but still invoiced out

16  as an OEM part?

17  A. Yeah."

18                                             ***

19      "Q. Did you ever think keying in an OEM part number for a non-OEM part was wrong?

20      A. It was wrong, yes. I couldn't say anything to anybody. It wasn't my decision."

21  261. The customer was kept in the dark on this scandal, even after it came to light by MB USA.

22

23  262. Mercedes-Benz USA has been actively instrumental in jointly creating the publicly

24      fraudulent ad in the form of a published writing on the Mercedes-Benz USA website,

25      Exhibits A, B, and C hereto.

26

27  *Ferrari v. Mercedes Benz et al.*
    Second Amended Complaint

28

263. Autobahn Motors engaged in conduct best described as oil filter laundering, by commencing to buy its oil filters from Mercedes-Benz USA [OEM-certified], and in an effort to not arouse suspicion from Mercedes-Benz USA, used those oil filters up not by installing them in cars [as Mercedes-Benz USA would like to believe], but instead sold them and other OEM parts to other auto parts companies, including SSF Imported Auto Parts.

264. Autobahn Motors similarly buys non-OEM auto parts from SSF Imported Auto Parts, and selling their OEM parts inventory to SSF Imported Auto Parts. SSF Imported Auto Parts is in the business of buying OEM parts from Mercedes-Benz dealerships, and reselling those parts to auto repair shops throughout San Mateo County, San Francisco County, and beyond.

265. Plaintiffs are in possession documents [series of invoices] from SSF Imported Auto Parts showing Autobahn Motors sale of OEM auto parts to SSF Imported Auto for the period of 2005-2015. The documents show that the total sales by Autobahn Motors to SSF Imported Auto Parts for auto parts were $5,317,582.77. The parts that were sold by For the period December 2004-May 29, 2015, the total purchases of non-OEM/non-genuine/approved Mercedes –Benz  auto parts by Autobahn Motors was $215,027.71.

266. Roopesh Chandra performed an analysis of the markup Autobahn Motors put on these wholesale prices and determined it was 1.5%. He also stated that the normal markup from the parts department to the wholesaler is approximately 17.5%. The absence of a regular markup on the OEM parts transactions shows that Autobahn Motors' agenda was not selling OEM auto parts for a profit, but was instead about using non-OEM parts, invoice as though they were OEM parts, and then offloading their own inventory of OEM parts to another wholesaler.

59

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

267. Plaintiffs make no claims that SSF Imported Auto Parts did anything wrong in buying legitimate OEM parts from Mercedes-Benz dealerships. By selling off the Mercedes-Benz USA oil filters and auto parts to other auto parts stores, Autobahn Motors made it appear as though they are really buying and using Mercedes-Benz USA genuine/approved/OEM certified parts, as least as far as Mercedes-Benz USA was led to understand. It may be that Mercedes-Benz USA is a victim of the fraudulent conduct as well, and truly "did not know." Plaintiffs submit that Mercedes-Benz USA either actually knew, or should have known in the exercising of reasonable diligence o the OEM fraud.

268. Autobahn Motors engaged in the following activity to cover up its use of non-OEM parts:

269. Former parts advisors have stated that it became known at Autobahn Motors that MB USA officials would be coming to Autobahn Motors to do an inspection of the premises. An order came out from the parts manager's boss to the parts advisors requiring that the non-OEM and other parts be removed from the parts department.  The parts were removed for a period of a couple of weeks, and were then placed back into the parts area after the MB USA officials came and left.

270. Autobahn Motors also purchased various non OEM paint products, some of which are not MB USA approved.  In addition, the work done through the purchases from Finishmaster was handed off to a separately owned company called Dent Wizard who also did business as Paint Wizard.  Autobahn Motors basically delegated to Paint Wizard/Dent Wizard the task of repairing and painting some of the smaller level dents and bumpers on Autobahn Motors customers' cars, and invoiced its customers as though the work had been done at

60

Autobahn Motors' designated certified auto body repair shop, which until late 2010 was Eurotech.

271.  Autobahn Motors violated Eurotech's privacy right in its name, and in Eurotech's designation as an MB USA certified auto body shop [the first auto body shop designated as such in Northern California] by letting its customers believe that Eurotech was doing the auto body work when in fact it was being done by Dent Wizard/Paint Wizard.

272.  Dent Wizard/Paint Wizard is not certified by MB USA.

273.  Though it can be perfectly fine for an uncertified shop to do work on a Mercedes, what makes it wrong here is that Autobahn Motors showed their invoicing and their name, and their statement that they were an MB USA certified repair shop, and thereby committed a second type of fraud herein [auto repair certification fraud].

274.  There was a substantial volume of cars done under this auto repair certification scheme. Based on data provided by Finishmaster [an auto paint distributor], and based on calculations from the use of clear coat [the final stage of auto paint job is to apply clearcoat which acts as a glossy sealant to preserve the paint], approximately 1200-1250 cars probably had been repaired under this scheme.

275.  David Ahlheim was formerly the parts department manager of Autobahn Motors and was later promoted to the Fixed Operations Director at Autobahn Motors, and is now the Director of Parts and Service. He is the person who implemented the whole array of activity resulting in the fraudulent use of non OEM parts invoiced and sold as OEM parts at Autobahn Motors during the period of 2005-present.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

276. David Ahlheim implemented the Autobahn Motors website [See Exhibit D hereto] that only OEM and genuine/approved parts and supplies were used for Mercedes-Benz repairs at Autobahn Motors.

277. He is responsible for implementing the program to purchase non-OEM certified oil, oil filters, air filters, cabin filters, disc brake pads assembly, shock absorbers, spark plugs, other parts; placing those non-OEM parts in the department of Autobahn Motors; and instructing the parts mangers and dole those parts out to tech service workers who actually install them.

278. David Ahlheim takes his orders from Sonic Automotive and is responsible for implementing the non OEM program.

279. David Ahlheim implemented the Autobahn Motors service department personnel to install the non-OEM certified/non-genuine/approved Mercedes Benz parts into customers' cars, including Plaintiffs' herein. He also directed the service department to key in OEM parts numbers into customer repair orders.

280. David Ahlheim ordered the Autobahn Motors service department to print out invoices to customers such as Plaintiffs that show price levels charged as though OEM certified and genuine/approved Mercedes Benz parts were used/installed when in fact lower priced non-OEM, non genuine/approved Mercedes-Benz parts were used. The price and value difference between non OEM certified parts/supplies and OEM-certified, Mercedes Benz genuine/approved parts is significant.

281. Autobahn Motors is responsible for the fraudulent conduct of David Ahlheim based on the doctrine of respondeat superior. David Ahlheim worked in his position as Autobahn Motors' parts manager and later the Fixed Operations Director at all relevant times to this complaint.  David Ahlheim was directed by his direct boss at Sonic Automotive, or other

1   Sonic Automotive officials, who ordered David Ahlheim to implement this OEM fraud.

2

3   282. David Ahlheim aided and abetted Autobahn Motors' placement of a false and misleading

4       ad, by agreeing to implement the directive given by his superior officials within Sonic

5       Automotive Inc., and taking actual steps to implement the OEM fraud, by maintaining as

6       part of his job duties Autobahn Motors' website, which he knew to be including and

7       publishing a statement that only OEM parts were used, when he had actual knowledge that

8       non OEM parts were being used.

9

10  283. Defendant David Ahlheim further permitted a practice whereby  Certified Pre Owned

11      Warranty were fraudulently issued by Autobahn Motors, Belmont, California, for used cars

12      that had an oil/engine additive known as zMAX. The Mercedes Benz parent company

13      publishes an owners manual which admonishes customers not to use oil additives, and that

14      using an oil additive will void the Mercedes Benz warranty on the car. This disapproval of

15      oil additives by MB is common in the automobile and oil industry, and is due to the fact that

16      oil additives are largely useless and can be damaging to a car. Autobahn Motors has an

17      ongoing practice [2004-present] of putting zMAX into its inventory of pre owned cars.

18  284. These cars are given a Certified Pre Owned warranty that is issued by MB USA or other

19      third party warranty providers, and is a false warranty in that the warranty is already void by

20      virtue of the use of zMAX in the car. MB USA knows that zMAX was being put into the pre

21      owned cars at Autobahn because such use is stated in a document known as a VMI report.

22      Exemplars of VMI forms with reference to zMAX are attached as Exhibit M to this

23      complaint.

24

25  285. MB USA is the operator and controller of the VMI reports, and thus has received actual

26      knowledge of Autobahn's practice to place zMAX into all used cars. MB USA grants an

27  *Ferrari v. Mercedes Benz et al.*
    Second Amended Complaint

28

63

oxymoron warranty on the Certified Pre Owned cars at Autobahn motors because the warranty is already void on day one due to the use of zMAX [A Certified Pre-Owned checklist from MB USA is attached to Exhibit G hereto].

286. There was the following motivation for concealment:

287. MB USA is a willful beneficiary of the zMAX fraud because MB USA is the entity that issues a certified pre-owned warranty; which under terms of the warranty, are void, or as in practice, voidable at MB USA's option, if the owner of the car uses any kind of oil additive. zMAX is an engine oil additive, which Sonic Automotive, per this marketing campaign with its sister company, Speedway Motorsports does its part by automatically putting zMAX into its pre-owned Mercedes-Benz car inventory.

288. For this scheme to work, concealment of the facts of the scheme is necessary. If people knew that whenever they bought a pre-owned car from Autobahn Motors, that their certified pre-owned car and attendant MB USA, or third-party warranties contain language that render them void or voidable at the option of the warrantor if oil additives or engine additives are used, and if the true facts about the impact of zMAX on the warranty were told to buyers, buyers would rarely if ever by a pre-owned car from Autobahn Motors.

289. The success of the program was dependent on the ability of all participants to conceal the scheme from public view. Toward that end, MB USA has VMI reports showing use of zMAX, but the VMI reports are generally not available to the consumer. It is an internal MB USA document. It registers the fact the zMAX was used, which then and there renders the certified pre-owned warranties void or voidable.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

64

290. Defendant Speedway Motors makes the statement as set forth in the letter form Mr. Smith, Exhibit Q hereto, that the use of zMAX will not void the manufacturer's warranty. Plaintiffs refer to and incorporate herein the plain language of the automobile warranties, collectively attached hereto as Exhibits N and O, including Mercedes-Benz, which generally have language prohibiting the use of oil and engine additive and stating that warranties will be void if such additives are used.

291. The fraudulent advertising committed by defendants MB USA, Autobahn Motors, Sonic Automotive, And Speedway Motorsports, Inc. is done in a manner which confusingly makes it appear that non-OEM products are in fact Mercedes-Benz genuine products, and carry the full benefit of the Mercedes-Benz trademark, the start, including the Mercedes-Benz parts warranty, when in fact the product is not Mercedes-Benz genuine part, does not carry the Mercedes-Benz star and is not subject to an MB USA parts warranty. Indeed, it is expressly excluded from the MB USA parts warranty. in the case of zMax, the placement of the non-OEM product into a maintenance offering book kept at the Autobahn Motors' service adviser office area, which on top of the book as had the Mercedes-Benz star, and which inside the book has several pages of advertising concerning zMAX.

292. The zMAX claims are further specified below.

293. As a proximate result of Defendant's conduct, Plaintiff suffered actual damages. Damages are requested equal to the full amount charged to class members who received a non OEM part, but were invoiced as though it was an OEM part; Plaintiffs request consequential damages equal to the value of the impact of the use of non-OEM products on the claimants automobiles, including an impact whereby their cars needed irregularly high levels of repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer.  Plaintiff requests all consequential damages, however suffered.

65

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

294. Plaintiffs further seek a trebling of its damages pursuant to the R.I.C.O. Act, 18 U.S.C. Section 1961 et seq.

295. An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000. It is likely the 17,795 oil filter represent 17,795 different victims.  However some allowances must be made for the fact that some of the victims have more than one Mercedes cars, some of the victims have brought the same car in multiple times.

296. The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they bargained for. These claims are made in an amount according to proof, in excess of $15 million, for total damages according to proof but in excess of $21 million.

297. In the alternative, Plaintiffs request for some other amount of damages and damage calculations that the court deems just and appropriate is on the basis that they paid for something, that they did not receive. Their part served requests required OEM, parts and that Plaintiffs and class member have also suffered compensatory and general damages to their vehicles, arising from the fact that use of non-OEM arts, such as oil filters, zMAX, oil, and other non-OEM parts as described in this complaint negatively impact the Mercedes Benz automobiles owned by Plaintiffs herein.

298. Plaintiffs herewith seek the following other relief:

66

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

299. Unless and until injunctive relief is issued by the court, Defendants will continue in their conduct. Defendants' conduct violates the RICO Act, and is this enjoinable. Plaintiffs are presumed to have suffered irreparable harm in light of the showing of a RICO Act violation.

300. Plaintiffs accordingly requests injunctive relief in the form of an order enjoining and prohibiting the defendants from using an enterprise to commit acts of mail fraud and wire fraud, and such other injunctive relief as the Court deems just and appropriate.

301. Specifically, Plaintiffs request an injunction prohibiting defendants from advertising either through brochures, emails, or invoices, that they only use or did use genuine/approved Mercedes-Benz parts, when in fact they use non- genuine/approved Mercedes-Benz parts

302. Plaintiffs also request declaratory relief in the form of a decree in which the Court states that the Defendants have violated the R.I.C.O. Act by their conduct towards Plaintiffs and other victims, as alleged herein; and such other and further declaratory relief as the Court deems just and appropriate.

303. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

304. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to fraudulently market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid

67

the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

305. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

306.  Plaintiffs further seek attorneys fees as allowed under the R.I.C.O. Act.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## IX.
## FIFTH CLAIM FOR RELIEF FOR VIOLATION OF R.I.C.O STATUTE
## [18 U.S.C. Section 1962(c)]
## [AGAINST DEFENDANT JOE COX]

307. This is a fifth Claim for Relief by all Plaintiffs against Defendant Joe Cox for violation of the R.I.C.O. Act, 18 U.S.C. Section 1962(c).

308. The allegations of paragraphs 1 through 306 of this Complaint are incorporated herein.

68

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

309. Plaintiffs and proposed class members have each brought one or more Mercedes-Benz auto mobiles to Autobahn Motors for repair, during which they receive non-OEM parts, and were invoiced for OEM parts at OEM prices. Plaintiffs and class members are victims of Defendants Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn Motors, David Ahlheim, and Sonic Automotive, Inc.'s business practice of falsely advertising that OEM parts/parts would be used in repairs done at Autobahn Motors.

310. Defendant Joe Cox corruptly influenced an enterprise known as Autobahn Motors.

311. Autobahn Motors is not a defendant in this claim for relief.

312. Defendant Joe Cox corruptly influenced an enterprise known as Autobahn Motors.

313. Autobahn Motors is not a defendant in this claim for relief.

314. Joe Cox was a former regional manager of Sonic Automotive, and became the General Manager of Autobahn Motors, Belmont, California. In both of these capacities he has been instrumental in corruptly influencing Autobahn Motors, an enterprise, into committing the predicate offenses of mail fraud and wire fraud, by the following conduct:

315. Autobahn Motors is a corporation with a principal place of business in Belmont, California, but doing business with national and international companies. Excerpts of its website are attached hereto as Exhibit D. Its website also lists approximately 115 employees in the following departments: sales [25]; service [75]; parts [11]; and finances [4].

316. Defendant Joe Cox used the following modes of interstate commerce to accomplish this corrupt influence on Autobahn Motors: Wire fraud and mail fraud.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

317. Defendant Joe Cox's conduct constitutes mail fraud and wire fraud, both of which are predicate offenses under the RICO Act, 18 USC 1962 [section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)].

318. The wire fraud offense is based on the fact that the corrupt practices complained of were done in part in the form of statements and representations on the Autobahn website. The creation of the ads also included typical communications between outside and inside marketing staff done through emails.

319. The mail fraud offense is based on the fact that the US mails were involved in dissemination the various brochures, ads, and invoices described in this claim.

320. Plaintiffs reasonably relied on Defendant Joe Cox's representation that non-OEM parts were being used and invoiced at OEM prices.

321. Plaintiffs' reliance on Defendants' representation that non OEM parts were being used and invoiced at OEM prices was a substantial factor in causing their harm.

322. Some of the plaintiffs saw the Autobahn Motors website ad [Exhibit D] stating that only genuine/approved OEM/Mercedes-Benz parts would be used; some received the Autobahn Motors newsletter that also stated that genuine/approved parts would be used; all plaintiffs received invoice [front and back, exemplar attached hereto as Exhibit C] for each repair transaction. All plaintiffs met with a service advisor and saw the layout of the service advisor's work area described herein. Some of the plaintiffs were verbally told by their respective service advisor that Autobahn Motors would use genuine/approved Mercedes-Benz parts only on their cars.

323. Some of the plaintiffs received or saw the MB USA brochure [Exhibit B], and some saw the MB USA website [excerpts of which are attached as Exhibit A hereto] advertising the benefits and longevity of genuine/approved MB USA parts.

324. Furthermore, the OEM and non OEM auto parts in this case also travel through state lines and/or international lines to get to Belmont, CA.

325. The following conduct constitutes corrupt racketeering behavior because it was done methodically with premeditation, knowing that many thousands of victims would result; was done knowingly and willfully; and involved a substantial stream of commerce; involved the use of not only top management and subordinate management to accomplish all of the various directives and activities of the non OEM parts scheme described herein.

326. The acts further constitute a pattern of racketeering because of the similarity of the conduct, and the purpose of the conduct to sell various non OEM parts, and to invoice though they are OEM parts, and to across the board place non OEM parts, including zMAX, and other auto body parts, into the entire pre-owned car inventory on a regular and continuous basis since app. 2004 [when Sonic purchased Autobahn Motors], to and through the present. The ads on the autobahn website are similar.  The statements made by MB USA brochures is similar; the conduct about zMax is similar right across the board to all purchasers of pre-owned vehicles from any dealership by Sonic Automotive.

327. Defendant Joe Cox corruptly influenced, both directly and indirectly, Autobahn Motors by the following conduct constituting racketeering activity:

328. Autobahn Motors for many years been fraudulently servicing, repairing, and selling cars (CPO), by using non-approved parts & material as required in every Mercedes car manuals, also Autobahn Motors assured customers by falsely advertising that they use genuine

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

Mercedes parts; Autobahn further falsely advertised / claimed we have 22 Mercedes Master Technicians, also they claim.

329. Autobahn Motors/Sonic Automotive in at least 4 confirmed states (including CA), which is believed to be the practice of most of the dealerships owned by Sonic Automotive, are involved in the same fraudulent sales (CPO).

330. Autobahn Motors practice in placing zMAX automatically in all preowned cars at dealerships owned by Autobahn Motors, has been investigated by Plaintiff in the following manner:

331. Dealerships commonly have pre-owned cars inventory displayed with photos and VIN numbers, on the dealerships commercial website. Plaintiff Mike Keynejad has gone to several such websites, has obtained VIN numbers of preowned cars of dealerships listed on the Sonic Automotive website as a Sonic Automotive owned dealership. VMI or similar reports thereon were done; and 100% of those cars in 4 different states came up positive for zMAX.

332. Plaintiff Keynejad will be providing a detailed report, but based on this VIN/VMI comparison, Plaintiffs are able to currently confirm the practice of placing zMAX into preowned cars, is being done actively by Sonic Automotive owned dealerships in 4 states. We also point out that former parts manager Roopesh Chandra stated that Autobahn Motors had a practice of putting zMAX in all preowned cars; a reasonable inference is that this is a Sonic driven campaign involving General managers in all of the Sonic Automotive owned dealerships, agreeing to place zMAX into preowned cars, and to market zMAX in a manner as though it were OEM or approved.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

333. Allowing and permitting an aggressive marketing campaign with zMAX, an oil additive that is non OEM. The owners manual of Mercedes Benz automobile contains this directive about oil additives: [See CLK Owner's manual, attached hereto as Exhibit G]:

"Engine Oil Additive. Do not blend oil additives with engine oil, they may be harmful to engine operation.   Damage or malfunctions resulting from blending oil additives are not covered by the Mercedes Benz limited warranty."

334. Defendant Joe Cox used the following modes of interstate commerce to accomplish this corrupt influence on Autobahn Motors: Wire fraud and mail fraud.

335. Defendant Joe Cox's conduct constitutes mail fraud and wire fraud, both of which are predicate offenses under the RICO Act, 18 USC 1962 [section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)].

336. Joe Cox is motivated to market this zMAX product because Sonic Automotive, another enterprise he corruptly influences, has a President named O. Bruton Smith, who is also founder and president of Speedway Motors, another enterprise, which manufactures zMAX. Joe Cox knows that zMAX is a prohibited product. He has made a directive within Autobahn Motors that all pre owned cars on the Autobahn Motors lot will and do receive zMAX. At the same time, Joe Cox is overseeing sales of used cars that include a MB USA warranty, or warranty provided by other third party warranty companies, which by the terms of the MB USA owners manual, render the MB USA warranty void. This void warranty given at the time of purchase of the car constitutes an oxymoron warranty, a warranty that is void from day one due to the use of zMAX.

337. Joe Cox has also permitted, ratified, and allowed David Alheim's conduct of buying various non OEM parts, such as oil filters, air filters, spark plugs, brake sensors. According to

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

73

invoices from Autobahn Motors non OEM parts supplier Munich Auto Parts, the following non OEM parts were purchased and sold by Autobahn motors during the period  2005 to 2010:

| Quantity | dealer price | discount | Total savings |
|----------|--------------|----------|---------------|
| 6500 | $11.50 | $7.50 | $26,000 |
| 7500 | $8.50 | $6.18 | $17,400 |
| 700 | $10.50 | $8.93 | $1,099 |
| 50 | $8.30 | $6.80 | $75 |
| 1500 | | $8.75 | [$13,125] |

338. These parts were invoiced to customers including plaintiffs and other class members as though OEM, at OEM prices, but were in fact non OEM. Non OEM parts have a lower market value than OEM parts.

339. According to counsel for Autobahn Motors, Mr. Bruce Nye, Autobahn motors regularly placed non OEM parts purchased from SSF Auto into the Autobahn used car inventory. Plaintiff has documents from SSF Auto showing that Autobahn motors purchased virtually every kind of non OEM part available for Mercedes Benz automobiles during the period 2005-present.

340. This statement was made in a court hearing in Redwood City on April 4, 2016.

341. Joe Cox committed the predicate offenses of wire fraud and mail fraud by influencing Autobahn Motors to have website ads that state Autobahn Motors uses OEM parts. The following chart is a collection of statements made on the Autobahn Motors website during the period 2007-2016:

74

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

| Year | Statement |
|------|-----------|
| 2005 | Not currently available |
| 2006 | Not currently available |
| 2007 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2008 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2009 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2010 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2011 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2012 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2013 | "We use genuine Mercedes-Benz Parts" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2014 | "Best of all, we only use OEM Certified Mercedes-Benz auto repair parts and accessories!" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |
| 2015 | "Best of all, we only use OEM Certified Mercedes-Benz auto repair parts and accessories!" NOTE: the document does NOT state that sometimes Autobahn uses non-OEM parts. |

342.  Joe Cox committed wire fraud by influencing Autobahn Motors to issue email

correspondence with customers, in which statements were made that Autobahn Motors uses

OEM parts. Autobahn Motors and Joe Cox concealed the fact that during this time

Autobahn Motors regularly used non OEM parts and invoiced them at OEM prices.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

75

343. Joe Cox Committed mail fraud by influencing Autobahn Motors to send out through the United States Postal Service various newsletters to customers. These newsletters contained false and misleading statements that OEM parts were used when in fact non OEM parts were being used.

344. Joe Cox committed mail fraud also sending out various brochures that also state Autobahn Motors uses OEM parts.

345. The following ad exemplars are attached:

346. Autobahn Motors has long advertised it only used OEM-certified/Mercedes-Benz genuine/approved parts. See Exhibit D hereto page 19, excerpts from Autobahn Motors' website stating "Best of all, we only use OEM Certified Mercedes-Benz auto parts and accessories!"

347. A further false and misleading advertisement published by Autobahn Motors is in the form of a newsletter of which approximately 217,316 were distributed [Exhibit G, page 284, date unknown] and states: "Genuine Mercedes Benz parts".

348. There was the following motivation for concealment:

349. MB USA is a willful beneficiary of the zMAX fraud because MB USA is the entity that issues a certified pre-owned warranty; which under terms of the warranty, are void, or as in practice, voidable at MB USA's option, if the owner of the car uses any kind of oil additive. zMAX is an engine oil additive, which Sonic Automotive, per this marketing

76

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

campaign with its sister company, Speedway Motorsports does its part by automatically

putting zMAX into its pre-owned Mercedes-Benz car inventory.

350. For this scheme to work, concealment of the facts of the scheme is necessary. If people knew that whenever they bought a pre-owned car from Autobahn Motors, that their certified pre-owned car and attendant MB USA, or third-party warranties contain language that render them void or voidable at the option of the warrantor if oil additives or engine additives are used, and if the true facts about the impact of zMAX on the warranty were told to buyers, buyers would rarely if ever by a pre-owned car from Autobahn Motors.

351. The success of the program was dependent on the ability of all participants to conceal the scheme from public view. Toward that end, MB USA has a VMI report showing use of zMAX, but the VMI reports is generally not available to the consumer. it is an internal MB USA document. It registers the fact the zMAX was used, which then and there renders the certified pre-owned warranties void or voidable.

352. Defendant Speedway Motors makes the statement as set forth in the letter form Mr. Smith, Exhibit Q hereto, that the use of zMAX will not void the manufacturer's warranty. Plaintiffs refer to and incorporate herein the plain language of the automobile warranties, collectively attached hereto as Exhibits N and O, including Mercedes-Benz, which generally have language prohibiting the use of oil and engine additive and stating that warranties will be void if such additives are used.

353. The fraudulent advertising committed by defendants MB USA, Autobahn Motors, Sonic Automotive, And Speedway Motorsports, Inc. is done in a manner which confusingly makes it appear that non-OEM products are in fact Mercedes-Benz genuine products, and carry the full benefit of the Mercedes-Benz trademark, the start, including the Mercedes-

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

Benz parts warranty, when in fact the product is not Mercedes-Benz genuine part, does not carry the Mercedes-Benz star and is not subject to an MB USA parts warranty. Indeed, it is expressly excluded from the MB USA parts warranty. in the case of zMax, the placement of the non-OEM product into a maintenance offering book kept at the Autobahn Motors' service adviser office area, which on top of the book as had the Mercedes-Benz star, and which inside the book has several pages of advertising concerning zMAX.

354. As part and parcel of this need to conceal the truth of non OEM/non approved products regularly used at Autobahn Motors; and for the special need to conceal the truth about zMAX, its impact, on MB USA certified pre-owned warranties, or other third party warranties, Joe Cox made a false and misleading statement in responses to Requests for Admissions issued in this action, when he stated:

"Request For Admission No.5:

ADMIT that the website ad, [attached hereto as Exhibit A] stated "Best of all, we only use OEM Certified Mercedes-Benz auto parts and accessories!"

Response No. 5:

Objection, this Request is vague and non-specific as to time. Without waiving this objection, Autobahn admits that from approximately January 23, 2014 until approximately August 31, 2015, and at no other time, on a page addressed to Autobahn service customers and prospective service customers, the phrase "Best of all, we only use OEM certified Mercedes-Benz auto parts and accessories" was present on Autobahn's web site. In all other respects, Denied."

355. Similarly Joe Cox influenced David Ahlheim to also make a similar false statement filed by Autobahn Motors in a San Mateo County Superior Court Action No. CIV 525559 entitled *Maskay Inc. et al . v. Autobahn Motors et al.*

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

78

356. We are not claiming any liability for Autobahn Motors' decision to sue Michael Keynejad, Maskay Inc., Herman Franck, or John Diaz for defamation.

357. We are pointing out evidence from that action that shows a further false statement from David Ahlheim:

> "On occasions where a genuine Mercedes-Benz part or fluid was either unavailable or non-existent during the period of January 2014 to August 2015, it was Autobahn's service department's custom and practice to inform the customer that non Mercedes-Benz approved parts or fluids were used in the maintenance or repair of the customer's vehicle"

358. As a proximate result of Defendants conduct, Plaintiff suffered actual damages. Damages are requested equal to the full amount charged to class members who received a non OEM part, but were invoiced as though it was an OEM part; Plaintiffs request consequential damages equal to the value of the impact of the use of non-OEM products on the claimants automobiles, including an impact whereby their cars needed irregularly high levels of repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer. Plaintiff requests all consequential damages, however suffered.

359. Plaintiffs further seek a trebling of its damages pursuant to the R.I.C.O. Act, 18 U.S.C. Section 1961 et seq.

360. An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000. It is likely the 17,795 oil filters represent 17,795 different victims. However some allowances must be made for the fact that some of the victims have more than one Mercedes car, some of the victims have brought the same car in multiple times.

79

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

361. An example of the OEM; non-OEM price listing is shown by the below summary data extracted from documents from Munich Auto Parts, the supplier of the non OEM oil filters:

| Quantity | dealer price | discount | Total savings |
|---|---|---|---|
| 6500 | $11.50 | $7.50 | $26,000 |
| 7500 | $8.50 | $6.18 | $17,400 |
| 700 | $10.50 | $8.93 | $1,099 |
| 50 | $8.30 | $6.80 | $75 |
| 1500 | | $8.75 | [$13.125] |

362.  The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they bargained for. These claims are made in an amount according to proof, in excess of $15 million, for total damages according to proof but in excess of $21 million.

363.  In the alternative, Plaintiffs request for some other amount of damages and damage calculations that the court deems just and appropriate is on the basis that they paid for something, that they did not receive. Their part served requests required OEM, parts and that Plaintiffs and class member have also suffered compensatory and general damages to their vehicles, arising from the fact that use of non-OEM parts, such as oil filters, zMAX, oil, and other non-OEM parts as described in this complaint negatively impact the Mercedes Benz automobiles owned by Plaintiffs herein.   These damages include diminution of an automobile known to have zMAX in it in an amount according to proof; other diminutions in values of the car brought out by uncertainties.

80

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

364. Plaintiffs herewith seek the following other relief:

365. Unless and until injunctive relief is issued by the court, Defendants will continue in their conduct. Defendants' conduct violates the RICO Act, and is this enjoinable. Plaintiffs are presumed to have suffered irreparable harm in light of the showing of a RICO Act violation.

366. Plaintiffs accordingly requests injunctive relief in the form of an order enjoining and prohibiting the defendants from using an enterprise to commit acts of mail fraud and wire fraud, and such other injunctive relief as the Court deems just and appropriate.

367. Specifically, Plaintiffs request an injunction prohibiting defendants from advertising either through brochures, emails, or invoices, that they only use or did use genuine/approved Mercedes-Benz parts, when in fact they use non- genuine/approved Mercedes-Benz parts

368. Plaintiffs also request declaratory relief in the form of a decree in which the Court states that the Defendants have violated the R.I.C.O. Act by their conduct towards Plaintiffs and other victims, as alleged herein; and such other and further declaratory relief as the Court deems just and appropriate.

369. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

370. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

81

Defendants are expected to continue to fraudulently market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

371. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

372.  Plaintiffs further seek attorneys fees as allowed under the R.I.C.O. Act.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.


### X.
### SIXTH CLAIM FOR RELIEF FOR VIOLATION OF R.I.C.O STATUTE
### [18 U.S.C. Section 1962(c)]
### [AGAINST DEFENDANTS O.BRUTON SMITH]

373. This is a Sixth Claim for Relief by all Plaintiffs against O. BRUTON SMITH for violation of the R.I.C.O. Act, 18 U.S.C. Section 1962(c).

374. The allegations of paragraphs 1 through 372 of this Complaint are incorporated herein.

82

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

375. Plaintiffs and proposed class members have each brought one or more Mercedes-Benz auto mobiles to Autobahn Motors for repair, during which they receive non-OEM parts, and were invoiced for OEM parts at OEM prices. Plaintiffs and class members are victims of Defendants Mercedes-Benz USA LLC, Autobahn Motors, Inc. dba Autobahn Motors, David Ahlheim, and Sonic Automotive, Inc.'s business practice of falsely advertising that OEM parts/parts would be used in repairs done at Autobahn Motors.

376. Defendant O. Bruton Smith corruptly influenced an enterprise known as Sonic Automotive, and a further separate enterprise known as Speedway Motorsports Inc. [the makers, advertisers and sellers of zMAX]. Sonic Automotive and/or Speedway Motorsports are not a defendants in this claim for relief.

377. Defendant O. Bruton Smith used the following modes of interstate commerce to accomplish this corrupt influence on Sonic Automotive by wire fraud and mail fraud.

378. Defendant O. Bruton Smith's conduct constitutes mail fraud and wire fraud, both of which are predicate offenses under the RICO Act, 18 USC 1962 [section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)].

379. The wire fraud offense is based on the fact that the corrupt practices complained of were done in part in the form of statements and representations on both the zMAX and Sonic Automotive website. The creation of the ads also included typical communications between outside and inside marketing staff done through emails.

380. The mail fraud offense is based on the fact that the US mails were involved in dissemination the various brochures, ads, and invoices described in this claim.

83

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

381. Plaintiffs reasonably relied on Defendants' representation that non-OEM parts were being used and invoiced at OEM prices.

382. Speedway Motorsports Inc. is involved in interstate commerce in that its activities making zMAX involved interstate commerce, and by selling zMAX at dealerships owned by Autobahn Motors, regularly cross state lines.

383. Some of the plaintiffs saw the Autobahn Motors website ad [Exhibit D] stating that only genuine/approved OEM/Mercedes-Benz parts would be used; some received the Autobahn Motors newsletter that also stated that genuine/approved parts would be used; all plaintiffs received invoice [front and back, exemplar attached hereto as Exhibit C] for each repair transaction. All plaintiffs met with a service advisor and saw the layout of the service advisor's work area described herein.

384. Some of the plaintiffs were verbally told by their respective service advisor that Autobahn Motors would use genuine/approved Mercedes-Benz parts only on their cars. Some of the plaintiffs received or saw the MB USA brochure [Exhibit B], and some saw the MB USA website [excerpts of which are attached as Exhibit A hereto] advertising the benefits and longevity of genuine/approved MB USA parts.

385. Further, Sonic Automotive is a corporation organized under the laws of the state of Delaware, having a principal place of business in North Carolina, and doing business in California. See excerpts of its website, Exhibit F hereto. It reportedly has "over 100 dealerships spread across 14 states and 25 major metropolitan markets."

386. They use substantial interstate commerce by ordering zMAX located in North Carolina throughout the USA.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

84

387.    The following conduct constitutes corrupt racketeering behavior because it was done methodically with premeditation, knowing that many thousands of victims would result; was done knowingly and willfully; and involved a substantial stream of commerce; involved the use of not only top management and subordinate management to accomplish all of the various directives and activities of the non OEM parts scheme described herein.

388. The acts further constitute a pattern of racketeering because of the similarity of the conduct, and the purpose of the conduct to sell various non OEM parts, and to invoice though they are OEM parts, and to across the board place non OEM parts, including zMAX, and other auto body parts, into the entire pre-owned car inventory on a regular and continuous basis since app. 2004 [when Sonic purchased Autobahn Motors], to and through the present.   The ads on the autobahn website are similar.  The statements made by MB USA brochures is similar; the conduct about zMax is similar right across the board to all purchasers of pre-owned vehicles from any dealership by Sonic Automotive.

389. Plaintiffs reasonably relied on Defendants' representation that non-OEM parts were being used and invoiced at OEM prices.

390. Plaintiffs' reliance on Defendants' representation that non OEM parts were being used and invoiced at OEM prices was a substantial factor in causing their harm.

391. Defendant O. Bruton Smith corruptly influenced, both directly and indirectly Sonic Automotive by the following conduct constituting racketeering activity:

392. Sonic Automotive is sued herein because of their direct involvement in the fraudulent conduct and fraudulent advertising complained of here. It is the owner of Autobahn Motors, Inc. It directed David Ahlheim to engage in the fraudulent conduct; Sonic and Autobahn encouraged his conduct and facilitated it by requiring the conduct, knowing full

well that it would then commit the fraudulent conduct, and other intentional wrongful conduct described herein, which they as owner has benefitted from in the terms of charging customers at OEM prices for parts that were not OEM.

393. Former automotive parts advisors from Autobahn Motors state that they were under orders to use zMAX in every used car repair job coming in. zMAX constitutes a non-OEM part. The mandate given to the parts department to use it, was initiated and propelled by and out of Sonic Automotive, Inc. in this way, they directly participated in a scheme to use a non-OEM part of their own making, and having that part in voiced to the customer as though it were an OEM part.

394. Sonic further was directly involved in the non–OEM scandal because its sister company Speedway Motorsports, Inc. ["SMI"], produces a part called zMAX, which is a liquid oil additive. We call it a "sister company", because the founder and CEO of Sonic is also the founder and CEO of SMI; and many of the members of the boards of directors of the two companies are directors of both companies. See excerpts of Sonic's website, Exhibit F hereto, and excerpts of SMI's website, attached hereto as Exhibit I hereto.

395. Sonic Automotive and Autobahn Motors intentionally and deliberately concealed zMAX's non-OEM status from Autobahn Motors' customers.

396. Autobahn Motors for many years been fraudulently servicing, repairing, and selling cars (CPO), by using non-approved parts & material as required in every Mercedes car manuals, also Autobahn Motors assured customers by falsely advertising that they use genuine Mercedes parts; Autobahn further falsely advertised / claimed we have 22 Mercedes Master Technicians, also they claim.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

397. Autobahn Motors/Sonic Automotive in at least 4 confirmed states (including CA), which is believed to be the practice of most of the dealerships owned by Sonic Automotive, are involved in the same fraudulent sales (CPO).

398. Autobahn Motors practice in placing zMAX automatically in all preowned cars at dealerships owned by Autobahn Motors, has been investigated by Plaintiff in the following manner:

399. Dealerships commonly have pre-owned cars inventory displayed with photos and VIN numbers, on the dealerships commercial website.  Plaintiff Mike Keynejad has gone to several such websites, has obtained VIN numbers of preowned cars of dealerships listed on the Sonic Automotive website as a Sonic Automotive owned dealership.  VMI or similar reports thereon were done; and 100% of those cars in 4 different states came up positive for zMAX.

400. Plaintiff Keynejad will be providing a detailed report, but based on this VIN/VMI comparison, Plaintiffs are able to currently confirm the practice of placing zMAX into preowned cars, is being done actively by Sonic Automotive owned dealerships in 4 states. We also point out that former parts manager Roopesh Chandra stated that Autobahn Motors had a practice of putting zMAX in all preowned cars; a reasonable inference is that this is a Sonic driven campaign involving General managers in all of the Sonic Automotive owned dealerships, agreeing to place zMAX into preowned cars, and to market zMAX in a manner as though it were OEM or approved.

401. ZMAX is a product prohibited by the entire automotive manufacturing industry.
    Manufacturers carry warnings and statements that the use of an oil additive will void the

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

manufacturers warranty.  An exemplar is attached hereto as Exhibit D.  Mercedes Benz owners manual states [See attached Exhibit D]:

"Engine Oil Additive. Do not blend oil additives with engine oil, they may be harmful to engine operation. Damage or malfunctions resulting from blending oil additives are not covered by the Mercedes Benz limited warranty. "

402.  As an example of the industry wide attitude towards oil additives, the following statement from Honda Motor Company applies [Exhibit N hereto, email from Honda re warranty]: "American Honda recommends against the use of any oil additives other than those already blended in the stock oil. Such supplemental additives are unnecessary when using quality oils displaying the Starburst certification symbol. Additives cannot prolong the life of a used oil, because the oil molecules have been broken down. The use of oil additives will increase your cost of ownership, and can lead to engine damage."

403.  Further warranties re discouraging use of oil additives in cars are attached hereto as Exhibit O [Shell Helix; Amsoil lubricants; Castrol; Pennzoil].

404.  Exemplars of other car company owner manuals with similar prohibitions and voiding of warranties [Mercedes Benz, Mercedes Benz G Class, Lexus RC 350/RCF, 918 Porsche Spyder, BMW 7 Series, Nissan GTR, Chevrolet, Bugatti, Acura NSX, 2015 Corvette, Bentley, Toyota Highlander, Range Rover, Ford GT 06, 2013 Corvette] are attached hereto as Exhibit P.

405. These cars are given a Certified Pre Owned warranty that is issued by MB USA or other third party warranty providers, and is a false warranty in that the warranty is already void by virtue of the use of zMAX in the car. MB USA knows that zMAX was being put into the pre owned cars at Autobahn because such use is stated in a document known as a VMI report.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

Exemplars of VMI forms with reference to zMAX are attached as Exhibit M to this complaint.

406.  Defendants have further discussed the zMax issues with two separate Laboratories:
   • Laboratory #1 Blackstone Laboratories 416 E. Pettit Ave. Fort Wayne, IN 46806
      (260)744-2380

407.  Defendants are currently investigating zMAX as currently constituted, and have obtained a lab report dated March 23, 2016 from Blackstone Labs. This lab performed high temperature performance testing on a bottle of zMAX [1 Qt.], which costs $30 [purchased from Autobahn Motors app. January, 2016].  The lab report states:
   "Virtually nothing showed up in the spectral examination of this ZMAX sample. that doesn't necessarily mean that the additive didn't have anything in it, just none of the elements that we read."

408.  Further lab testing is being done on the current versions of zMAX, which plaintiffs believe will have findings consistent with the findings of Honda, General Motors, Porsche, Audi, Mobil 1 and Pennzoil that oil additives are useless, duplicate existing oil additives, and do not increase the longevity of the used oil.

409. A Honda dealership owned by Sonic Automotive that it carry and offer the zMAX product. Not all Sonic owned enterprises act in this manner.  For example, Walnut Creek Mercedes does not offer zMAX product.

410. Defendant O. Bruton Smith further corruptly influenced anther enterprise known as Speedway Motorsports Inc., located in Raleigh, NC.  Speedway Motorsports is the manufacturer of zMAX.  The president is Mr. Smith.  He is also the President of Sonic.  In

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

his role as President he has top to bottom command authority over both enterprises [Sonic Automotive and Speedway Motorsports].  He has used the zMAX website [zMAX.com] to publish a letter, a copy of which is attached hereto as Exhibit Q, and stating the following material misrepresentations of fact:

"Improving fuel mileage, reducing engine wear and emissions, increasing horsepower and helping vehicles to last longer and run smoother, are where zMAX ® micro-lubricant really demonstrates its capabilities".

411. The following should be noted concerning Defendant O. Bruton Smith's letter about zMAX [Exhibit Q hereto]:

"With the high prices at the pump today, the annual potential to save thousands of dollars per vehicle in fuel consumption alone is more than worth your while!  These savings go right to the profit line on your corporate balance sheet, something all business owners and managers can appreciate"

412. This shows Defendant's general intent and campaign to get managers at car dealerships throughout the United States to take on zMAX to their parts offerings.

413. Further noted on the zMax website [Excerpts attached hereto as Exhibit R hereto] is the statement: "zMAX does not void manufacturer's warranties".

414. As shown above, this assertion is not true.

415. Sonic Automotive Inc. directly benefitted and was motivated to implement its non-OEM parts scandal. Sonic as owner of Autobahn Motors receives a direct financial benefit when its revenues and profits increase. Either a dividend is paid, in which case Sonic Automotive

90

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

would receive the dividend, or the profit is retained in which case, Sonic would receive an increase in its stock holding.

416.   There was the following motivation for concealment:

417. MB USA is a willful beneficiary of the zMAX fraud because MB USA is the entity that issues a certified pre-owned warranty; which under terms of the warranty, are void, or as in practice, voidable at MB USA's option, if the owner of the car uses any kind of oil additive. zMAX is an engine oil additive, which Sonic Automotive, per this marketing campaign with its sister company, Speedway Motorsports does its part by automatically putting zMAX into its pre-owned Mercedes-Benz car inventory.

418. For this scheme to work, concealment of the facts of the scheme is necessary. If people knew that whenever they bought a pre-owned car from Autobahn Motors, that their certified pre-owned car and attendant MB USA, or third-party warranties contain language that render them void or voidable at the option of the warrantor if oil additives or engine additives are used, and if the true facts about the impact of zMAX on the warranty were told to buyers, buyers would rarely if ever by a pre-owned car from Autobahn Motors.

419. The success of the program was dependent on the ability of all participants to conceal the scheme from public view. Toward that end, MB USA has a VMI report showing use of zMAX, but the VMI reports are generally not available to the consumer. It is an internal MB USA document. It registers the fact the zMAX was used, which then and there renders the certified pre-owned warranties void or voidable.

420. Defendant Speedway Motors makes the statement as set forth in the letter form Mr. Smith, Exhibit Q hereto, that the use of zMAX will not void the manufacturer's warranty. Plaintiffs

refer to and incorporate herein the plain language of the automobile warranties, collectively attached hereto as Exhibits N and O, including Mercedes-Benz, which generally have language prohibiting the use of oil and engine additive and stating that warranties will be void if such additives are used.

421. The fraudulent advertising committed by defendants MB USA, Autobahn Motors, Sonic Automotive, And Speedway Motorsports, Inc. is done in a manner which confusingly makes it appear that non-OEM products are in fact Mercedes-Benz genuine products, and carry the full benefit of the Mercedes-Benz trademark, the start, including the Mercedes-Benz parts warranty, when in fact the product is not Mercedes-Benz genuine part, does not carry the Mercedes-Benz star and is not subject to an MB USA parts warranty. Indeed, it is expressly excluded from the MB USA parts warranty. in the case of zMax, the placement of the non-OEM product into a maintenance offering book kept at the Autobahn Motors' service adviser office area, which on top of the book as had the Mercedes-Benz star, and which inside the book has several pages of advertising concerning zMAX.

422. In addition, Sonic Automotive further by its direct interest in the company that produces zMAX . This is a non-OEM part, which Sonic directly ordered Autobahn Motors to use in all jobs.

423. Sonic Automotive aided and abetted the misleading ad placed by Autobahn Motors by directing Autobahn Motors to place an ad knowing that he ad is false. Sonic Automotive knew that in directing its subsidiary dealership, Autobahn Motors, to publish the ad, that Autobahn Motors would and did commit an intentional wrongdoing of a fraud and deceit. Sonic Automotive benefitted from this scheme because it is the owner of Autobahn Motors, and thus reaped the rewards of the OEM scandal.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

424. As a proximate result of Defendants conduct, Plaintiff suffered actual damages. Damages are requested equal to the full amount charged to class members who received a non OEM part, but were invoiced as though it was an OEM part; Plaintiffs request consequential damages equal to the value of the impact of the use of non-OEM products on the claimants automobiles, including an impact whereby their cars needed irregularly high levels of repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer. Plaintiff requests all consequential damages, however suffered.

425. Plaintiffs further seek a trebling of its damages pursuant to the R.I.C.O. Act, 18 U.S.C. Section 1961 et seq.

426. An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000. It is likely the 17,795 oil filters represent 17,795 different victims. However some allowances must be made for the fact that some of the victims have more than one Mercedes car, some of the victims have brought the same car in multiple times.

427. An example of the OEM; non-OEM price listing is shown by the below summary data extracted from documents from Munich Auto Parts, the supplier of the non OEM oil filters:

| Quantity | dealer price | discount | Total savings |
|----------|-------------|----------|---------------|
| 6500 | $11.50 | $7.50 | $26,000 |
| 7500 | $8.50 | $6.18 | $17,400 |
| 700 | $10.50 | $8.93 | $1,099 |
| 50 | $8.30 | $6.80 | $75 |
| 1500 | | $8.75 | [$13.125] |

93

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

428.  The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they bargained for. These claims are made in an amount according to proof, in excess of $15 million, for total damages according to proof but in excess of $21 million.

429.  In the alternative, Plaintiffs request for some other amount of damages and damage calculations that the court deems just and appropriate is on the basis that they paid for something, that they did not receive. Their part served requests required OEM, parts and that Plaintiffs and class member have also suffered compensatory and general damages to their vehicles, arising from the fact that use of non-OEM parts, such as oil filters, zMAX, oil, and other non-OEM parts as described in this complaint negatively impact the Mercedes Benz automobiles owned by Plaintiffs herein.    These damages include diminution of an automobile known to have zMAX in it in an amount according to proof; other diminutions in values of the car brought out by uncertainties.

430.  Plaintiffs herewith seek the following other relief:

431.  Unless and until injunctive relief is issued by the court, Defendants will continue in their conduct. Defendants' conduct violates the RICO Act, and is this enjoinable. Plaintiffs are presumed to have suffered irreparable harm in light of the showing of a RICO Act violation.

432.  Plaintiffs accordingly requests injunctive relief in the form of an order enjoining and prohibiting the defendants from using an enterprise to commit acts of mail fraud and wire fraud, and such other injunctive relief as the Court deems just and appropriate.

94

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

433. Specifically, Plaintiffs request an injunction prohibiting defendants from advertising either through brochures, emails, or invoices, that they only use or did use genuine/approved Mercedes-Benz parts, when in fact they use non- genuine/approved Mercedes-Benz parts

434. Plaintiffs also request declaratory relief in the form of a decree in which the Court states that the Defendants have violated the R.I.C.O. Act by their conduct towards Plaintiffs and other victims, as alleged herein; and such other and further declaratory relief as the Court deems just and appropriate.

435. Plain Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

436. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to fraudulently market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

437. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or

95

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

1   voidable by the use of zMAX; or such other injunctive relief this court deems just and

2   appropriate.

3

4   438.  Plaintiffs further seek attorneys fees as allowed under the R.I.C.O. Act.

5

6   WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

7

8                                            XII.
     SEVENTH CLAIM FOR RELIEF FOR VIOLATION OF BUSINESS & PROFESSIONS
9               CODE SECTION 17500 [MISLEADING ADVERTISING]
        [AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE
10   CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE
     COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC., O. BRUTON SMITH,
11                      SPEEDWAY MOTORSPORTS INC.]

12   439.    Plaintiffs assert this Eighth claim for relief for violation of Business & Professions Code

13   section 17500 [misleading advertising] against DEFENDANTS MERCEDES BENZ USA,

14   LLC, ERNST LIEB, STEVE CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA

15   AUTOBAHN MOTORS, JOE COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC.,

16   O. BRUTON SMITH, SPEEDWAY MOTORSPORTS INC.

17

18   440.  The allegations of paragraphs 1-438 above are incorporated herein as though set forth in

19   full.

20

21   441.  The allegations of fraudulent conduct, including the specification of the ads and how they

22   were done in a fraudulent knowing manner, is set out in the first claim for relief for

23   violation of the RICO Act, Claims 1-6, which are also incorporated into this claim for

24   relief.

25

26

27                                                                                    96
     *Ferrari v. Mercedes Benz et al.*
28   Second Amended Complaint

442. Defendants conduct constitutes the dissemination and publication of false and misleading advertisements in violation of Business & Professions Code section 17500, which provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."

443. Plaintiffs request all available equitable remedies under Business & Professions Code section 17500, including injunctive relief requiring the Defendants to stop their OEM Auto parts fraudulent and misleading advertisements, and if allowable, a further affirmative injunction requiring Defendants to engage in an ad recall, in which they state words to the effect that their previous ads were false and misleading, and to add corrective statements; or such other injunctive relief as the court deems just and appropriate.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

444. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## XIII.
### EIGHTH CLAIM FOR RELIEF FOR FRAUD – INTENTIONAL MISREPRESENTATION AND CONCEALMENT
### [AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC., O. BRUTON SMITH, SPEEDWAY MOTORSPORTS INC.]

445. Plaintiffs assert this Ninth claim for relief for fraud based on intentional misrepresentation and concealment against DEFENDANTS MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC., O. BRUTON SMITH, SPEEDWAY MOTORSPORTS INC.

446. The allegations of paragraphs 1-444 are incorporated herein as though set forth in full.

447. The allegations of fraudulent conduct, including the specification of the ads and how they were done in a fraudulent knowing manner, set out in the first claim for relief for violation of the RICO Act [Claims 1-6], which are also incorporated into this claim for relief.

98

448. Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim conduct constitutes intentional fraud by making a material misrepresentation in writing and verbally as given by the service advisors at Autobahn Motors during the process of talking to repair customers.

449. Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim conduct further constitutes a fraud by concealment of a material facts that:

(a) genuine/approved MB auto parts were not being used;

(b) Consumers were being invoiced and charged at OEM prices; and that MB USA's claims about genuine/approved auto parts' superior longevity are false;

(c) other concealments according to proof.

450. Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim acted with knowledge of the falsity of their written and verbal statements, did so knowing the facts stated to be false; and did so with the intent to defraud Plaintiffs by inducing them to have their automobiles fixed at Autobahn Motors under the belief that their car would receive genuine/approved parts only; and would not receive any corrosive element contradicting an owner's manual such as zMAX additives.

451. Customers did in fact reasonably detrimentally rely on Plaintiffs misrepresentations by bringing their cars over to Autobahn Motors for which they received invoices which indicated the use of genuine/approved parts when in fact non genuine/approved parts were used.

452. As described above, non-OEM parts are worth less than OEM [genuine/approved] Mercedes Benz Parts, by a significant amount, often by a factor of double.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

99

453. As a proximate result of Defendants conduct, Plaintiff suffered actual damages. Damages are requested equal to the full amount charged to class members who received a non OEM part, but were invoiced as though it was an OEM part; Plaintiffs request consequential damages equal to the value of the impact of the use of non-OEM products on the claimants automobiles, including an impact whereby their cars needed irregularly high levels of repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer. Plaintiff requests all consequential damages, however suffered.

454. An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000. It is likely the 17,795 oil filters represent 17,795 different victims. However some allowances must be made for the fact that some of the victims have more than one Mercedes cars, some of the victims have brought the same car in multiple times.

455. The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they bargained for. These claims are made in an amount according to proof, in excess of $15 million, for total damages according to proof but in excess of $21 million.

456. In the alternative, Plaintiffs request for some other amount of damages and damage calculations that the court deems just and appropriate is on the basis that they paid for something, that they did not receive. their part served requests required OEM, parts and Plaintiffs and class member have also suffer compensatory and general damages to their

100

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

1   vehicles, arising from the fact that use of non-OEM arts, such as oil filters, Z-Maxx, oil, and

2   other non-OEM parts as described in this complaint negatively impact the Mercedes Benz

3   automobiles owned by Plaintiffs herein.

4

5   457.  Plaintiffs further seek an award of exemplary damages in an amount according to proof

6   against David Ahlheim, based on willful, fraudulent, oppressive, and malicious conduct.

7   Ahlheim's conduct was done with the intent to trick unknowing customers, who he know

8   had no way of knowing; and who knew had entrusted their valuable cars to Autobahn

9   Motors' repair facilities; Ahlheim is believed to have personally partaken in eating the

10  fraudulent cake.

11

12  458. Plaintiffs further seek an award of exemplary damages in an amount according to proof

13  against Autobahn Motors. David Ahlheim's conduct described above was known by the

14  upper management of Autobahn Motors. Autobahn Motors benefitted financially from the

15  fraudulent scheme. Autobahn Motors ratified, consented, and encouraged David Ahlheim to

16  act in this manner.

17

18  459. Plaintiffs also seek exemplary damages against Mercedes Benz USA based on the fact that

19  Mercedes Benz USA directly participated in the fraudulent ads through its own MB USA

20  false ads identified herein as Exhibits A, B, and C hereto. had actual knowledge of the

21  fraudulent scheme, and chose to assist in covering it up and remaining quiet to the many

22  customers of Autobahn Motors. Mercedes Benz USA's conduct in this regard, constitute

23  fraudulent and oppressive conduct, and also aided and abetted Autobahn Motors and David

24  Ahlheim's fraudulent, oppressive and malicious conduct. Exemplary damages are requested

25  in an amount according to proof.

26

27  *Ferrari v. Mercedes Benz et al.*

28  Second Amended Complaint

101

460. Had MB USA done the right thing, it would have learned that this wasn't a single incident occurrence as suggested by their auditing note, but was rather a widespread practice committed with substantial premeditation and expertise. Had MB USA done the right thing and instituted a full fix to the problem, the Plaintiffs would have received their full compensation thereby. Plaintiffs thus request full damages against MB USA for directly participating in the false ad, and directly participating in a cover-up of the non-OEM fraud.

461. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

462. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to fraudulently market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

463. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

102

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## XIV.
## NINTH CLAIM FOR RELIEF FOR NEGLIGENT MISREPRESENTATION
[AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC., O. BRUTON SMITH, SPEEDWAY MOTORSPORTS INC.]

464.    Plaintiffs assert this tenth claim for relief for negligent misrepresentation against DEFENDANTS MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC., O. BRUTON SMITH, SPEEDWAY MOTORSPORTS INC.

465. The allegations of paragraphs 1-448 above are incorporated herein as though set forth in full.

466. The allegations of fraudulent conduct, including the specification of the ads and how they were done in a fraudulent knowing manner, set out in the first claim for relief for violation of the RICO act, [Claims 1-6], which are also incorporated into this claim for relief.

467. Defendants' conduct constitutes a negligent misrepresentation and/or a negligent concealment.

468. Autobahn Motors, Sonic Automotive, Speedway Motorsports, have breached the duty of due care owed pursuant to Civil Code Section 1714(a) by negligently and wrongfully marketing, distributing, selling, and placing zMAX into automobiles, knowing that in so doing, the manufacturer's certified preowned warranties, or such similar warranties issued

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

103

by third parties, are thereby rendered void or voidable at the option of the warrantor.  One such warrantor and beneficiary of this negligence is Defendant MB USA, who, if it stands by and does nothing, gets the advantage of the equivalent of a get out of jail free card, in the form of an option to deem its previously given CPO warranty void, due to the prohibited use of zMAX.

469. MB USA was negligent in that it knew full well through VMI reports, and the pendency of this very litigation, that Sonic Automotive, Speedway Motorsports, and dealers owned by Sonic Automotive are actively, selling, and marketing zMAX in a manner that is expressly prohibited by the automobile manufacturers; warranty and which by the terms of the warranty is rendered void or voidable at the option of MB USA and/or any third party warrantor.

470. An exemplar of a third part pre-owned car warranty is Easy Care Warranty, which is a warranty product offered for sale through Sonic Automotive.  This warranty held by Harold Fethe states:
"YOU must follow YOUR VEHICLE manufacturer's maintenance guidelines to avoid denial of a claim because of improper maintenance."

471. MB USA is the party issuing a CPO warranty, at a time when it simultaneously receives actual knowledge through the VMI process that at a time either before the sale of a car, or during the pendency of the warranty, zMAX was added into the car by Autobahn Motors [as in the case of Gapasin and Fethe] or to customers at any of the other 133 dealerships owned by Sonic Automotive.

472. MB USA further had a duty, because Autobahn Motors was using the benefit of the MB trademark star and name to market a product as though it were approved by MB USA.

104

Mercedes Benz breached this duty of due care by failing to take appropriate steps to correct the circumstances by mandating to Sonic Automotive and/or directly to the MB Authorized dealerships owned by Sonic to stop putting zMAX in Mercedes Benz Automobiles.  Instead MB USA has joined forces with Autobahn Motors and Sonic to squelch any attempt to bring the truth of zMAX widespread use by dealerships owned by Sonic Automotive.

473. MBUSA is motivated by its own economic interest, because, as described above, it is a beneficiary of the scheme and benefits from standing idly by while its certified preowned warranties become void or voidable at its options.

474. As a proximate result of Defendants' conduct, Plaintiffs suffered actual damages.  Damages are requested equal to the full amount charged to class members who received a non OEM part, but were invoiced as though it was an OEM part; Plaintiffs request consequential damages equal to the value of the impact of the use of non-OEM products on the claimants automobiles, including an impact whereby their cars needed irregularly high levels of repairs, and for some Plaintiffs, caused them to purchase a new car from Autobahn Motors, or other dealer.  Plaintiff requests all consequential damages, however suffered.

475. An oil filter for a "Plan A" service costs approximately $400, and includes a new oil filter and new oil. The entire service costs approximately $400; thus, 17,795 items time $400 equals a total damage figure of $7,118,000.  Plaintiffs do not know the total amount they have spent on the other non genuine/approved parts such as spark plugs; motor mounts; v belts; end gaskets; engine mounts; battery units; brake sensors; and other non genuine/approved parts; and thus allege damages therefor in an amount according to proof, but believed to excess of $15 million.

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

476. The other non-OEM auto parts described in this complaint as having been purchased by Autobahn from Munich Auto Parts resulted in payments by plaintiffs for the full invoice for both the parts and labor. Plaintiffs do not know the full total amounts of those invoices, but claim the full amount of those invoices on the basis that they did not receive what they bargained for. These claims are made in an amount according to proof, in excess of $15 million, for total damages according to proof but in excess of $21 million.

477. In the alternative, Plaintiffs request some other amount of damages and damage calculations that the court deems just and appropriate on the basis that Plaintiffs paid for something they did not receive.

478. Plaintiffs and class members have also suffered compensatory damages to their vehicles, arising from the fact that use of zMAX, lower grade oil as described in this complaint negatively impact the Mercedes Benz automobiles owned by Plaintiffs herein.

479. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to fraudulently market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

480. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

481. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## XV.
## TENTH CLAIM FOR RELIEF FOR VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200
**[AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC., O. BRUTON SMITH, SPEEDWAY MOTORSPORTS INC.]**

482.   Plaintiffs assert this eleventh claim for relief for violation of Business & Professions Code section 17200 against DEFENDANTS MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC., O. BRUTON SMITH, SPEEDWAY MOTORSPORTS INC.

483. The allegations of paragraphs 1-481 above are incorporated herein as though set forth in full.

484. The allegations of fraudulent conduct, including the specification of the ads and how they were done in a fraudulent knowing manner, set out in the first claim for relief for violation of the RICO Act, Claims 1-6, which are also incorporated into this claim for relief.

485. Defendants Autobahn Motors, MB USA, Sonic Automotive, and David Ahlheim conduct constitutes the dissemination and publication of false and misleading advertisements in violation of Business & Professions Code section 17500.

486. Plaintiffs request all available equitable remedies under Business & Professions Code section 17200, including injunctive relief requiring the Defendants to stop their OEM auto parts fraudulent and misleading advertisements, and if allowable, a further affirmative injunction require Defendants to engage in an ad recall, in which they state words to the effect that their previous ads were false and misleading, and to add corrective statements in such ads they make a new ad stating; or such other injunctive relief as the court deems just and appropriate.

487. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to wrongfully market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

488. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the

108

1    distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any

2    automobile in which the manufacturers or other third party warranties are rendered void or

3    voidable by the use of zMAX; or such other injunctive relief this court deems just and

4    appropriate.

5

6   489. Plaintiffs request equitable remedies of disgorgement of profits; restitution; an accounting;

7        and other equitable relief as available.

8

9    WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

10

11                                              XVI.
                          E:EVENTH CLAIM FOR RELIEF FOR NEGLIGENCE
12          [AGAINST DEFENDANTS MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE
         CANNON, DIETMAR EXLER, AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE
13         COX, DAVID AHLHEIM, SONIC AUTOMOTIVE, INC., O. BRUTON SMITH,
                              SPEEDWAY MOTORSPORTS INC.]
14

15   490. Plaintiffs assert this Twelfth claim for relief for negligence against DEFENDANTS

16        MERCEDES BENZ USA, LLC, ERNST LIEB, STEVE CANNON, DIETMAR EXLER,

17        AUTOBAHN, INC. DBA AUTOBAHN MOTORS, JOE COX, DAVID AHLHEIM,

18        SONIC AUTOMOTIVE, INC., O. BRUTON SMITH, SPEEDWAY MOTORSPORTS

19        INC.

20

21   491. The allegations of paragraphs 1-473 above are incorporated herein as though set forth in

22        full.

23

24   492. Defendants' conduct was careless, reckless, and in breach of Defendants' duty owed to

25        Plaintiffs, and in violation of California Civil Code 1714(a).

26

27   *Ferrari v. Mercedes Benz et al.*
     Second Amended Complaint

28

109

493. Defendants negligently each and all took steps to conceal the true facts about the use of zMAX and the impact of zMAX on MBUSA CPO warranties, and similar warranties given by Third Parties.

494. Autobahn Motors, Sonic Automotive, Speedway Motorsports, have breached the duty of due care owed pursuant to Civil Code Section 1714(a) by negligently and wrongfully marketing, distributing, selling, and placing zMAX into automobiles, knowing that in so doing, the manufacturer's certified preowned warranties, or such similar warranties issued by third parties, are thereby rendered void or voidable at the option of the warrantor.  One such warrantor and beneficiary of this negligence is Defendant MB USA, who, if it stands by and does nothing, gets the advantage of the equivalent of a get out of jail free card, in the form of an option to deem its previously given CPO warranty void, due to the prohibited use of zMAX.

495. MB USA was negligent in that it knew full well through VMI reports, and the pendency of this very litigation, that Sonic Automotive, Speedway Motorsports, and dealers owned by Sonic Automotive are actively, selling, and marketing zMAX in a manner that is expressly prohibited by the automobile manufacturers; warranty and which by the terms of the warranty is rendered void or voidable at the option of MB USA and/or any third party warrantor.

496. An exemplar of a third part pre-owned car warranty is Easy Care Warranty, which is a warranty product offered for sale through Sonic Automotive.  This warranty held by Harold Fethe states:

"YOU must follow YOUR VEHICLE manufacturer's maintenance guidelines to avoid denial of a claim because of improper maintenance."

497. MB USA is the party issuing a CPO warranty, at a time when it simultaneously receives actual knowledge through the VMI process that at a time either before the sale of a car, or during the pendency of the warranty, zMAX was added into the car by Autobahn Motors [as in the case of Gapasin and Fethe] or to customers at any of the other 133 dealerships owned by Sonic Automotive.

498. MB USA further had a duty, because Autobahn Motors was using the benefit of the MB trademark star and name to market a product as though it were approved by MB USA. Mercedes Benz breached this duty of due care by failing to take appropriate steps to correct the circumstances by mandating to Sonic Automotive and/or directly to the MB Authorized dealerships owned by Sonic to stop putting zMAX in Mercedes Benz Automobiles. Instead MB USA has joined forces with Autobahn Motors and Sonic to squelch any attempt to bring the truth of zMAX widespread use by dealerships owned by Sonic Automotive.

499. MBUSA is motivated by its own economic interest, because, as described above, it is a beneficiary of the scheme and benefits from standing idly by while its certified preowned warranties become void or voidable at its options.

500. Individuals who have unknowingly received zMAX in their car either as (a) it was placed in the car as a CPO from Autobahn; or (b) at one of the Sonic dealerships owned by Sonic; or (c) was placed in the car as part of the repair process, have suffered the following harm proximately caused by all Defendants.

501. The people who received zMAX in their car, had their certified preowned warranties issued by MBUSA or other third party warrantors, rendered void and/or voidable at the option of MBUSA or other third party warrantor. The warranty was thereby transformed from a solid and enforceable, to that of warranty enforceable at the option of the warrantor. The status

111

existence/nature/and pendency of a preowned automobile's warranty, is extremely significant aspect concerning the value of that car.

502. The same impact and damage as described above with respect to zMAX applies equally to Plaintiffs through receipt of non-approved, non OEM, non genuine oil.

503. Plaintiffs request injunctive relief, and state that unless and until Plaintiffs obtain injunctive relief, Plaintiffs will suffer irreparable harm in that undetected and undetectable, because Defendants are expected to continue to negligently and wrongfully market and sell zMAX as described above; and other non OEM parts; which in order to avoid multiplicity in actions; to avoid the rendering of a judgment ineffectual; and to avoid causing plaintiffs further irreparable harm in the probability of an undetected reuse of zMAX and consequent impact on any remaining CPO warranties; all of which are in the category of damage claims difficult to ascertain, yet still very real.

504. Accordingly, Plaintiffs request injunctive relief in the form of an injunction requiring Defendant Sonic Automotive, Speedway Motorsports, Autobahn Motors to cease the distribution, sale and use of zMAX products in Mercedes Benz Automobiles, and in any automobile in which the manufacturers or other third party warranties are rendered void or voidable by the use of zMAX; or such other injunctive relief this court deems just and appropriate.

505. Plaintiffs further seek such other injunctive relief as the Court deems just and appropriate, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

112

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

WHEREFORE Plaintiffs Pray for relief as set forth below in the Prayer for Relief.

## VII.
## PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS prays for relief as follows:

1. For compensatory and consequential damages, as described above, in an amount according to proof.

2. Three times the amount of the actual damages, if any, sustained by the Plaintiffs per 18 USC section 1964(c).

3. For prejudgment interest in an amount according to proof.

4. For exemplary damages against Defendants pursuant to CC Section 3294 based on the intentional, oppressive, and fraudulent misconduct described above.

5. For all equitable remedies available under 18 USC section 1964(a) including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate

6. Plaintiffs request injunctive relief for violation of B&P Code section 17500 as requested above.

7. Plaintiffs request the following equable remedies for their claims of violation of B & P Code Section 17200, as requested above, including without limitation disgorgement of profits, return of funds deemed to constitute unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate

8. As to the negligence claim for relief, for injunctive relief as requested above, or such other injunctive relief as the court deems just and appropriate. Plaintiff requests the following, including without limitation, disgorgement of profits, return of funds deemed to constitute

113

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

unjust enrichment, and injunctive relief; or such other equitable relief as the Court deems appropriate.

9.  For declaratory relief as requested above, or such other declaratory relief as the court deems just and appropriate.

10. For Defendants Autobahn Motors, Speedway Motorsports, Sonic Automotive to provide an accounting of all profits earned as a result of their mutual transactions pursuant to CCP section 872.140 and B&P Code Section 17200.

11. For attorneys fees:

(a) As to the first through sixth claims, for relief [violation of the RICO Act], the request for attorney fees is based on statute, 18 USC section 1964(c);

(b) As to the eleventh claim for relief [violation of B & P Code Section 17200], the request for reimbursement/payment of attorneys fees is based on the common fund doctrine in an amount according to proof

12. For costs of suit.

13. For such other relief as the Court deems just and appropriate.

1

Respectfully submitted,

2

  //s// Herman Franck                                      Date: May __31__, 2016

3  Herman Franck, Esq.
   Franck & Associates

4  Attorney for Plaintiffs
   STEVE FERRARI and MIKE KEYNEJAD,

5  individually and as a representative of the
   Class of Persons similarly Situated;

6  HOOSHANG JOWZA, CELSO FRAZAO,

7  RENUKA NARAYAN,GERTRUD FRANKRONE,
   ERNEST SALINAS, KALKHUSAN SAREEN,

8  HOSSEIN JALALI, RON WOLFE,
   SOHRAB RAHIMZADEH, FRED GRANT,

9  ESTER GRANT, VINCENT LEUNG, KEN WONG,

10 JESSICA LANGRIDGE, TONY NICOLOSI,
   DONALD LYANG, ARTUR SEMICHEV, JOHN DIAZ,

11 HAROLD FETHE, RAY GAPASIN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                                                                    115
27 *Ferrari v. Mercedes Benz et al.*
   Second Amended Complaint

28

# DEMAND FOR JURY TRIAL

Plaintiffs herewith submit this DEMAND FOR JURY TRIAL, and request a jury trial as to all claims asserted herein that are triable to a jury.

Respectfully submitted,

_//s// Herman Franck_                                    Date: May _31_, 2016
Herman Franck, Esq.
Franck & Associates
Attorney for Plaintiffs
STEVE FERRARI and MIKE KEYNEJAD,
individually and as a representative of the
Class of Persons similarly Situated;
HOOSHANG JOWZA, CELSO FRAZAO,
RENUKA NARAYAN,GERTRUD FRANKRONE,
ERNEST SALINAS, KALKHUSAN SAREEN,
HOSSEIN JALALI, RON WOLFE,
SOHRAB RAHIMZADEH, FRED GRANT,
ESTER GRANT, VINCENT LEUNG, KEN WONG,
JESSICA LANGRIDGE, TONY NICOLOSI,
DONALD LYANG, ARTUR SEMICHEV, JOHN DIAZ,
HAROLD FETHE, RAY GAPASIN

116

_Ferrari v. Mercedes Benz et al._
Second Amended Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## List of Attachments

Exhibit A.  Excerpts of Website printout for MB USA, re use of OEM parts
     [www.mbusa.com]

Exhibit B.  Point of Sale Brochure and further advertisement

Exhibit C.  Autobahn Motors Exemplar Invoice Front and Back

Exhibit D.  Excerpts of Website Printout for Autobahn Motors including ad re only OEM
     parts are used; [www.autobahnmotors.com]

Exhibit E.  Autobahn Motors Mercedes Maintenance Guide

Exhibit F.  Excerpts of Website printout for Sonic Automotive, Inc.
     [www.sonicautomotive.com]

Exhibit G.  Excerpts from Mercedes Benz CLK Manual with CPO Checklist

Exhibit H.  Exemplars of Newsletters/Advertisements

- Color brochure, and corresponding invoice for that brochure, given to my office by John Diaz showing a date of issuance of January 5, 2009.
- Facebook page we also found on Autobahn Motors Facebook page by doing a search on its Facebook page for "genuine/approved parts".
- Autobahn Motors's Summer Classic Service Special 8/23/13-9/30/13 [Note this was mailed through US Mail to Michael Keynejad and believed to be part of a mass mailing to other Mercedes Benz owners in the San Mateo area].
- Further exemplars of an advertisements regarding the use of genuine/approved parts by Autobahn Motors mailed through US mail [Note these were mailed through US Mail to Michael Keynejad and believed to be part of a mass mailing to other Mercedes Benz owners in the San Mateo area].

Exhibit I.  Excerpts of Website printout for Speedway Motorsports, Inc. makers of Z Maxx
     [www.speedwaymotorsports.com]

Exhibit J.  *Perez et al v. State Farm Automobile Insurance, Inc.* et al.  Ninth Circuit Court of
     Appeals Decision

Exhibit K.  Complaint and Stipulated Judgment in Federal Trade Commission v. Speedway
     Motorsports, Inc. et al., MD NC, Case no 01-cv-1561

117

*Ferrari v. Mercedes Benz et al.*
Second Amended Complaint

Exhibit L.  October 12, 2007 Mercedes-Benz USA LLC web listing Eurotech as a Mercedes-Benz certified collision center.

Exhibit M. VMI Reports:
- Ray Gapasin;
- Harold Fethe;
- Bay Bridge Auto;
- Autobahn Motors

Exhibit N. Email from Honda re Warranties

Exhibit O. Various Warranties re Oil Additive Use [Mobil, Shell Helix; Amsoil lubricants; Castrol; Pennzoil].

Exhibit P.  Further Exemplars of other car company owner manuals [Mercedes Benz, Mercedes Benz G Class, Lexus RC 350/RCF, 918 Porsche Spyder, BMW 7 Series, Nissan GTR, Chevrolet, Bugatti, Acura NSX, 2015 Corvette, Bentley, Toyota Highlander, Range Rover, Ford GT 06, 2013 Corvette, Toyota Camry, Jeep Wrangler]

Exhibit Q. Letter on zMAX website from O. Bruton Smith

Exhibit R.  Excerpts of zMAX website

118