UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEVE FERRARI, ET AL.**,<br><br>Plaintiffs,<br><br>v.<br><br>**MERCEDES-BENZ USA, LLC, ET AL.**,<br><br>Defendants. | Case No. 15-cv-04379-YGR<br><br>**ORDER GRANTING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Dkt Nos. 73, 81, and 86 |

Plaintiffs Steve Ferrari, *et al.* bring the instant putative class action against defendants Mercedes-Benz USA, LLC (MBUSA), Ernst Lieb, Steve Cannon, Dietmar Exler, Autobahn, Inc. dba Autobahn Motors, Joe Cox, David Ahlheim, Sonic Automotive Inc., O. Bruton Smith; and Speedway Motorsports, Inc., alleging claims for: (1) violation of 18 U.S.C. sections 1961 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Lieb, Cannon, Exler, Cox, and Smith (Claims One through Six) and state law claims for (2) violation of California Business & Professions Code section 17500, the False Advertising Law ("FAL") against all defendants; (3) fraud; (4) fraudulent concealment; (5) negligent misrepresentation; (6) violation of California Business & Professions Code section 17200, the Unfair Competition Law ("UCL"); and (7) negligence.

Presently before the Court are three motions to dismiss the Second Amended Complaint by: (1) defendant Mercedes-Benz USA, LLC and Dietmar Exler ("MBUSA") (Dkt. No. 73); (2) defendants Autobahn, Inc., David Ahlheim, Joe Cox, O. Bruton Smith, and Sonic Automotive Inc. (collectively, "Autobahn") (Dkt. No. 86); and (3) defendant Speedway Motorsports, Inc. ("Speedway") (Dkt. No. 81).

Having carefully considered the papers submitted, the pleadings including the operative Second Amended Complaint, and the other matters in the record, and for the reasons stated herein, the Court **GRANTS** the motions **WITHOUT LEAVE TO AMEND**.  Plaintiffs have failed to allege a RICO enterprise after being granted leave to amend twice.  Their failure to state a cognizable enterprise in the Second Amended Complaint indicates that any further attempts to amend would be futile.  The RICO claims are therefore **DISMISSED WITH PREJUDICE**.

Because the RICO claims cannot be stated, the basis for the Court's alleged supplemental jurisdiction over the remaining state law claims is lacking.  *See* 28 U.S.C. § 1367(c)(3).  Therefore, the state law claims are **DISMISSED WITHOUT PREJUDICE**.

As to Speedway, its motion to dismiss the state law claims, the only claims alleged against it, is **DENIED AS MOOT** in light of the dismissal of all state law claims for lack of supplemental jurisdiction.[1]

## I. PROCEDURAL HISTORY

Plaintiffs filed their original complaint September 24, 2015.  The Court granted in part motions to dismiss the original complaint.  The Court found, among other things, that the allegations of plaintiffs' RICO claim, and particularly the "enterprise" and "person" elements of the claim, were insufficient, and gave plaintiffs leave to amend.  (Dkt. No. 50 at 3-4.)  Plaintiffs filed a First Amended Complaint (Dkt. No. 53) and defendants MBUSA and Autobahn again moved to dismiss on a number of grounds, including failure to allege a RICO enterprise.  In the hearing on that motion, the Court went over the RICO allegations in detail and ordered plaintiffs to set forth, for each named defendant, the conduct, the predicate acts, how the defendant participated in the operation or management of an enterprise, and the pattern of racketeering activity.  (Dkt. No. 65 [Transcript] at 3-6; *see also* Dkt. No. 62 [order]).  The Court specifically

---

[1] Defendant Speedway Motorsports moved to dismiss under Rules 12(b)(2) for lack of personal jurisdiction based upon insufficient minimum contacts with California, and 12(b)(6) for failure to state a claim on a variety of grounds, as well as failure to seek leave to amend to name Speedway Motorsports as a defendant.  The Court does not reach the merits of the arguments raised, since it finds that the state law claims should be dismissed for lack of a basis for supplemental jurisdiction.

1  admonished plaintiffs to refrain from simply incorporating allegations by reference as they had
2  done previously, but to identify the predicate acts for each defendant, and how that defendant
3  played a role in the alleged RICO enterprise.  (Transcript at 4-5.)
4       Plaintiffs then filed a Second Amended Complaint (Dkt. No. 66, "SAC"), which added
5  several new individual defendants and new allegations meant to cure the deficiencies previously
6  identified, plus state law claims against a new corporation, Speedway Motorsports, Inc.  The SAC
7  named six individual defendants: Ernst Lieb, the CEO of MBUSA from 2006-2011; Steve
8  Cannon, the CEO of MBUSA from 2011-2015; Dietmar Exler, the CEO of MBUSA from 2016-
9  present; Joe Cox, Autobahn's General Manager; O. Bruton Smith, Sonic's CEO.  The SAC
10  dropped RICO allegations against MBUSA and Autobahn, Inc. in favor of naming Lieb, Cannon,
11  Exler, Cox, Ahlheim, and Smith as the RICO defendants.
12       The instant motions followed.

**II.  ANALYSIS**

**A.  RICO Elements**

The RICO enterprise statute provides:

> It shall be unlawful for any ***person*** *employed by or associated with* any
> ***enterprise*** engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or indirectly, in the conduct of
> such enterprise's affairs through a pattern of racketeering activity or collection
> of unlawful debt.

18 U.S.C. § 1962(c) (emphasis supplied); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).  A claim under RICO requires pleading: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (or "predicate acts") (5) causing injury to the plaintiff's "business or property."  *See* 18 U.S.C. § 1962(c); *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*); *Living Designs, Inc. v. E. I. Dupont de Numours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005), *cert. denied,* 126 S.Ct. 2861 (2006).  "Racketeering activity" is defined in 18 U.S.C. section 1961(1)(B) as including any act "indictable" under certain enumerated federal criminal statutes, and a "pattern" must be at least two predicate acts that are indictable.  *See* 18 U.S.C. § 1961(1), (5); *Living Designs,* 431 F.3d at 361; *Howard v. Am. Online*

1  *Inc.*, 208 F.3d 741, 748 (9th Cir. 2000).

2  To be liable under section 1962(c), the defendant "person" must participate in the operation or management of the alleged "enterprise." *Reves v. Ernst & Young*, 507 U.S. 170 (1993) (one must participate in the operation or management of the enterprise itself in order to be subject to § 1962(c) liability). More specifically, under section 1962(c) one must allege and prove the existence of two distinct entities: (1) a person, *i.e.* the one to be held liable under the statute; and (2) an "enterprise," *i.e.* the entity conducting its affairs through a pattern of racketeering activity. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("*King*"). The "enterprise" cannot "simply [be] the same 'person' referred to by a different name." *Id.* RICO enterprise liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *King*, 533 U.S. at 163 (quoting *Reves,* 507 U.S. at 185.) A corporate employee may be liable as a "person" if the employee uses the corporation as a vehicle for conducting an unlawful RICO pattern of racketeering activity. *Id.* at 164-65. However, the requirement that the defendant and enterprise be distinct from one another "cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013).

The alleged predicate acts here are mail and wire fraud. Such acts must be pleaded with particularity as to the time, place, content of, and parties to the fraudulent communications in order to allege the predicate acts of mail or wire fraud. *See* Fed. R. Civ. P. 9(b); *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066-66 (9th Cir.2004) (among other specifics, complaint must allege identities of the parties to the misrepresentation); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (allegations were insufficiently particular for mail fraud where "no specific mailings are mentioned" but only that mailings were made in the applicable time period).

**B.     Sufficiency of SAC's RICO Allegations (Claims 1 through 6)**

Here, the SAC's allegations about who or what constitutes the RICO enterprise and how the alleged RICO "persons" are liable for the conduct of that enterprise are vague, confusing, and

4

contradictory, with the result that no plausible RICO enterprise claim is stated. The SAC now alleges the existence of four different RICO enterprises: MBUSA (SAC ¶¶ 77, 181, 189); Autobahn (*id.* ¶¶ 198, 310, 312); Sonic (*id.* ¶¶376, 410); and Speedway (*id.* ¶¶ 376, 410). The SAC does not explain how or if those four different RICO enterprises relate to each other and, indeed, no "associated-in-fact" enterprise is alleged to exist. Rather, each of the companies is alleged to be a separate enterprise, and each is alleged to have been "corruptly influenced" by their identified individual corporate employees.

With respect to Lieb, Cannon, and Exler, there is little more alleged than that they "corruptly influenced" the corporate enterprise. The SAC now alleges that MBUSA is the enterprise, and its succession of CEOs (Lieb, Cannon, Exler) are the "persons" liable for the conduct of the RICO enterprise. As to each of the CEOs, the SAC alleges that the individual "corruptly influenced" the enterprise known as MBUSA in actions taken in his capacity as CEO, and that such conduct constitutes mail and wire fraud. (*Id.* ¶¶ 77, 80, 181, 189.) The alleged wire fraud is statements on the MBUSA website, and the alleged mail fraud is dissemination of brochures, ads and invoices. The SAC alleges a variety of different types of schemes undertaken *by MBUSA*:

- allowing issuance of a Certified Pre-Owned warranty that is false and void or voidable by virtue of use of a fuel additive called zMax (*id.* ¶¶ 87, 88);
- false advertising indicating that Genuine Mercedes-Benz ("GMB") original equipment manufacturer ("OEM") parts are superior or longer lasting than non-OEM parts, despite knowledge that the actual data did not support such claims of superior longevity (*id.* ¶¶ 94, 95);
- statements on MBUSA's websites indicating that work done at an authorized dealer will be with GMB/OEM parts (*id.* ¶ 86);
- issued a GMB/OEM parts warranty as set forth on the back of Autobahn's invoices, making it appear that all parts used were GMB/OEM parts (*id.* ¶¶ 103, 104); and
- creating an "image of excellence" and "beautiful ad campaign," displayed at Autobahn, causing plaintiffs to believe that only GMB/OEM parts would be used (*id.* ¶ 108).

Leaving aside the question of whether any of that conduct could constitute predicate acts for a RICO claim, the allegations do not describe conduct of any of the defendant CEOs. Lieb himself is alleged to have "influenced" MBUSA to undertake this conduct, no more. (*Id.* ¶ 87, 94, 97, 106, 109, 131). The allegations against Cannon are thinner: he is alleged to have "corruptly influenced" MBUSA and to have been President and CEO of MBUSA from 2011-2015, with the remainder of the claim simply incorporating the same allegations as made against Lieb. (*Id.* ¶¶ 181-183.) And the allegations against Exler, who only became the present CEO of MBUSA after the dates alleged for the specific conduct here, are even thinner and more conclusory, simply incorporating the allegations preceding it. (*Id.* ¶¶ 188-191.) These allegations are insufficient to allege that Lieb, Cannon, or Exler conducted or participated in the conduct of a racketeering enterprise, rather than just the business of MBUSA separate and apart from any alleged racketeering acts. *Cf. King*, 533 U.S. at 163. Unlike the conduct of the sole shareholder in King, in which he individually engaged in indictable acts and acted in part through the corporation, here the allegations simply imply that any CEO could be a proper RICO "person" if the corporation is engaged in fraudulent conduct that involves the use of the wires or mail. Even a liberal reading of the RICO pleading requirements is stretched to the breaking point with such a theory.

With respect to Ahlheim and Cox, the allegations are more detailed but still fail to state a RICO claim. Plaintiffs allege that Autobahn Motors was a RICO enterprise. (SAC ¶¶ 198, 310.) Ahlheim was first a parts department manager, then Fixed Operations Director, then Director of Parts and Service for Autobahn Motors; Cox was the general manager. Ahlheim is alleged to have "corruptly influenced" Autobahn, and is also alleged to have "implemented, monitored, and managed" the OEM fraud scheme. (*Id.* ¶¶ 198, 200.) Ahlheim is alleged to have known and implemented the program whereby Autobahn was purchasing non-OEM parts, invoicing them at OEM prices, and using OEM parts numbers in the repair invoices. (*Id.* ¶¶ 239, 240, 277, 279, 280.) He is also alleged to have "implemented" the website and "permitted" issuance of warranties for certified pre-owned vehicles despite use of the zMax additive. (*Id.* ¶¶ 276, 283.) Cox is alleged to have "permitted, ratified, and allowed" Ahlheim to buy various non-OEM parts (*id.* ¶ 337) and to have "influenced" Autobahn to have website ads that say Autobahn uses OEM

6

1    parts (*id.* ¶ 341). Other allegations of specific conduct are alleged to have been undertaken *by*
2    *Autobahn*, which plaintiffs have not named as a RICO defendant. Even if these allegations were
3    sufficient to state that Ahlheim and Cox played a role in a RICO enterprise, distinct from their
4    simply being officers of the alleged enterprise at the time, the SAC does not allege with specificity
5    the predicate acts of wire fraud and mail fraud, or specifics about how Lieb, Cannon, or Exler
6    participated in that conduct.

As to defendant Smith, the allegations are that he "corruptly influenced" two separate enterprises: Sonic Automotive and Speedway Motorsports, Inc., neither of which were named as defendants in this claim for relief. (*Id.* ¶¶ 376, 410.) Rather, Smith is alleged to have "used the following modes of interstate commerce to accomplish this corrupt influence on Sonic Automotive by wire fraud and mail fraud": (1) wire fraud through ads on the zMax and Sonic Automotive websites, and in email communications with marketing staff about those ads' creation (*Id.* ¶¶ 378, 379, 380); and (2) mail fraud through "brochures, ads, and invoices" disseminated through the mails. The allegations of the claim against Smith posit that *Autobahn*'s website and *Autobahn*'s newsletters and invoices led plaintiffs to believe only GMB/OEM parts would be used. (*Id.* ¶ 383.) Again, the SAC does not allege specific details of any mail or wire fraud engaged in by Smith, as the RICO defendant, nor any such conduct by Sonic and Speedway, the RICO enterprises. These allegations are insufficient to state a RICO claim against Smith.

In short, the allegations of the SAC might[2] state a simple claim for fraud or unfair business practices by their respective companies, but they do not allege that the individual defendants participated in a pattern of racketeering acts by a RICO enterprise.

Thus the allegations of a RICO enterprise are insufficient and the RICO claims (Claims

---

[2] The Court notes that the website printout referenced in the SAC, attached as Exhibit D, does not indicate that Autobahn only uses OEM parts, but that "[o]ur service center has access to OEM Certified auto parts and accessories." (SAC, Exh. D. ECF 66-1 at 25.) Further, the warranty information on the back of the invoice exemplar includes a separate statement of a "Parts Warranty for Non-Mercedes-Benz Parts" in the lower left corner of that page. (*Id.*, Exh. C.) Further, the alleged "newsletter" at Exhibit G to the SAC appears to be part of an owners' manual and part of a service form, neither of which appear false, much less to have been disseminated through the mails. Thus, the allegations lack plausibility even to allege garden variety fraud.

7

1  One through Six) must be dismissed.[3]

### C.  Supplemental Jurisdiction Over State Law Claims (Claims Seven to Eleven)

As alleged in the SAC, subject matter jurisdiction over plaintiffs' state law claims depends upon the Court taking supplemental jurisdiction pursuant to 28 U.S.C. section 1367(a). While a district court retains discretion to exercise supplemental jurisdiction over state law claims after dismissing all federal claims, the Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.*; *see Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (citing *Carnegie-Mellon* and holding that, "the balance of the factors of 'judicial economy, convenience, fairness, and comity' did not 'tip in favor of retaining the state-law claims' after the dismissal of the ADA claim").

Here, where there is pending state litigation between many of the parties to the instant action on similar allegations, the factors of judicial economy, convenience, fairness, and comity favor dismissal of the state law claims without prejudice to raising them in the state court.

Therefore, the motions of MBUSA and Autobahn to dismiss the state law claims against those defendants are **GRANTED** and the claims dismissed without prejudice. As a consequence, defendant Speedway Motorsports' motion to dismiss these state law claims is moot.

---

[3] The Court also notes that the allegations about the conduct of the enterprise, *i.e.* the alleged OEM parts fraud, are conclusory and contradict each other. (*Compare* assertions that MBUSA participated in Autobahn's alleged fraud [SAC ¶¶ 86, 80-82, 86, 91-93, 116-119, 120-123] *with* allegations that MBUSA investigated and put a stop to the OEM fraud ("conducted an investigation into Autobahn's fraudulent conduct, confirmed that it did on [*sic*] fact occur; ordered it to stop." [*id.* ¶138]; "took immediate efforts to require Autobahn Motors to stop the use [of] non-OEM parts." [*id.* ¶134], *with* allegations that "[i]t may be that Mercedes-Benz USA is a victim of the fraudulent conduct as well, and truly 'did not know.'" [*id.* ¶ 267].)


### III. CONCLUSION

For the foregoing reasons, the motions to dismiss of Autobahn and MBUSA are **GRANTED WITHOUT LEAVE TO AMEND**.[4]

The motion to dismiss of defendant Speedway Motorsports, Inc. is **DENIED AS MOOT** in light of the dismissal of the state law claims for lack of supplemental jurisdiction.

This action is **DISMISSED** with prejudice as to the RICO claims and without prejudice as to all the pendent state law claims.

The Clerk is directed to close the file.

This order terminates Docket Nos. 73, 81, and 86.

**IT IS SO ORDERED.**

Dated: December 12, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[4] In plaintiffs' December 6, 2013 filing (Dkt. No. 115), they requested that the Court consider evidence apparently not referenced in their SAC, but filed in conjunction with their motion for a preliminary injunction, in order to determine whether the complaint should be dismissed or if leave to amend should be granted. While noting that considering evidence in connection with the motions would be inappropriate, and that the eleventh hour request to do so is likewise improper, the Court has reviewed plaintiffs' motion for preliminary injunction and finds that no different result is warranted here as to the viability of the RICO claims.